<pre>
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                          MIAMI DIVISION
                     CASE NO. 19-CV-60597-DPG
 3

 4    ROBERT HOSSFELD,                      Miami, Florida

 5         Plaintiff,                       March 11, 2020

 6             vs.                          2:30 p.m. to 3:27 p.m.

 7    AMERICAN FINANCIAL SECURITY           Pages 1 to 43
      LIFE INSURANCE COMPANY
 8
           Defendant.
 9    _____

10
                            MOTION HEARING
11             BEFORE THE HONORABLE DARRIN P. GAYLES
                     UNITED STATES DISTRICT JUDGE
12
      APPEARANCES:
13

14    FOR THE PLAINTIFF:        ALEXANDER H. BURKE, ESQ.
                                BURKE LAW OFFICES, LLC
15                              155 N. Michigan Avenue
                                Suite 9020
16                              Chicago, Illinois 60601
                                     - and -
17                              MATTHEW BOBULSKY, ESQ.
                                SCOTT D. OWENS P.A.
18                              3800 S. Ocean Drive, Suite 235
                                Hollywood, Florida 33019
19
      FOR DEFENDANT HEALTH
20    INSURANCE INNOVATIONS      DARIEL ABRAHAMY, ESQ.
      RX HELPLINE AND            GREENSPOON MARDER LLP
21    HEALTHPOCKET, INC.         One Boca Place, Suite 400E
                                 2255 Glades Road
22                               Boca Raton Florida 33431
                                      -and-
23                               GARRY WILLIAM O'DONNELL, ESQ.
                                 GREENSPOON MARDER LLP
24                               2255 Glades Road, Suite 400-E
                                 Boca Raton, Florida 33431
25
</pre>

```
 1   FOR DEFENDANT MED-SENSE:
                               MICHAEL P. DESIMONE, ESQ.
 2                             LOCKE LORD LLP
                               777 South Flagler Drive
 3                             Suite 215 East Tower
                               West Palm Beach, Florida 33401
 4

 5   FOR DEFENDANT TELADOC:    ZACHARY S. FOSTER, ESQ.
                               QUARLES BRADY LLP
 6                             101 East Kennedy Boulevard
                               Suite 3400
 7                             Tampa, Florida 33602

 8   FOR DEFENDANT FEDERAL
     INSURANCE COMPANY:        JOHN P. KELLY, ESQ.
 9                             THE SOTO LAW GROUP
                               2400 E. Commercial Boulevard
10                             Suite 400
                               Fort Lauderdale, Florida 33308
11
     FOR DEFENDANT AMERICAN
12   FINANCIAL SECURITY LIFE:
                               JOHN L. McMANUS, ESQ.
13                             GREENBERG TRAURIG
                               401 E Las Olas Boulevard
14                             Suite 2000
                               Fort Lauderdale, Florida 33301
15
     FOR DEFENDANT NATIONAL
16   CONGRESS OF EMPLOYERS:    JOSEPH MYSOREWALA, ESQ.
                               LAW OFFICE OF JOSEF M. MYSOREWALA
17                             770 S. Dixie Highway
                               Suite 113
18                             Coral Gables, Florida 33146

19
     FOR DEFENDANT AXIS
20   INSURANCE COMPANY:        JUSTIN C. SOREL, ESQ.
                               COLE SCOTT & KISSANE
21                             1645 Palm Beach Lakes Boulevard
                               2nd Floor
22                             West Palm Beach, Florida 33401

23

24

25
```

1    STENOGRAPHICALLY REPORTED BY:

2                          PATRICIA DIAZ, FCRR, RPR, FPR
                           Official Court Reporter
3                          United States District Court
                           400 North Miami Avenue
4                          11th Floor
                           Miami, Florida 33128
5                          (305) 523-5178

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                (Call to the Order of the Court.)

 2           COURTROOM DEPUTY:  Calling Hossfeld versus American

 3    Financial Security Life Insurance Company, and all, case number

 4    19-CV-60597.  Counsel, please make your appearance.

 5           MR. KELLY:  On behalf of Federal Insurance and AEUSA

 6    John Kelly, The Soto Law Group.

 7           MR. McMANUS:  John McManus here today on behalf of

 8    American Financial Security Life Insurance Company.

 9           MR. O'DONNELL:  Good afternoon, Your Honor, Garry

10    O'Donnell on behalf of Insurance Innovations, RX Helpline and

11    Health Pocket, Inc.

12           MR. ABRAHAMY:  Dariel Abrahamy on behalf of Health

13    Insurance Innovations, RX Helpline and Healthpocket, Inc.,

14    d/b/a Agile.

15           MR. FOSTER:  Good afternoon, Your Honor, Zach Foster on

16    behalf of Teladoc Health, Inc.

17           MR. DESIMONE:  Good afternoon, Your Honor, Michael

18    DeSimone on behalf of Med-Sense Guaranteed Association.

19           MR. SOREL:  Good afternoon, Your Honor, Justin Sorel on

20    behalf of Axis Insurance.

21           MR. MYSOREWALA:  Good afternoon, Your Honor, Josef

22    Mysorewala on behalf of National Congress of Employers, Inc.,

23    and National Benefit Builders, Inc.

24           THE COURT:  All right.  For the plaintiff?

25           MR. BURKE:  Good afternoon, Alex Burke for the
```

1    plaintiff.

2         MR. BOBULSKY:  Good afternoon, Your Honor, Matthew

3    Bobulsky on behalf of the plaintiff.

4         THE COURT:  All right.  We are here for the defendant's

5    joint motion to dismiss plaintiff's amended class action

6    complaint, and I apologize for not getting to it sooner.  But,

7    you know, until recently we were missing a third of our court

8    and we were pretty inundated with work, but I have reviewed

9    everything and I will hear from the parties.

10        But I will say the complaint is going to have to be

11   dismissed because it's a shotgun pleading, at a minimum.  You

12   can't incorporate all the preceding counts in subsequent

13   counts, I mean, the Eleventh Circuit case law is pretty clear

14   about that.  And in counts two, paragraph 141, you incorporate,

15   "Plaintiff re-alleges it incorporates the foregoing allegations

16   as it fully sets forth herein," and the same allegation is

17   contained in paragraph 50 for Count 3, and you're prohibited

18   from doing that.  So you are going to have to file a second

19   amended complaint at least for that issue.

20        I still thought the hearing was warranted because there

21   are still a lot of other issues at play and I just want to cut

22   to the chase.

23        I do agree with the defendants that you are

24   improperly -- the plaintiff is improperly lumping all of the

25   defendants together.

1          You have to factually distinguish what each defendant

2     did and under what legal theory you are planning on doing it

3     and, you know, reading the supplemental authority, the recent

4     Eleventh Circuit opinion in Cordova versus Direct TV, LLC.

5     That's at 942 F.3d 1259, Eleventh Circuit opinion from

6     November 2019, I think supports that proposition because you

7     have to have enough to show Article III standing, and without

8     differentiating between the defendants on what each defendant

9     did, you can't do that.

10          So, for example, in the opinion Judge Marcus talks

11     specifically about whether or not a single call or not would be

12     sufficient to confer standing, and on page 1270 the Court noted

13     that the Third Circuit held that the receipt of a single

14     unsolicited call to a cell phone and a voicemail recording

15     constituted an injury of fact but then the Eleventh Circuit

16     went on to say the receipt of more than one unwarranted

17     telemarketing call made in violation of the provisions

18     enumerated in the TCPA is a concrete injury that meets the

19     minimal requirements of Article III standing.

20          The way the complaint is written we don't know, so it's

21     conceivable that one defendant may have been responsible for

22     one call, and the other defendants perhaps more, but I can't

23     tell simply by reading the complaint.

24          But I did want to talk some more, though, before you

25     replead.  The personal jurisdiction issue regarding some of the

1    defendants about the allegations regarding the automated

2    telephone calls and whether or not there is an internal

3    conflict by allegations that a live person spoke and about

4    vicarious liability a bit more.

5         Since it's defendants' motion, why don't I hear from

6    one of you first and then I will --

7         MR. DESIMONE:  Your Honor, if I may, are those the

8    specific subjects you want to hear about?

9         THE COURT:  Well, you can raise other issues as well.

10        MR. DESIMONE:  I apologize.  Michael DeSimone for

11   Med-Sense.  We have divided up the argument amongst ourselves.

12   We had a structure that we were going to go through.  We,

13   obviously, didn't know what Your Honor wanted to hear, so some

14   of -- I was going to be the first person up, and I was going to

15   speak about more, some of the pleading issues, more Iqbal and

16   Twombly than the shotgun.  And I don't know whether that's

17   helpful to you, should I start off and then proceed --

18        THE COURT:  Well, I think with what I said, I mean,

19   that's the Iqbal Twombly problem.  I mean, it's not plead

20   sufficiently enough, particularly -- well, identifying what

21   each defendant did and the particularized harm as to each

22   defendant, if you want to talk more about the sufficiency of

23   the allegations beyond that, you are welcome to do that.

24        MR. DESIMONE:  Why don't I do that briefly and we will

25   just sort of, we will continue on our planned order.

1          THE COURT:  Okay.

2          MR. DESIMONE:  Would Your Honor prefer that I head on

3     over there?

4          THE COURT:  You can do it there or the podium, as long

5     as you pull the microphone close.

6          MR. DESIMONE:  Okay.  Thank you, Your Honor.

7          So I am going to make the -- I am going to have, talk

8     about Iqbal and Twombly briefly just a little bit more targeted

9     because Your Honor was somewhat focused upon the shotgun nature

10    of the pleadings, and I just wanted to draw Your Honor's

11    attention to a few aspects of the failures under the Iqbal and

12    Twombly.

13         The problems with this complaint really are

14    fundamentally that it's not only that the plaintiff has failed

15    to say who did what but, rather, the plaintiff has actually

16    failed to plead any facts whatsoever other than bare bones.

17    Most of the -- the vast majority of this complaint is -- really

18    it's argument.  It's about inference rather than any

19    particularized facts regarding any defendant in the case, and I

20    will show Your Honor what I mean by way of illustrating with a

21    couple of the paragraphs.

22         So my client is Med-Sense Guaranteed Association, and

23    if Your Honor goes through the complaint, you will find that

24    there were actually two paragraphs in the entire complaint that

25    specify anything that relates to Med-Sense Guaranteed

 1  Association, and those are paragraphs 47 and 48.  And I am not

 2  going to read them off to Your Honor because I don't think

 3  that's helpful, but the bottom line is that the plaintiff says

 4  that in a February 13th, 2019 telephone call the -- there were

 5  some conversations with people that he identifies as being

 6  employed by various organizations and that appears to be

 7  speculation, and then all that he says about Med-Sense

 8  Guaranteed Association is he was eventually provided a link to

 9  a policy application and Med-Sense Guaranteed Association is

10  listed as the policyholder.

11         And then he says -- then in the following paragraph he

12  pleads conclusory, the call was made on behalf of Med-Sense.

13  That's really typical.  As we discussed when we were on the

14  phone call with Your Honor about the stay, there is a group of

15  defendants in this case, the seller defendants, and that --

16  those two paragraphs are paradigmatic of what the plaintiff

17  says about the seller defendants.  Something was sold at some

18  point, not necessarily even during the call, and that's why the

19  defendant is liable.

20         There is no claim in any of -- in any place in the

21  paragraph that with regard to Med-Sense in particular, there is

22  no claim at any point that Med-Sense was even so much as

23  referred to during a telephone call.  No one says that a

24  operator uttered the words Med-Sense.

25         Instead, the nexus to my client, Med-Sense, is, oh, a

1   link was provided for an application and Med-Sense's name was

2   in it.

3         The plaintiff may be permitted to replead, but that

4   kind of replead is doomed to dismissal because there is no

5   basis for pleading any of the aspects of the claim the

6   plaintiff attempts to plead based upon nothing more than that.

7         That's typical.  Teladoc did the same -- I have another

8   example for Teladoc, May 22nd, 2019, call.  It's virtually

9   identical.  The application materials the plaintiffs received

10  consisted of a prefilled application, for among other things,

11  telephonic doctor services with Teladoc.  So with many of these

12  defendants all the plaintiff is pleading is a document was sent

13  to me that had their name on it.

14        There is no way to replead that to plead up a TCPA

15  claim.  Instead what we have is a complaint that has -- that

16  goes at great lengths through conclusory allegations about such

17  matters as speculation about -- if Your Honor takes a look at

18  paragraphs 3 through, let's say 3 through 14, you have

19  conclusory allegations about such things as calls that

20  insurance, about insurance agents and marketers accessing a web

21  portal, and a web portal includes information regarding the

22  defendants.

23        You have conclusory allegations without any facts about

24  authorization by none of the defendants, presumably inferred

25  based upon nothing other than a name appearing in an

```
1    application.  And it goes on and on.

2         There just is -- the vast majority of this complaint is

3    not factual.  It is plaintiff's supposition about how things

4    must have happened without any factual matter whatsoever.  And

5    if -- the only factual allegations about the vast majority of

6    the defendants in this complaint appear in the one section that

7    appears at paragraphs -- the specific paragraphs regarding the

8    calls.

9         So through approximately paragraph 62 -- up to 64 and

10   starting at 35.  The rest of the complaint is just conclusory

11   argument and that very clearly is not sufficient under Iqbal

12   and Twombly, and I submit, Your Honor, there is no way the

13   plaintiff can endure that because there are no facts.

14        If the plaintiff, during the course of the phone call,

15   had spoken to someone who said I am calling on behalf of

16   Med-Sense, I am calling on behalf of any of the seller

17   defendants, plaintiff would have said it.  Plaintiff is just

18   settling on getting documents after the fact.

19        Your Honor, that's what I wanted to say about Iqbal and

20   Twombly.

21        THE COURT:  Okay.

22        MR. BURKE:  Your Honor, does it make sense for me to

23   respond if they are going through 12 of them, maybe I could

24   respond to each one as we go or would you rather I save it?

25        THE COURT:  What's the next topic?
```

1           MR. FOSTER:  The next topic, Your Honor, would be the

2     vicarious liability topics broken up into the agency, the

3     actual agency, apparent agency and ratification followed then

4     by the jurisdictional issues.

5           THE COURT:  I don't know.  Do you prefer to address

6     them one by one or whatever you want?

7           MR. BURKE:  I don't know what to expect from the other

8     statements, so I think maybe one by one, Your Honor.

9           THE COURT:  Okay.

10          MR. BURKE:  Nobody is disputing that sellers can be

11    held liable under the TCPA, so what we are looking at here is

12    primarily two phone calls which we allege with great

13    specificity.  I mean, I will concede that there is -- you know,

14    that we tried to describe our position in the complaint and

15    maybe it should have been clearer.  But the allegations having

16    to do with these phone calls and on whose behalf they were

17    made, are specific.

18          As to Med-Sense, for example, one of the purposes of

19    the phone call -- this is the February 13th phone call, was to

20    sell Med-Sense products and services.

21          How do we know that, because Exhibit A, the contract

22    that was e-mailed along with the telemarketing call, so what

23    they -- what happened on this telemarketing call, plaintiff

24    received it.  He engaged with -- well, he received a

25    prerecorded telemarketing call that said, "press one if you are

1    interested in speaking with someone."

2         So he pressed one.  So that's how the telemarketing

3    call was both prerecorded and live.  That's how that went down.

4         He pressed one.  He engaged with this person for like

5    half an hour.  He spoke with another person like a closer

6    during the call.  It was either during the call or just after

7    the call, but arising out of the call, he received this e-mail

8    with a link to HII's system identifying the products and

9    services that were being sold during the telemarketing call.

10        Exhibit A is like an admission as to what was being

11   sold and ratification of the telemarketing call itself.  The

12   call was placed on behalf of Med-Sense because they were

13   selling Med-Sense products and services.

14        THE COURT:  How would I find from this complaint that

15   they were aware that the individual defendants were aware of

16   what was going on?

17        MR. BURKE:  Well, first of all, we allege that they

18   were aware, and under Rule 9B, allegations of knowledge can be

19   made generally, but we know from a lot of other sense, facts.

20   For example, we attach docket from a complaint filed by another

21   consumer, Mark Fitzhenry from May 9th, 2017, that sues, for

22   example, Med-Sense, for the same thing that they are facing

23   suit for now.

24        That lawsuit was also against HII.  It was also against

25   Federal Insurance.  It was also against NCE and also against

1  Teladoc.

2          These companies were placed on notice, at least in May

3  of 2017, that HII was engaged with telemarketers, and that's

4  how this business was coming in.

5          THE COURT:  What case are you talking about?

6          MR. BURKE:  We attached the docket.  This is in state

7  court.  It's Exhibit E, Docket 122-5.

8          THE COURT:  Okay.

9          MR. BURKE:  Furthermore, there was a case filed in 2018

10  against HII and NCE, and some of the other defendants, Moser

11  versus HII, in the Southern District of California.  That case

12  proceeded through discovery and was certified as a class

13  action.  You know, at least those defendants knew ahead of time

14  that HII was doing business through telemarketing.

15          This lawsuit was filed on March 6, 2019, which was

16  before the second wave of phone calls.  So in other words,

17  this -- the plaintiff got the first phone call that's the

18  subject of this case in February of 2019.  He filed suit in

19  March and then he got another telemarketing call in May.

20          I mean, certainly, defendants that he sued originally

21  also knew that these calls were nonconsensual.  There is no

22  allegation of consent anywhere.  I mean, the plaintiffs just

23  didn't consent.  These are cold calls, but the calling

24  continued.  I mean, I think it's pretty outrageous that, you

25  know, you file a federal class action and the calls continue.

1          He got another call, by the way in August of '19,

2    marketing the same stuff.  I don't know why they didn't stop,

3    the telemarketing, but they didn't so that's another reason

4    that we know that they know but that's all under the umbrella

5    of Federal Rule 9B, which says that allegations of knowledge

6    may be alleged generally.

7          THE COURT:  So the allegations -- the complaint in the

8    Moser case that you were referring to, did you use that as a

9    guide for your amended complaint?  I mean, assuming it passed

10   muster under Iqbal and Twombly.

11         MR. BURKE:  I would assume so, Your Honor, but I don't

12   remember one way or the other if I used it as a guide and we

13   were gathering our investigatory documents before we sued.

14         THE COURT:  Okay.

15         All right.  Anything else you want to add regarding

16   that issue?

17         MR. BURKE:  Not on the Twombly stuff.  I agree there is

18   a chunk of paragraphs that describes these phone calls that

19   taken along with the exhibits constitute the facts that we are

20   alleging here and that we have alleged some law that we thought

21   was going to assist the Court in understanding where we are

22   coming from.  But I understand that that hasn't happened and we

23   would like the opportunity to clean that up.

24         THE COURT:  Okay.  You are going to speak regarding the

25   vicarious liability issue?

1           MR. FOSTER:  I was, Your Honor.

2           MR. DESIMONE:  Your Honor, I want to bring one matter

3    to your attention to the matter we were just discussing very

4    briefly.

5           THE COURT:  Okay.

6           MR. DESIMONE:  The additional complaints to which

7    counsel referred, these are matters that are outside the scope

8    of the complaint in this action, and what I mean by that is

9    when Mr. Burke says that there are other complaints that were

10   filed against certain defendants, that was material that was

11   first attached to the opposition to the motion to dismiss.

12          So whatever -- whatever the, I think, quite limited

13   value of other allegations, other lawsuits that haven't

14   resulted in a judgment and so, therefore, what happened was not

15   proof, even so, we are now referring -- plaintiff is now

16   attempting to save the complaint from dismissal by referring to

17   matters that weren't even pleaded in the complaint, and that is

18   improper.

19          And I have some citations -- there are citations in our

20   reply to motion to dismiss regarding that.  The Eleventh

21   Circuit has been quite clear that a plaintiff cannot forestall

22   an otherwise meritorious motion to dismiss by urging please

23   consider something else that's not on my complaint.

24          THE COURT:  Okay.  The next issue.

25          MR. FOSTER:  Good afternoon, Your Honor, Zach Foster on

1    behalf of Teladoc.  I first wanted to address something that

2    Mr. Burke stated.

3            THE COURT:  Would you pull the microphone a little

4    closer?

5            MR. FOSTER:  Of course, Your Honor.

6            I wanted to address something that Mr. Burke stated.

7    He said that no one here disputes that sellers can remain

8    liable for telemarketers' conduct.  I don't know what he means

9    by sellers, but if he is referring to the defendants in this

10   case, we absolutely dispute that legal proposition.

11           The case law is clear that a non-calling party can only

12   be held vicariously liable under the TCPA in three instances:

13   There is an actual agency relationship between the person whose

14   products are being sold and the telemarketer, an apparent

15   agency relationship or some sort of ratification and I am going

16   to address the deficiencies with respect to the plaintiff's

17   actual agency argument.

18           Setting aside the issue of one Twombly, even if the

19   plaintiff were to break out his combined allegations against

20   each of the seller defendants, those allegations, themselves,

21   would be insufficient to establish an agency relationship with

22   respect to telemarketing conduct.

23           For actual agency black letter law, you need a

24   principal to have acknowledged an agent, the agent to have

25   manifested the undertaking, and importantly for this case that

```
 1    the principal maintained control over the agent's actions.  The

 2    case law is very clear that control is the essential element to

 3    establishing an agency relationship.

 4           Plaintiff has not and cannot establish that any of the

 5    individual defendants maintained control over any of the

 6    telemarketers that apparently called the plaintiff over a few

 7    months.

 8           Now, the agency requires more than passive control.  It

 9    requires instruction and command, and specifically in the TCPA

10    concept for there to be sufficient control over a telemarketer,

11    the principal has to control the manner and means by which the

12    telemarketing is undertaken.

13           What that means, control over manner and means is

14    control of the day-to-day operational decisions of a

15    telemarketer.  It's control over who is called.  For example, I

16    am a seller, I'm going to provide you a list of leads, names

17    and numbers that I want you, Mr. Telemarketer, to call.

18           It's control over when those individuals are called,

19    how frequently they are called, when someone -- how often do

20    you call someone before you take them off your list.

21           THE COURT:  How would a plaintiff know that -- I

22    understand it's alleged, but how would they really know that

23    absent discovery?

24           MR. FOSTER:  Again, Your Honor, here, it hasn't been

25    even been alleged with specificity.  The control the plaintiff
```

```
 1    has alleged is insufficient control.  What he is saying is
 2    control and what he has said in his response and his complaint
 3    as examples of control are that, for example, HII has the
 4    seller defendants' trademarks and logos on its websites, and
 5    that the telemarketers then use those trademarks and logos to
 6    sell our clients' product.
 7         I don't know how someone who was selling another
 8    person's product that's a branded product could possibly sell a
 9    product without being able to describe what the product is and
10    thereby use the trademark logos.
11         There are countless examples of individuals or
12    companies that have a right to use a trademark logo of another
13    company that does not create an agency relationship.  For
14    instance, a franchise/franchisee relationship.  Obviously, a
15    franchisee has the right to use the trademark logos of the
16    franchisor, but the franchisee certainly isn't the franchisor's
17    agent with respect to all the franchisee's conduct, dealers and
18    manufacturers, licensees.
19         Another example cited by the plaintiffs is the fact
20    that HR -- apparently the telemarketers have access to the
21    seller defendants' pricing information and must sell the actual
22    product using approved forms, but that's control over the
23    product itself.  That's not control over the manner and means
24    on telemarketing.  What plaintiffs have to show or at least
25    allege is that the seller defendants do control the manner and
```

1    means.

2          There is also an allegation that HII provided scripts

3    to the telemarketers, but that general allegation is

4    specifically contradicted by plaintiff's specific allegations

5    with respect to the calls.  I believe there are five calls at

6    issue.  Only one call mentions a script being used and that's a

7    script for, what's called an advent health script.  None of the

8    other defendants, according to plaintiff's allegations, the

9    plaintiff wasn't writing the scripts from any of the other

10   defendants.

11         As Mr. DeSimone pointed out, many of the other

12   defendants weren't even mentioned in the call.  For example,

13   Teladoc was only brought into this case because its application

14   was included in a packet that apparently the plaintiff received

15   after receiving a call.  So there is no opportunity for the

16   plaintiff to have been read a Teladoc script if Teladoc wasn't

17   even mentioned during the call.

18         That would be an example of something the plaintiff

19   would know or could at least infer that if I am hearing, hello,

20   I am so-and-so calling on behalf of Teladoc or even just in

21   telemedicine services there is an assumption essentially that

22   that person, that telemarketer was provided a script by, but

23   that's just not what we have here.

24         What we have here is that the plaintiff is trying to

25   make the proposition that just because our client services were

1    being offered for sale that makes our clients liable for any of

2    the telemarketing violations made by third-party telemarketers

3    to which we do not have a direct contractual relationship, and

4    that's simply not the case law.  You gotta show control over

5    the manner and means.

6          And the second point I'd make, with respect to all of

7    the defendants except HII, there is not even an alleged direct

8    relationship between the telemarketers and what I'll call the

9    seller defendants.  What plaintiff essentially has alleged is

10   that HII acts as a middleman in this relationship.  The seller

11   defendants, Teladoc and the other companies contract with HII.

12         HII then contracts, allegedly, with third-party

13   marketers and insurance agencies.  There is no direct

14   contractual relationship or even -- there is no direct

15   contractual relationship between the seller defendants and the

16   callers.  These callers then placed calls to individuals.  If

17   those individuals want to be quoted for insurance, they access,

18   apparently, the HII system and use this system for quotes to

19   plaintiffs.

20         Because there is no direct relationship alleged, there

21   can't be an actual agency relationship between the third-party

22   telemarketers and the seller defendants absent, I guess, you

23   have to allege a sub agency relationship but that requires

24   specific allegations that plaintiff doesn't even have in this

25   complaint either lumped together or individualized to any of

1   the defendants.

2          And, you know, in support of that argument, you can

3   even look at the cases that plaintiff cited in his response.

4   Each of those cases where the Court found that the defendant,

5   the seller in their cases, should be directly liable and have

6   an actual agency relationship with a calling party, there was a

7   direct contractual relationship between the calling party and

8   the party whose goods were being sold then.

9          The actual defendant hired the telemarketers and then

10  maintained control over the telemarketer's activity such that

11  there was an actual agency relationship.  That's simply not the

12  allegations here, and, no amount of amending the complaint will

13  rectify that issue?

14         THE COURT:  Well, why not?

15         I mean, I understand you might dispute the facts.

16         MR. FOSTER:  Well, for the direct relationship.  The

17  plaintiff, himself, has alleged that there is no direct

18  relationship, that there is a middleman, HII, standing between

19  the seller defendants and the telemarketers.  Unless the

20  plaintiff is going to completely change the factual allegations

21  whereby now there is now a direct relationship between Teladoc,

22  for instance, since you hired the telemarketers, then you could

23  potentially allege an agency relationship, but that's not what

24  he set out in his complaint.

25         What he has is HII acting as a middleman who contracts

1    directly with the telemarketers and then contracts directly

2    with the seller defendants.  It contracts with seller

3    defendants to get the products on HII's platform and then

4    contracts with insurance agents to sell products through its

5    platform.  There is no direct contractual relationship, at

6    least as alleged by the plaintiff between the seller defendants

7    and the telemarketers; therefore, there can't be an actual

8    agency relationship.

9            THE COURT:  Okay.

10           MR. BURKE:  Thank you, Judge.

11           First, I disagree with counsel's characterization of

12   agency liability.  There are at least four ways for a seller to

13   be liable.  I agree formal agency, apparent agency and

14   ratification, but also actual authority which can be implied or

15   explicit or expressed.

16           I think we alleged implied authority.  You know, we've

17   got -- the facts, as they are pleaded, show implied authority.

18   I mean, when you got a telemarketing call that's made by

19   insurance agents, Florida-based, you know, Miami-based

20   insurance agent is the telemarketing company, it's the same

21   insurance agent that made both calls, that tried to make the

22   sale on both calls.  So all the defendants that were part of

23   the case in the very beginning had the opportunity to shut

24   those guys down, and I don't know why they didn't.

25           This company, HAA, Health Advisors of America, who are

1     impecunious and I think they folded, which is why they are not

2     in the case, it was the same folks who made both calls and so I

3     think there is an inference on implied authority here.

4           I mean, I don't know why the calling would persist but

5     the fact that it did shows that somebody was authorizing it to

6     go forward.  I mean, HII can certainly just shut down its

7     relationship with HAA, and the seller defendants, when they

8     learned about these telemarketer calls in 2017, with the

9     Fitzhenry complaint or in 2018 with the Moser case -- I mean,

10    there are several other cases that are filed against these

11    guys, you know, they should have shut it down.

12          Part of -- part of the analysis on true agency is not

13    just -- it's not just controlling the minutia.  I agree that

14    that's one thing to look at, but what the Court needs to look

15    at is the course of dealings between the entities and whether

16    there is an ability to control what's happening, an ability to

17    control the telemarketing.  And I would submit, absolutely,

18    these defendants all along the way, because of their

19    relationship with these -- with HAA that was making these

20    calls, had the opportunity to shut it done.  They had the --

21    they had the ability to control every aspect of this

22    telemarketing, most notably, as I said, to shut it down and

23    they didn't.

24          THE COURT:  But just a basic proposition of what we are

25    calling the selling defendants, them being aware, where do you

```
 1    allege, I mean, with any specificity, how they would know,
 2    either through a contractual relationship that the broker was
 3    doing this or they later ratified -- they knew about it or they
 4    ratified it?
 5          Maybe I am missing that.  Maybe you can point me to it.
 6          MR. BURKE:  As I said earlier, I don't think I need to
 7    allege that under the Federal Rules because knowledge may be
 8    alleged generally under Federal Rule 9B, but, I mean, in the
 9    simplest terms, we've got two phone calls that happened after
10    we filed suit.
11          In the simplest terms, at least those defendants knew
12    exactly what was happening and they failed to stop it and
13    perhaps that relates more to ratification because they
14    permitted the phone calls to continue even though they were
15    placed on direct notice that it violated the TCPA.
16          You know, I think that's the easiest one.
17          THE COURT:  So as far as the knowledge, other than the
18    filing of the lawsuit or maybe even the previous lawsuit, how
19    do you establish what was going on and I kind of go back to
20    that Direct TV case where the person who received the call
21    called the entity that was making the calls to tell them to
22    stop but also called Direct TV and told them you need to make
23    this stop.
24          Did that happen here?  Were any of these individual
25    defendants contacted by the plaintiff and told that he is
```

1   getting these calls, other than the lawsuit?

2        MR. BURKE:  No, but he did ask that the calls stop and

3   they continued.

4        THE COURT:  But he told who, the broker?

5        MR. BURKE:  He told the caller.  He didn't call HII.

6   Although, I mean, over the course of litigation, I have sent

7   e-mails to counsel telling them to ask them to stop calling my

8   client.  So in that sense it did happen on that level.

9        THE COURT:  So, again, I'm sorry, so the specific

10  relationship, as you understand it, between the selling

11  defendants and HII is what?

12        MR. BURKE:  Selling defendants engaged HII to help them

13  generate business and to do telemarketing.

14        THE COURT:  That's a contractual relationship or

15  something else?

16        MR. BURKE:  I believe it to be contractual, yes, and I

17  also believe that at least the insurance company defendants,

18  including Federal Insurance, American -- I always mix up their

19  name, American Financial I think it is, yeah, by law also have

20  to have direct relationships with the agents, with the

21  insurance agents that are making the calls, and I believe that

22  to be true.

23        So there is a direct relationship, contractual

24  relationship between the insurance agents, this HAA company

25  and, for example, Federal Insurance.  I believe that to be true

1  as to American Financial and Advent and other insurance

2  companies that are making the calls.

3        I don't know if there is a direct relationship as to

4  the pseudo insurance products like Med-Sense and MCE.

5        THE COURT:  Okay.

6        MR. BURKE:  By the way, those are -- as I understand

7  them, they are sort of healthcare discount programs, so when

8  you go to the doctor, even though you have health insurance, I

9  guess those companies provide like a 20 percent discount on

10  your healthcare services.

11        THE COURT:  Okay.  Who wanted to go next?

12        MR. BURKE:  One more thing, Your Honor, I'm sorry.

13  Just compounding on how plaintiff -- it's hard for a plaintiff

14  to know what happened behind the scenes as to the sellers and

15  other entities.

16        I do have another case.  You know, these calls are so

17  prolific that I have three existing clients who received these

18  calls.  Two of them are in Illinois, and one is in Florida and

19  discovery is proceeding in one of the Illinois cases.  And --

20  but even then, I don't have a firm grasp on how this thing

21  works.

22        THE COURT:  Why wouldn't the better course be to

23  proceed against the direct violator and proceed with discovery,

24  find out what you are dealing with and then bring in those

25  additional defendants.

 1          MR. BURKE:  It is certainly a course of action that I

 2   could take.  You know, once you start going into taking

 3   depositions in the absence of a defendant that you clearly

 4   should have brought in in the first place, then when you try to

 5   add them as a defendant, you get these arguments that they have

 6   been prejudiced, that, you know, you've skirted the rules in

 7   trying to, you know, gain information without them in the first

 8   place.

 9          But I certainly have thought about doing it that way.

10          THE COURT:  But it would seem that even interrogatories

11   would perhaps reveal some of the information that you need to

12   properly plead.

13          MR. BURKE:  You got to find them.  I mean, the entity

14   that did the prerecorded message part of the telemarketing,

15   it's called Rising Eagle out of Texas, that guy was in jail for

16   like six months when we were trying to reach him.  I mean, that

17   guy made millions and millions of phone calls for which we have

18   the records.  We obtained those records from his South

19   Florida-based auto-dialing company called Fextel.

20          The phone carrier that Fextel used is called Solarity.

21   It's located in Hollywood, Florida, and those phone calls were

22   then after the prerecorded message when somebody pressed one.

23   Those phone calls were transferred to the Fort Lauderdale-based

24   Health Advisors of America, who made the pitch on behalf of HII

25   and these other defendants.

1          But this is a long way of getting to the point that

2     it's hard to know how this really worked and it's hard to prove

3     intent.  There is a case that came out of the Fourth District,

4     a TCPA case against Dish Network.  The case is certified.  It

5     went to trial, the class trial where plaintiff prevailed and

6     got a $21 million verdict which was trebled by the Court

7     because the Court found that the violations were intentional.

8     But the most important piece of evidence in that case were

9     communications between the seller defendant, Dish Network, that

10    engaged a vendor.  It was a direct engagement but engaged a

11    vendor to make the phone calls.  There were internal

12    communications at Dish with their lawyers that said, hey,

13    should we stop working with these guys and the lawyers said,

14    yes, stop working with them and they kept going.

15         Now, I don't expect to get that kind of evidence in

16    this case but, you know, certainly that is the kind of

17    knowledge that, you know, you can prove in court.  I would say,

18    at least on the level of not getting attorney-client privilege

19    materials, having a federal lawsuit pending when you make

20    subsequent calls that are almost -- I mean, the robo call was

21    identical.  The caller was the same.  The pitch was the same.

22    It was just different products that they were trying to sell.

23         And I have one more point until I am finished.  I do

24    want to take a step back and explain our theory of liability,

25    who is on the hook, according to us, who should be on the hook

1    for what calls.

2         Our position is that HII should be on the hook for all

3    calls.  HII, you know, is the one that is orchestrating and set

4    this whole thing up but the defendants that should be on the

5    hook for other calls, they should only be on the hook for calls

6    where their products or services were pitched or quoted.

7         It's the pitch or the quote that represents the

8    ratification.  I'm sure we will get to ratification, but these

9    Exhibits A and B attached to the complaint, these are offers

10   for insurance, some of which are signed, pre signed by the

11   defendants, and the only relationship between the defendants,

12   the seller defendants and the plaintiff is this telemarketing

13   call.  I mean, these contracts prefilled for the plaintiff

14   arose directly from the telemarketing calls.

15        We describe our theory of liability in paragraph 122.

16   We describe what I am explaining here, and we also explain it

17   in our brief, I believe, in footnotes 4, 6 and 7, so it's not

18   like -- I certainly understand that Your Honor wants us to

19   explain it better and we will, but our position is in there and

20   we would like the opportunity to clean it up.

21        THE COURT:  So the other areas that you all want to

22   address, what specifically are they?  Just tell me.

23        MR. McMANUS:  Judge, John McManus, on behalf of

24   American Financial Security Life Insurance Company.  The other

25   area, I was going to cover ratification and then the ATDS issue

 1    and then there were a couple of other areas that my co-counsel

 2    was going to cover.

 3           THE COURT:  I am interested in hearing the ATDS issue.

 4    Why is what they are alleging insufficient?  Is it simply

 5    because there was a live person as well?

 6           MR. McMANUS:  No, it's two issues.  The issue that you

 7    mention about the live person applies to the March 5th

 8    telephone call where the plaintiff called back.  I mean,

 9    obviously, if he is going to call the number back, that

10    particular call is not going to be a violation.  The other ones

11    he has plead it's a prerecorded voice call, and then the May

12    22nd call states -- it's kind of unclear whether it's placed

13    through an ATDS or there is a prerecorded voice.  He doesn't

14    mention that.  It's not plead very well with clarity.

15           The issue I wanted to mention, Your Honor, is there was

16    a recent decision by the Eleventh Circuit in Glasser versus

17    Hilton Grand Vacations.  It was issued at the end of the

18    January, January 27th, about what is an ATDS.  The Court was

19    basically faced with an issue of statutory construction, and

20    the issue before the Court was can an auto dialer or an ATDS

21    dial from a list of stored numbers that were given by another

22    party or does a ATDS, automated telephone dialing system, have

23    to be either stored or produced using sequential or a random

24    number generator.  And the Eleventh Circuit came out pretty

25    clearly, it's the latter.

1          In other words, what you can't do is what is alleged to

2   happen in this case, that the seller defendants provided HII

3   with a list of telephone numbers to call from, and then that

4   was reorganized using these telemarketers technologies to make

5   the most efficient way to call those numbers so a telemarketer

6   is free every time a call is placed and that allegation by the

7   plaintiff where I think they have essentially alleged

8   themselves out of an ATDS claim is on paragraph 89 of the

9   complaint.  It's on page 16 and 17 of the pleading.

10         And if you will bear with me, I will just read you what

11  they said because I think this is directly against what the

12  Glasser report said.

13         The auto dialer accessed the dataset provided by the

14  defendants or their vendor, sorted through that dataset to

15  determine which data to use to generate a list of numbers to

16  call, generated a brand new sequence for calling those numbers

17  based on complex algorithms and then called the numbers.  The

18  dialer randomly and sequentially generated phone numbers for

19  calling from a dataset.

20         I think when they are going to amend the complaint

21  they're going to fall smack into the Glasser case.  The Glasser

22  case is you can't take a list of numbers, prospects, provided

23  by, according to the plaintiff, the seller defendants and then

24  run technology on that using the telemarketers technology as he

25  alleges, and rearrange those numbers so they are in a

```
1    sequential or random number in order that it's more efficient

2    for the telemarketers' personnel to call those numbers.

3         Instead, the list of numbers in the first instance,

4    needs to be created sequentially and randomly, and then they

5    call off of that number.  It is not enough to dial off of a

6    preexisting list.

7         So I think by making this allegation, Your Honor, in

8    paragraph 89 of the complaint, they have plead themselves out

9    of count 1 because that it is not ATDS technology.  There are

10   other arguments we would make about the specificity with which

11   allegations were made about ATDS.  I don't think it's enough

12   but we can address that when the amended complaint is filed.

13        THE COURT:  Okay.  There has been some recent guidance

14   on the Eleventh Circuit regarding this issue.

15        MR. BURKE:  Yes, I acknowledge it's an uphill battle

16   for me on the ATDS issue.  I would request the opportunity to

17   investigate a little bit further.  Our dealings -- the

18   affidavit of John Spiller **SP** is attached to our brief at

19   Exhibit D, like dog, and this is what we have learned from the

20   guy who did the prerecorded message part of it and he just says

21   that the calls were made automatically.

22        We'd like the opportunity to try to replead it.  If we

23   do, we would be transparent about it.

24        There is also a petition -- there is a petition for

25   rehearing on the Glasser case, up on the Eleventh Circuit, so
```

1    we will see what happens with that.

2            So, Your Honor, I acknowledge that probably on the

3    Eleventh Circuit, not on the Ninth Circuit, but on the Eleventh

4    Circuit auto dialer claims are very tough.

5            THE COURT:  I am running out of time.  The last issue,

6    though -- and, again, I guess this is all kind of advisory.

7    I'd rather discuss these things now because I am going to give

8    you an opportunity to replead them.

9            The personal jurisdiction issue.

10           MR. ABRAHAMY:  Thank you, Judge.  Dariel Abrahamy on

11   behalf of Agile for this argument.

12           This is a tort claim.  The plaintiff is alleging that

13   Agile and BBI, Med-Sense, Teladoc and AUSA violated the TCPA

14   statute by making phone calls using a ATDS or pre-recorded

15   message.

16           The plaintiff isn't a citizen of Florida.  The

17   plaintiff alleges he is a citizen of Texas.  He doesn't allege

18   he received a phone call in Florida.

19           Simply said, there is no jurisdiction because none of

20   the tort claims arose out of a related contact from the State

21   of Florida.  Therefore, he has no claim for personal

22   jurisdiction for Agile, which is a Delaware corporation with

23   its principal place of business in Utah, and BBI, a New Jersey

24   corporation with a principal place of business in New Jersey.

25   Med-Sense, a Delaware corporation with principal place of

1   business in Missouri.  Teladoc, a Delaware corporation,

2   principal place of business in New York.  AUSA, an Illinois

3   corporation with a principal place of business in Arizona.  He

4   doesn't allege that the contact was with Florida, therefore,

5   the Court doesn't have specific jurisdiction over any of these

6   defendants.

7           In his opposition, for the first time, the plaintiff a

8   attempts to assert some sort of agency theory to hook these

9   defendants into personal jurisdiction in Florida, but for the

10  same reason that the plaintiff doesn't allege a plausible claim

11  for actual agency, apparent authority or ratification, he

12  doesn't allege a cause of action for personal jurisdiction

13  against these defendants under an agency theory.  So we'd ask

14  that the Court dismiss these defendants from this case with

15  prejudice.

16          THE COURT:  I don't know that I need a response.

17          I am going to grant the motion to dismiss, as I said I

18  would.  I will give you leave to amend.

19          How much time do you need?

20          MR. BURKE:  Your Honor, it's a super busy time of the

21  year.  Could I have four weeks, please?

22          Any objection to that?

23          All right.  Thirty days from today.

24          THE COURT:  Thank you.

25          MR. BURKE:  Thank you.

1         THE COURT:  Thank you very much.  Anything else we need

2    to take up since everyone is here from the plaintiff?

3         MR. BURKE:  No, thank you very much.

4         THE COURT:  From any of the defendants?

5         MR. FOSTER:  No, Your Honor.

6         THE COURT:  All right.  Thank you.  We will be in

7    recess.

8         COURT SECURITY OFFICER:  All rise.

9         THE COURT:  You can move about.  We are in recess.

10        (Proceedings were concluded at 3:27 p.m.)

11

12                    C E R T I F I C A T E

13

14

15        I hereby certify that the foregoing is an

16    accurate transcription of the proceedings in the

17    above-entitled matter.

18

19    March 23, 2020        /s/Patricia Diaz
      DATE                  PATRICIA DIAZ, FCRR, RPR, FPR
20                          Official Court Reporter
                            United States District Court
21                          400 North Miami Avenue, 11th Floor
                            Miami, Florida 33128
22                          (305) 523-5178

23

24

25

## $

**$21** [1] - 29:6

## '

**'19** [1] - 15:1

## /

**/s/Patricia** [1] - 36:19

## 1

**1** [1] - 33:9
**11th** [2] - 3:4, 36:21
**12** [1] - 11:23
**122** [1] - 30:15
**122-5** [1] - 14:7
**1259** [1] - 6:5
**1270** [1] - 6:12
**13th** [2] - 9:4, 12:19
**14** [1] - 10:18
**141** [1] - 5:14
**16** [1] - 32:9
**17** [1] - 32:9
**19-CV-60597** [1] - 4:4

## 2

**20** [1] - 27:9
**2017** [3] - 13:21, 14:3, 24:8
**2018** [2] - 14:9, 24:9
**2019** [5] - 6:6, 9:4, 10:8, 14:15, 14:18
**2020** [1] - 36:19
**22nd** [2] - 10:8, 31:12
**23** [1] - 36:19
**27th** [1] - 31:18

## 3

**3** [3] - 5:17, 10:18
**305** [2] - 3:5, 36:22
**33128** [2] - 3:4, 36:21
**35** [1] - 11:10
**3:27** [1] - 36:10

## 4

**4** [1] - 30:17
**400** [2] - 3:3, 36:21

**47** [1] - 9:1
**48** [1] - 9:1

## 5

**50** [1] - 5:17
**523-5178** [2] - 3:5, 36:22
**5th** [2] - 31:7

## 6

**6** [2] - 14:15, 30:17
**62** [1] - 11:9
**64** [1] - 11:9

## 7

**7** [1] - 30:17

## 8

**89** [2] - 32:8, 33:8

## 9

**942** [1] - 6:5
**9B** [3] - 13:18, 15:5, 25:8
**9th** [1] - 13:21

## A

**ability** [3] - 24:16, 24:21
**able** [1] - 19:9
**above-entitled** [1] - 36:16
**Abrahamy** [2] - 4:12, 34:10
**ABRAHAMY** [2] - 4:12, 34:10
**absence** [1] - 28:3
**absent** [2] - 18:23, 21:22
**absolutely** [2] - 17:10, 24:17
**access** [2] - 19:20, 21:17
**accessed** [1] - 32:13
**accessing** [1] - 10:20
**according** [2] - 20:8, 29:25, 32:23
**accurate** [1] - 36:15
**acknowledge** [2] -

33:15, 34:2
**acknowledged** [1] - 17:24
**acting** [1] - 22:25
**action** [6] - 5:5, 14:13, 14:25, 16:8, 28:1, 35:12
**actions** [1] - 18:1
**activity** [1] - 22:10
**acts** [1] - 21:10
**actual** [12] - 12:3, 17:13, 17:17, 17:23, 19:21, 21:21, 22:6, 22:9, 22:11, 23:7, 23:14, 35:11
**add** [2] - 15:15, 28:5
**additional** [2] - 16:6, 27:25
**address** [6] - 12:5, 17:1, 17:6, 17:16, 30:22, 33:12
**admission** [1] - 13:10
**advent** [1] - 20:7
**Advent** [1] - 27:1
**Advisors** [2] - 23:25, 28:24
**advisory** [1] - 34:6
**AEUSA** [1] - 4:5
**affidavit** [1] - 33:18
**afternoon** [8] - 4:9, 4:15, 4:17, 4:19, 4:21, 4:25, 5:2, 16:25
**agencies** [1] - 21:13
**agency** [24] - 12:2, 12:3, 17:13, 17:15, 17:17, 17:21, 17:23, 18:3, 18:8, 19:13, 21:21, 21:23, 22:6, 22:11, 22:23, 23:8, 23:12, 23:13, 24:12, 35:8, 35:11, 35:13
**agent** [5] - 17:24, 19:17, 23:20, 23:21
**agent's** [1] - 18:1
**agents** [6] - 10:20, 23:4, 23:19, 26:20, 26:21, 26:24
**Agile** [4] - 4:14, 34:11, 34:13, 34:22
**agree** [4] - 5:23, 15:17, 23:13, 24:13
**ahead** [1] - 14:13
**Alex** [1] - 4:25
**algorithms** [1] - 32:17
**allegation** [6] - 5:16, 14:22, 20:2, 20:3, 32:6, 33:7
**allegations** [21] -

5:15, 7:1, 7:3, 7:23, 10:16, 10:19, 10:23, 11:5, 12:15, 13:18, 15:5, 15:7, 16:13, 17:19, 17:20, 20:4, 20:8, 21:24, 22:12, 22:20, 33:11
**allege** [11] - 12:12, 13:17, 19:25, 21:23, 22:23, 25:1, 25:7, 34:17, 35:4, 35:10, 35:12
**alleged** [14] - 15:6, 15:20, 18:22, 18:25, 19:1, 21:7, 21:9, 21:20, 22:17, 23:6, 23:16, 25:8, 32:1, 32:7
**allegedly** [1] - 21:12
**alleges** [3] - 5:15, 32:25, 34:17
**alleging** [3] - 15:20, 31:4, 34:12
**almost** [1] - 29:20
**amend** [2] - 32:20, 35:18
**amended** [4] - 5:5, 5:19, 15:9, 33:12
**amending** [1] - 22:12
**America** [2] - 23:25, 28:24
**American** [6] - 4:2, 4:8, 26:18, 26:19, 27:1, 30:24
**amount** [1] - 22:12
**analysis** [1] - 24:12
**apologize** [2] - 5:6, 7:10
**apparent** [4] - 12:3, 17:14, 23:13, 35:11
**appear** [1] - 11:6
**appearance** [1] - 4:4
**appearing** [1] - 10:25
**application** [6] - 9:9, 10:1, 10:9, 10:10, 11:1, 20:13
**applies** [1] - 31:7
**approved** [1] - 19:22
**area** [1] - 30:25
**areas** [2] - 30:21, 31:1
**argument** [6] - 7:11, 8:18, 11:11, 17:17, 22:2, 34:11
**arguments** [2] - 28:5, 33:10
**arising** [1] - 13:7
**Arizona** [1] - 35:3
**arose** [2] - 30:14, 34:20

**Article** [2] - 6:7, 6:19
**aside** [1] - 17:18
**aspect** [1] - 24:21
**aspects** [2] - 8:11, 10:5
**assert** [1] - 35:8
**assist** [1] - 15:21
**Association** [5] - 4:18, 8:22, 9:1, 9:8, 9:9
**assume** [1] - 15:11
**assuming** [1] - 15:9
**assumption** [1] - 20:21
**ATDS** [11] - 30:25, 31:3, 31:13, 31:18, 31:20, 31:22, 32:8, 33:9, 33:11, 33:16, 34:14
**attach** [1] - 13:20
**attached** [4] - 14:6, 16:11, 30:9, 33:18
**attempting** [1] - 16:16
**attempts** [2] - 10:6, 35:8
**attention** [2] - 8:11, 16:3
**attorney** [1] - 29:18
**attorney-client** [1] - 29:18
**August** [1] - 15:1
**AUSA** [2] - 34:13, 35:2
**authority** [6] - 6:3, 23:14, 23:16, 23:17, 24:3, 35:11
**authorization** [1] - 10:24
**authorizing** [1] - 24:5
**auto** [4] - 28:19, 31:20, 32:13, 34:4
**auto-dialing** [1] - 28:19
**automated** [2] - 7:1, 31:22
**automatically** [1] - 33:21
**Avenue** [2] - 3:3, 36:21
**aware** [4] - 13:15, 13:18, 24:25
**Axis** [1] - 4:20

## B

**bare** [1] - 8:16
**based** [7] - 10:6,

10:25, 23:19, 28:19,
28:23, 32:17
  **basic** [1] - 24:24
  **basis** [1] - 10:5
  **battle** [1] - 33:15
  **BBI** [2] - 34:13, 34:23
  **bear** [1] - 32:10
  **beginning** [1] - 23:23
  **behalf** [19] - 4:5, 4:7,
4:10, 4:12, 4:16, 4:18,
4:20, 4:22, 5:3, 9:12,
11:15, 11:16, 12:16,
13:12, 17:1, 20:20,
28:24, 30:23, 34:11
  **behind** [1] - 27:14
  **Benefit** [1] - 4:23
  **better** [2] - 27:22,
30:19
  **between** [14] - 6:8,
17:13, 21:8, 21:15,
21:21, 22:7, 22:18,
22:21, 23:6, 24:15,
26:10, 26:24, 29:9,
30:11
  **beyond** [1] - 7:23
  **bit** [3] - 7:4, 8:8,
33:17
  **black** [1] - 17:23
  **BOBULSKY** [1] - 5:2
  **Bobulsky** [1] - 5:3
  **bones** [1] - 8:16
  **bottom** [1] - 9:3
  **brand** [1] - 32:16
  **branded** [1] - 19:8
  **break** [1] - 17:19
  **brief** [2] - 30:17,
33:18
  **briefly** [3] - 7:24, 8:8,
16:4
  **bring** [2] - 16:2,
27:24
  **broken** [1] - 12:2
  **broker** [2] - 25:2,
26:4
  **brought** [2] - 20:13,
28:4
  **Builders** [1] - 4:23
  **BURKE** [23] - 4:25,
11:22, 12:7, 12:10,
13:17, 14:6, 14:9,
15:11, 15:17, 23:10,
25:6, 26:2, 26:5,
26:12, 26:16, 27:6,
27:12, 28:1, 28:13,
33:15, 35:20, 35:25,
36:3
  **Burke** [4] - 4:25,
16:9, 17:2, 17:6
  **business** [8] - 14:4,
14:14, 26:13, 34:23,

34:24, 35:1, 35:2,
35:3
  **busy** [1] - 35:20
  **BY** [1] - 3:1

# C

  **California** [1] - 14:11
  **caller** [2] - 26:5,
29:21
  **callers** [2] - 21:16
  **cannot** [2] - 16:21,
18:4
  **carrier** [1] - 28:20
  **case** [30] - 4:3, 5:13,
8:19, 9:15, 14:5, 14:9,
14:11, 14:18, 15:8,
17:10, 17:11, 17:25,
18:2, 20:13, 21:4,
23:23, 24:2, 24:9,
25:20, 27:16, 29:3,
29:4, 29:8, 29:16,
32:2, 32:21, 32:22,
33:25, 35:14
  **cases** [5] - 22:3,
22:4, 22:5, 24:10,
27:19
  **cell** [1] - 6:14
  **certain** [1] - 16:10
  **certainly** [7] - 14:20,
19:16, 24:6, 28:1,
28:9, 29:16, 30:18
  **certified** [2] - 14:12,
29:4
  **certify** [1] - 36:14
  **change** [1] - 22:20
  **characterization** [1]
- 23:11
  **chase** [1] - 5:22
  **chunk** [1] - 15:18
  **Circuit** [13] - 5:13,
6:4, 6:5, 6:13, 6:15,
16:21, 31:16, 31:24,
33:14, 33:25, 34:3,
34:4
  **citations** [2] - 16:19
  **cited** [2] - 19:19,
22:3
  **citizen** [2] - 34:16,
34:17
  **claim** [8] - 9:20, 9:22,
10:5, 10:15, 32:8,
34:12, 34:21, 35:10
  **claims** [2] - 34:4,
34:20
  **clarity** [1] - 31:14
  **class** [4] - 5:5, 14:12,
14:25, 29:5
  **clean** [2] - 15:23,

30:20
  **clear** [4] - 5:13,
16:21, 17:11, 18:2
  **clearer** [1] - 12:15
  **clearly** [3] - 11:11,
28:3, 31:25
  **client** [5] - 8:22,
9:25, 20:25, 26:8,
29:18
  **clients** [2] - 21:1,
27:17
  **clients'** [1] - 19:6
  **close** [1] - 8:5
  **closer** [2] - 13:5,
17:4
  **co** [1] - 31:1
  **co-counsel** [1] - 31:1
  **cold** [1] - 14:23
  **combined** [1] - 17:19
  **coming** [2] - 14:4,
15:22
  **command** [1] - 18:9
  **communications** [2]
- 29:9, 29:12
  **companies** [5] -
14:2, 19:12, 21:11,
27:2, 27:9
  **Company** [3] - 4:3,
4:8, 30:24
  **company** [6] - 19:13,
23:20, 23:25, 26:17,
26:24, 28:19
  **complaint** [32] - 5:6,
5:10, 5:19, 6:20, 6:23,
8:13, 8:17, 8:23, 8:24,
10:15, 11:2, 11:6,
11:10, 12:14, 13:14,
13:20, 15:7, 15:9,
16:8, 16:16, 16:17,
16:23, 19:2, 21:25,
22:12, 22:24, 24:9,
30:9, 32:9, 32:20,
33:8, 33:12
  **complaints** [2] -
16:6, 16:9
  **completely** [1] -
22:20
  **complex** [1] - 32:17
  **compounding** [1] -
27:13
  **concede** [1] - 12:13
  **conceivable** [1] -
6:21
  **concept** [1] - 18:10
  **concluded** [1] -
36:10
  **conclusory** [5] -
9:12, 10:16, 10:19,
10:23, 11:10
  **concrete** [1] - 6:18

  **conduct** [3] - 17:8,
17:22, 19:17
  **confer** [1] - 6:12
  **conflict** [1] - 7:3
  **Congress** [1] - 4:22
  **consent** [2] - 14:22,
14:23
  **consider** [1] - 16:23
  **consisted** [1] - 10:10
  **constitute** [1] - 15:19
  **constituted** [1] -
6:15
  **construction** [1] -
31:19
  **consumer** [1] - 13:21
  **contact** [2] - 34:20,
35:4
  **contacted** [1] - 25:25
  **contained** [1] - 5:17
  **continue** [3] - 7:25,
14:25, 25:14
  **continued** [2] -
14:24, 26:3
  **contract** [2] - 12:21,
21:11
  **contracts** [6] - 21:12,
22:25, 23:1, 23:2,
23:4, 30:13
  **contractual** [9] -
21:3, 21:14, 21:15,
22:7, 23:5, 25:2,
26:14, 26:16, 26:23
  **contradicted** [1] -
20:4
  **control** [22] - 18:1,
18:2, 18:5, 18:8,
18:10, 18:11, 18:13,
18:14, 18:15, 18:18,
18:25, 19:1, 19:2,
19:3, 19:22, 19:23,
19:25, 21:4, 22:10,
24:16, 24:17, 24:21
  **controlling** [1] -
24:13
  **conversations** [1] -
9:5
  **Cordova** [1] - 6:4
  **corporation** [5] -
34:22, 34:24, 34:25,
35:1, 35:3
  **counsel** [3] - 16:7,
26:7, 31:1
  **Counsel** [1] - 4:4
  **counsel's** [1] - 23:11
  **Count** [1] - 5:17
  **count** [1] - 33:9
  **countless** [1] - 19:11
  **counts** [3] - 5:12,
5:13, 5:14
  **couple** [2] - 8:21,

31:1
  **course** [6] - 11:14,
17:5, 24:15, 26:6,
27:22, 28:1
  **COURT** [42] - 4:24,
5:4, 7:9, 7:18, 8:1,
8:4, 11:21, 11:25,
12:5, 12:9, 13:14,
14:5, 14:8, 15:7,
15:14, 15:24, 16:5,
16:24, 17:3, 18:21,
22:14, 23:9, 24:24,
25:17, 26:4, 26:9,
26:14, 27:5, 27:11,
27:22, 28:10, 30:21,
31:3, 33:13, 34:5,
35:16, 35:24, 36:1,
36:4, 36:6, 36:8, 36:9
  **Court** [15] - 3:2, 3:3,
4:1, 6:12, 15:21, 22:4,
24:14, 29:6, 29:7,
31:18, 31:20, 35:5,
35:14, 36:20, 36:20
  **court** [5] - 5:7, 14:7,
29:17
  **COURTROOM** [1] -
4:2
  **cover** [2] - 30:25,
31:2
  **create** [1] - 19:13
  **created** [1] - 33:4
  **cut** [1] - 5:21

# D

  **d/b/a** [1] - 4:14
  **Dariel** [2] - 4:12,
34:10
  **data** [1] - 32:15
  **dataset** [3] - 32:13,
32:14, 32:19
  **DATE** [1] - 36:19
  **day-to-day** [1] -
18:14
  **days** [1] - 35:23
  **dealers** [1] - 19:17
  **dealing** [1] - 27:24
  **dealings** [2] - 24:15,
33:17
  **decision** [1] - 31:16
  **decisions** [1] - 18:14
  **defendant** [12] - 6:1,
6:8, 6:21, 7:21, 7:22,
8:19, 9:19, 22:4, 22:9,
28:3, 28:5, 29:9
  **defendant's** [1] - 5:4
  **defendants** [58] -
5:23, 5:25, 6:8, 6:22,
7:1, 9:15, 9:17, 10:12,

10:22, 10:24, 11:6,
11:17, 13:15, 14:10,
14:13, 14:20, 16:10,
17:9, 17:20, 18:5,
19:25, 20:8, 20:10,
20:12, 21:7, 21:9,
21:11, 21:15, 21:22,
22:1, 22:19, 23:2,
23:3, 23:6, 23:22,
24:7, 24:18, 24:25,
25:11, 25:25, 26:11,
26:12, 26:17, 27:25,
28:25, 30:4, 30:11,
30:12, 32:2, 32:14,
32:23, 35:6, 35:9,
35:13, 35:14, 36:4
**defendants'** [3] - 7:5,
19:4, 19:21
**deficiencies** [1] -
17:16
**Delaware** [3] - 34:22,
34:25, 35:1
**depositions** [1] -
28:3
**DEPUTY** [1] - 4:2
**describe** [4] - 12:14,
19:9, 30:15, 30:16
**describes** [1] - 15:18
**DESIMONE** [8] -
4:17, 7:7, 7:10, 7:24,
8:2, 8:6, 16:2, 16:6
**DeSimone** [3] - 4:18,
7:10, 20:11
**determine** [1] - 32:15
**dial** [2] - 31:21, 33:5
**dialer** [4] - 31:20,
32:13, 32:18, 34:4
**dialing** [2] - 28:19,
31:22
**Diaz** [1] - 36:19
**DIAZ** [2] - 3:2, 36:19
**different** [1] - 29:22
**differentiating** [1] -
6:8
**direct** [16] - 21:3,
21:7, 21:13, 21:14,
21:20, 22:7, 22:16,
22:17, 22:21, 23:5,
25:15, 26:20, 26:23,
27:3, 27:23, 29:10
**Direct** [3] - 6:4,
25:20, 25:22
**directly** [5] - 22:5,
23:1, 30:14, 32:11
**disagree** [1] - 23:11
**discount** [2] - 27:7,
27:9
**discovery** [4] -
14:12, 18:23, 27:19,
27:23

**discuss** [1] - 34:7
**discussed** [1] - 9:13
**discussing** [1] - 16:3
**Dish** [3] - 29:4, 29:9,
29:12
**dismiss** [6] - 5:5,
16:11, 16:20, 16:22,
35:14, 35:17
**dismissal** [2] - 10:4,
16:16
**dismissed** [1] - 5:11
**dispute** [2] - 17:10,
22:15
**disputes** [1] - 17:7
**disputing** [1] - 12:10
**distinguish** [1] - 6:1
**District** [4] - 3:3,
14:11, 29:3, 36:20
**divided** [1] - 7:11
**docket** [2] - 13:20,
14:6
**Docket** [1] - 14:7
**doctor** [2] - 10:11,
27:8
**document** [1] - 10:12
**documents** [2] -
11:18, 15:13
**dog** [1] - 33:19
**done** [1] - 24:20
**doomed** [1] - 10:4
**down** [5] - 13:3,
23:24, 24:6, 24:11,
24:22
**draw** [1] - 8:10
**during** [7] - 9:18,
9:23, 11:14, 13:6,
13:9, 20:17

**E**

**e-mail** [1] - 13:7
**e-mailed** [1] - 12:22
**e-mails** [1] - 26:7
**Eagle** [1] - 28:15
**easiest** [1] - 25:16
**efficient** [2] - 32:5,
33:1
**either** [4] - 13:6,
21:25, 25:2, 31:23
**element** [1] - 18:2
**Eleventh** [11] - 5:13,
6:4, 6:5, 6:15, 16:20,
31:16, 31:24, 33:14,
33:25, 34:3
**employed** [1] - 9:6
**Employers** [1] - 4:22
**end** [1] - 31:17
**endure** [1] - 11:13
**engaged** [6] - 12:24,

13:4, 14:3, 26:12,
29:10
**engagement** [1] -
29:10
**entire** [1] - 8:24
**entities** [2] - 24:15,
27:15
**entitled** [1] - 36:16
**entity** [2] - 25:21,
28:13
**enumerated** [1] -
6:18
**essential** [1] - 18:2
**essentially** [3] -
20:21, 21:9, 32:7
**establish** [3] - 17:21,
18:4, 25:19
**establishing** [1] -
18:3
**eventually** [1] - 9:8
**evidence** [2] - 29:8,
29:15
**exactly** [1] - 25:12
**example** [11] - 6:10,
10:8, 12:18, 13:20,
13:22, 18:15, 19:3,
19:19, 20:12, 20:18,
26:25
**examples** [2] - 19:3,
19:11
**except** [1] - 21:7
**Exhibit** [4] - 12:21,
13:10, 14:7, 33:19
**exhibits** [1] - 15:19
**Exhibits** [1] - 30:9
**existing** [1] - 27:17
**expect** [2] - 12:7,
29:15
**explain** [3] - 29:24,
30:16, 30:19
**explaining** [1] -
30:16
**explicit** [1] - 23:15
**expressed** [1] -
23:15

**F**

**F.3d** [1] - 6:5
**faced** [1] - 31:19
**facing** [1] - 13:22
**fact** [4] - 6:15, 11:18,
19:19, 24:5
**facts** [8] - 8:16, 8:19,
10:23, 11:13, 13:19,
15:19, 22:15, 23:17
**factual** [4] - 11:3,
11:4, 11:5, 22:20
**factually** [1] - 6:1

**failed** [3] - 8:14,
8:16, 25:12
**failures** [1] - 8:11
**fall** [1] - 32:21
**far** [1] - 25:17
**FCRR** [2] - 3:2, 36:19
**February** [3] - 9:4,
12:19, 14:18
**Federal** [7] - 4:5,
13:25, 15:5, 25:7,
25:8, 26:18, 26:25
**federal** [2] - 14:25,
29:19
**few** [2] - 8:11, 18:6
**Fextel** [2] - 28:19,
28:20
**file** [2] - 5:18, 14:25
**filed** [8] - 13:20,
14:9, 14:15, 14:18,
16:10, 24:10, 25:10,
33:12
**filing** [1] - 25:18
**Financial** [4] - 4:3,
4:8, 26:19, 27:1,
30:24
**finished** [1] - 29:23
**firm** [1] - 27:20
**first** [7] - 7:6, 7:14,
13:17, 14:17, 16:11,
17:1, 23:11, 28:4,
28:7, 33:3, 35:7
**Fitzhenry** [2] - 13:21,
24:9
**five** [1] - 20:5
**Floor** [2] - 3:4, 36:21
**Florida** [11] - 3:4,
23:19, 27:18, 28:19,
28:21, 34:16, 34:18,
34:21, 35:4, 35:9,
36:21
**Florida-based** [2] -
23:19, 28:19
**focused** [1] - 8:9
**folded** [1] - 24:1
**folks** [1] - 24:2
**followed** [1] - 12:3
**following** [1] - 9:11
**footnotes** [1] - 30:17
**foregoing** [2] - 5:15,
36:14
**forestall** [1] - 16:21
**formal** [1] - 23:13
**forms** [1] - 19:22
**Fort** [1] - 28:23
**forth** [1] - 5:16
**forward** [1] - 24:6
**FOSTER** [8] - 4:15,
12:1, 16:1, 16:25,
17:5, 18:24, 22:16,
36:5

**Foster** [2] - 4:15,
16:25
**four** [2] - 23:12,
35:21
**Fourth** [1] - 29:3
**FPR** [2] - 3:2, 36:19
**franchise/
franchisee** [1] - 19:14
**franchisee** [2] -
19:15, 19:16
**franchisee's** [1] -
19:17
**franchisor** [1] -
19:16
**franchisor's** [1] -
19:16
**free** [1] - 32:6
**frequently** [1] -
18:19
**fully** [1] - 5:16
**fundamentally** [1] -
8:14
**furthermore** [1] -
14:9

**G**

**gain** [1] - 28:7
**Garry** [1] - 4:9
**gathering** [1] - 15:13
**general** [1] - 20:3
**generally** [3] - 13:19,
15:6, 25:8
**generate** [2] - 26:13,
32:15
**generated** [2] -
32:16, 32:18
**generator** [1] - 31:24
**given** [1] - 31:21
**Glasser** [5] - 31:16,
32:12, 32:21, 33:25
**goods** [1] - 22:8
**gotta** [1] - 21:4
**Grand** [1] - 31:17
**grant** [1] - 35:17
**grasp** [1] - 27:20
**great** [2] - 10:16,
12:12
**Group** [1] - 4:6
**group** [1] - 9:14
**Guaranteed** [5] -
4:18, 8:22, 8:25, 9:8,
9:9
**guess** [3] - 21:22,
27:9, 34:6
**guidance** [1] - 33:13
**guide** [2] - 15:9,
15:12
**guy** [3] - 28:15,

28:17, 33:20
**guys** [3] - 23:24,
24:11, 29:13

## H

**HAA** [4] - 23:25,
24:7, 24:19, 26:24
**half** [1] - 13:5
**hard** [3] - 27:13, 29:2
**harm** [1] - 7:21
**head** [1] - 34:6
**health** [2] - 20:7,
27:8
**Health** [5] - 4:11,
4:12, 4:16, 23:25,
28:24
**healthcare** [2] - 27:7,
27:10
**Healthpocket** [1] -
4:13
**hear** [4] - 5:9, 7:5,
7:8, 7:13
**hearing** [3] - 5:20,
20:19, 31:3
**held** [3] - 6:13,
12:11, 17:12
**hello** [1] - 20:19
**help** [1] - 26:12
**helpful** [2] - 7:17, 9:3
**Helpline** [2] - 4:10,
4:13
**hereby** [1] - 36:14
**herein** [1] - 5:16
**HII** [22] - 13:24, 14:3,
14:10, 14:11, 14:14,
19:3, 20:2, 21:7,
21:10, 21:11, 21:12,
21:18, 22:18, 22:25,
24:6, 26:5, 26:11,
26:12, 28:24, 30:2,
30:3, 32:2
**HII's** [2] - 13:8, 23:3
**Hilton** [1] - 31:17
**himself** [1] - 22:17
**hired** [2] - 22:9,
22:22
**Hollywood** [1] -
28:21
**Honor** [34] - 4:9,
4:15, 4:17, 4:19, 4:21,
5:2, 7:7, 7:13, 8:2,
8:6, 8:9, 8:20, 8:23,
9:2, 9:14, 10:17,
11:12, 11:19, 11:22,
12:1, 12:8, 15:11,
16:1, 16:2, 16:25,
17:5, 18:24, 27:12,
30:18, 31:15, 33:7,

34:2, 35:20, 36:5
**Honor's** [1] - 8:10
**hook** [6] - 29:25,
30:2, 30:5, 35:8
**Hossfeld** [1] - 4:2
**hour** [1] - 13:5
**HR** [1] - 19:20

## I

**identical** [2] - 10:9,
29:21
**identifies** [1] - 9:5
**identifying** [2] - 7:20,
13:8
**III** [2] - 6:7, 6:19
**Illinois** [3] - 27:18,
27:19, 35:2
**illustrating** [1] - 8:20
**impecunious** [1] -
24:1
**implied** [4] - 23:14,
23:16, 23:17, 24:3
**important** [1] - 29:8
**importantly** [1] -
17:25
**improper** [1] - 16:18
**improperly** [2] - 5:24
**Inc** [5] - 4:11, 4:13,
4:16, 4:22, 4:23
**included** [1] - 20:14
**includes** [1] - 10:21
**including** [1] - 26:18
**incorporate** [2] -
5:12, 5:14
**incorporates** [1] -
5:15
**individual** [3] -
13:15, 18:5, 25:24
**individualized** [1] -
21:25
**individuals** [4] -
18:18, 19:11, 21:16,
21:17
**infer** [1] - 20:19
**inference** [2] - 8:18,
24:3
**inferred** [1] - 10:24
**information** [4] -
10:21, 19:21, 28:7,
28:11
**injury** [2] - 6:15, 6:18
**Innovations** [2] -
4:10, 4:13
**instance** [3] - 19:14,
22:22, 33:3
**instances** [1] - 17:12
**instead** [3] - 9:25,
10:15, 33:3

**instruction** [1] - 18:9
**insufficient** [3] -
17:21, 19:1, 31:4
**Insurance** [10] - 4:3,
4:5, 4:8, 4:10, 4:13,
4:20, 13:25, 26:18,
26:25, 30:24
**insurance** [15] -
10:20, 21:13, 21:17,
23:4, 23:19, 23:20,
23:21, 26:17, 26:21,
26:24, 27:1, 27:4,
27:8, 30:10
**intent** [1] - 29:3
**intentional** [1] - 29:7
**interested** [2] - 13:1,
31:3
**internal** [2] - 7:2,
29:11
**interrogatories** [1] -
28:10
**inundated** [1] - 5:8
**investigate** [1] -
33:17
**investigatory** [1] -
15:13
**Iqbal** [7] - 7:15, 7:19,
8:8, 8:11, 11:11,
11:19, 15:10
**issue** [18] - 5:19,
6:25, 15:16, 15:25,
16:24, 17:18, 20:6,
22:13, 30:25, 31:3,
31:6, 31:15, 31:19,
31:20, 33:14, 33:16,
34:5, 34:9
**issued** [1] - 31:17
**issues** [5] - 5:21, 7:9,
7:15, 12:4, 31:6
**itself** [2] - 13:11,
19:23

## J

**jail** [1] - 28:15
**January** [2] - 31:18
**Jersey** [2] - 34:23,
34:24
**John** [4] - 4:6, 4:7,
30:23, 33:18
**joint** [1] - 5:5
**Josef** [1] - 4:21
**Judge** [4] - 6:10,
23:10, 30:23, 34:10
**judgment** [1] - 16:14
**jurisdiction** [7] -
6:25, 34:9, 34:19,
34:22, 35:5, 35:9,
35:12

**jurisdictional** [1] -
12:4
**Justin** [1] - 4:19

## K

**KELLY** [1] - 4:5
**Kelly** [1] - 4:6
**kept** [1] - 29:14
**kind** [6] - 10:4,
25:19, 29:15, 29:16,
31:12, 34:6
**knowledge** [5] -
13:18, 15:5, 25:7,
25:17, 29:17

## L

**last** [1] - 34:5
**latter** [1] - 31:25
**Lauderdale** [1] -
28:23
**Lauderdale-based**
[1] - 28:23
**law** [7] - 5:13, 15:20,
17:11, 17:23, 18:2,
21:4, 26:19
**Law** [1] - 4:6
**lawsuit** [6] - 13:24,
14:15, 25:18, 26:1,
29:19
**lawsuits** [1] - 16:13
**lawyers** [2] - 29:12,
29:13
**leads** [1] - 18:16
**learned** [2] - 24:8,
33:19
**leave** [1] - 35:18
**legal** [2] - 6:2, 17:10
**lengths** [1] - 10:16
**letter** [1] - 17:23
**level** [2] - 26:8, 29:18
**liability** [6] - 7:4,
12:2, 15:25, 23:12,
29:24, 30:15
**liable** [7] - 9:19,
12:11, 17:8, 17:12,
21:1, 22:5, 23:13
**licensees** [1] - 19:18
**Life** [3] - 4:3, 4:8,
30:24
**limited** [1] - 16:12
**line** [1] - 9:3
**link** [3] - 9:8, 10:1,

13:8
**list** [8] - 18:16, 18:20,
31:21, 32:3, 32:15,
32:22, 33:3, 33:6
**listed** [1] - 9:10
**litigation** [1] - 26:6
**live** [4] - 7:3, 13:3,
31:5, 31:7
**LLC** [1] - 6:4
**located** [1] - 28:21
**logo** [1] - 19:12
**logos** [4] - 19:4,
19:5, 19:10, 19:15
**look** [4] - 10:17,
22:3, 24:14
**looking** [1] - 12:11
**lumped** [1] - 21:25
**lumping** [1] - 5:24

## M

**mail** [1] - 13:7
**mailed** [1] - 12:22
**mails** [1] - 26:7
**maintained** [3] -
18:1, 18:5, 22:10
**majority** [3] - 8:17,
11:2, 11:5
**manifested** [1] -
17:25
**manner** [5] - 18:11,
18:13, 19:23, 19:25,
21:5
**manufacturers** [1] -
19:18
**March** [4] - 14:15,
14:19, 31:7, 36:19
**Marcus** [2] - 6:10
**Mark** [1] - 13:21
**marketers** [2] -
10:20, 21:13
**marketing** [1] - 15:2
**material** [1] - 16:10
**materials** [2] - 10:9,
29:19
**matter** [4] - 11:4,
16:2, 16:3, 36:16
**matters** [2] - 10:17,
16:7, 16:17
**Matthew** [1] - 5:2
**MCE** [1] - 27:4
**McManus** [5] - 4:7,
30:23, 31:6
**mean** [23] - 5:13,
7:18, 7:19, 8:20,
12:13, 14:20, 14:22,
14:24, 15:9, 16:8,
22:15, 23:18, 24:4,
24:6, 24:9, 25:1, 25:8,

26:6, 28:13, 28:16, 29:20, 30:13, 31:8
**means** [7] - 17:8, 18:11, 18:13, 19:23, 20:1, 21:5
**Med** [21] - 4:18, 7:11, 8:22, 8:25, 9:7, 9:9, 9:12, 9:21, 9:22, 9:24, 9:25, 10:1, 11:16, 12:18, 12:20, 13:12, 13:13, 13:22, 27:4, 34:13, 34:25
**Med-Sense** [20] - 4:18, 7:11, 8:22, 8:25, 9:7, 9:9, 9:12, 9:21, 9:22, 9:24, 9:25, 11:16, 12:18, 12:20, 13:12, 13:13, 13:22, 27:4, 34:13, 34:25
**Med-Sense's** [1] - 10:1
**meets** [1] - 6:18
**mention** [3] - 31:7, 31:14, 31:15
**mentioned** [2] - 20:12, 20:17
**mentions** [1] - 20:6
**meritorious** [1] - 16:22
**message** [4] - 28:14, 28:22, 33:20, 34:15
**Miami** [5] - 3:3, 3:4, 23:19, 36:21, 36:21
**Miami-based** [1] - 23:19
**Michael** [2] - 4:17, 7:10
**microphone** [2] - 8:5, 17:3
**middleman** [3] - 21:10, 22:18, 22:25
**might** [1] - 22:15
**million** [1] - 29:6
**millions** [2] - 28:17
**minimal** [1] - 6:19
**minimum** [1] - 5:11
**minutia** [1] - 24:13
**missing** [2] - 5:7, 25:5
**Missouri** [1] - 35:1
**mix** [1] - 26:18
**months** [2] - 18:7, 28:16
**Moser** [3] - 14:10, 15:8, 24:9
**most** [4] - 8:17, 24:22, 29:8, 32:5
**motion** [6] - 5:5, 7:5, 16:11, 16:20, 16:22, 35:17

**move** [1] - 36:9
**MR** [49] - 4:5, 4:7, 4:9, 4:12, 4:15, 4:17, 4:19, 4:21, 4:25, 5:2, 7:7, 7:10, 7:24, 8:2, 8:6, 11:22, 12:1, 12:7, 12:10, 13:17, 14:6, 14:9, 15:11, 15:17, 16:1, 16:2, 16:6, 16:25, 17:5, 18:24, 22:16, 23:10, 25:6, 26:2, 26:5, 26:12, 26:16, 27:6, 27:12, 28:1, 28:13, 30:23, 31:6, 33:15, 34:10, 35:20, 35:25, 36:3, 36:5
**must** [2] - 11:4, 19:21
**muster** [1] - 15:10
**MYSOREWALA** [1] - 4:21
**Mysorewala** [1] - 4:22

## N

**name** [4] - 10:1, 10:13, 10:25, 26:19
**names** [1] - 18:16
**National** [2] - 4:22, 4:23
**nature** [1] - 8:9
**NCE** [2] - 13:25, 14:10
**necessarily** [1] - 9:18
**need** [7] - 17:23, 25:6, 25:22, 28:11, 35:16, 35:19, 36:1
**needs** [2] - 24:14, 33:4
**Network** [2] - 29:4, 29:9
**new** [1] - 32:16
**New** [3] - 34:23, 34:24, 35:2
**next** [4] - 11:25, 12:1, 16:24, 27:11
**nexus** [1] - 9:25
**Ninth** [1] - 34:3
**nobody** [1] - 12:10
**non** [1] - 17:11
**non-calling** [1] - 17:11
**nonconsensual** [1] - 14:21
**none** [3] - 10:24, 20:7, 34:19

**North** [2] - 3:3, 36:21
**notably** [1] - 24:22
**noted** [1] - 6:12
**nothing** [2] - 10:6, 10:25
**notice** [2] - 14:2, 25:15
**November** [1] - 6:6
**number** [5] - 4:3, 31:9, 31:24, 33:1, 33:5
**numbers** [12] - 18:17, 31:21, 32:3, 32:5, 32:15, 32:16, 32:17, 32:18, 32:22, 32:25, 33:2, 33:3

## O

**O'DONNELL** [1] - 4:9
**O'Donnell** [1] - 4:10
**objection** [1] - 35:22
**obtained** [1] - 28:18
**obviously** [3] - 7:13, 19:14, 31:9
**offered** [1] - 21:1
**offers** [1] - 30:9
**OFFICER** [1] - 36:8
**official** [1] - 3:2
**Official** [1] - 36:20
**often** [1] - 18:19
**once** [1] - 28:2
**one** [28] - 6:16, 6:21, 6:22, 7:6, 9:23, 11:6, 11:24, 12:6, 12:8, 12:18, 12:25, 13:2, 13:4, 15:12, 16:2, 17:7, 17:18, 20:6, 24:14, 25:16, 27:12, 27:18, 27:19, 28:22, 29:23, 30:3
**ones** [1] - 31:10
**operational** [1] - 18:14
**operator** [1] - 9:24
**opinion** [3] - 6:4, 6:5, 6:10
**opportunity** [8] - 15:23, 20:15, 23:23, 24:20, 30:20, 33:16, 33:22, 34:8
**opposition** [2] - 16:11, 35:7
**orchestrating** [1] - 30:3
**Order** [1] - 4:1
**order** [2] - 7:25, 33:1
**organizations** [1] - 9:6

**originally** [1] - 14:20
**otherwise** [1] - 16:22
**ourselves** [1] - 7:11
**outrageous** [1] - 14:24
**outside** [1] - 16:7

## P

**p.m** [1] - 36:10
**packet** [1] - 20:14
**page** [2] - 6:12, 32:9
**paradigmatic** [1] - 9:16
**paragraph** [8] - 5:14, 5:17, 9:11, 9:21, 11:9, 30:15, 32:8, 33:8
**paragraphs** [8] - 8:21, 8:24, 9:1, 9:16, 10:18, 11:7, 15:18
**part** [5] - 23:22, 24:12, 28:14, 33:20
**particular** [2] - 9:21, 31:10
**particularized** [2] - 7:21, 8:19
**particularly** [1] - 7:20
**parties** [1] - 5:9
**party** [8] - 17:11, 21:2, 21:12, 21:21, 22:6, 22:7, 22:8, 31:22
**passed** [1] - 15:9
**passive** [1] - 18:8
**PATRICIA** [2] - 3:2, 36:19
**pending** [1] - 29:19
**people** [1] - 9:5
**percent** [1] - 27:9
**perhaps** [3] - 6:22, 25:13, 28:11
**permitted** [2] - 10:3, 25:14
**persist** [1] - 24:4
**person** [9] - 7:3, 7:14, 13:4, 13:5, 17:13, 20:22, 25:20, 31:5, 31:7
**person's** [1] - 19:8
**personal** [5] - 6:25, 34:9, 34:21, 35:9, 35:12
**personnel** [1] - 33:2
**petition** [1] - 33:24
**phone** [20] - 6:14, 9:14, 11:14, 12:12, 12:16, 12:19, 14:16, 14:17, 15:18, 25:9,

25:14, 28:17, 28:20, 28:21, 28:23, 29:11, 32:18, 34:14, 34:18
**piece** [1] - 29:8
**pitch** [3] - 28:24, 29:21, 30:7
**pitched** [1] - 30:6
**place** [8] - 9:20, 28:4, 28:8, 34:23, 34:24, 34:25, 35:2, 35:3
**placed** [6] - 13:12, 14:2, 21:16, 25:15, 31:12, 32:6
**Plaintiff** [1] - 5:15
**plaintiff** [50] - 4:24, 5:1, 5:3, 5:24, 8:14, 8:15, 9:3, 9:16, 10:3, 10:6, 10:12, 11:13, 11:14, 11:17, 12:23, 14:17, 16:15, 16:21, 17:19, 18:4, 18:6, 18:21, 18:25, 20:9, 20:14, 20:16, 20:18, 20:24, 21:9, 21:24, 22:3, 22:17, 22:20, 23:6, 25:25, 27:13, 29:5, 30:12, 30:13, 31:8, 32:7, 32:23, 34:12, 34:16, 34:17, 35:7, 35:10, 36:2
**plaintiff's** [5] - 5:5, 11:3, 17:16, 20:4, 20:8
**plaintiffs** [5] - 10:9, 14:22, 19:19, 19:24, 21:19
**planned** [1] - 7:25
**planning** [1] - 6:2
**platform** [2] - 23:3, 23:5
**plausible** [1] - 35:10
**play** [1] - 5:21
**plead** [8] - 7:19, 8:16, 10:6, 10:14, 28:12, 31:11, 31:14, 33:8
**pleaded** [2] - 16:17, 23:17
**pleading** [5] - 5:11, 7:15, 10:5, 10:12, 32:9
**pleadings** [1] - 8:10
**pleads** [1] - 9:12
**Pocket** [1] - 4:11
**podium** [1] - 8:4
**point** [6] - 9:18, 9:22, 21:6, 25:5, 29:1, 29:23
**pointed** [1] - 20:11
**policy** [1] - 9:9

**policyholder** [1] - 9:10
**portal** [2] - 10:21
**position** [3] - 12:14, 30:2, 30:19
**possibly** [1] - 19:8
**potentially** [1] - 22:23
**pre** [2] - 30:10, 34:14
**pre-recorded** [1] - 34:14
**preceding** [1] - 5:12
**preexisting** [1] - 33:6
**prefer** [2] - 8:2, 12:5
**prefilled** [2] - 10:10, 30:13
**prejudice** [1] - 35:15
**prejudiced** [1] - 28:6
**prerecorded** [7] - 12:25, 13:3, 28:14, 28:22, 31:11, 31:13, 33:20
**press** [1] - 12:25
**pressed** [3] - 13:2, 13:4, 28:22
**presumably** [1] - 10:24
**pretty** [4] - 5:8, 5:13, 14:24, 31:24
**prevailed** [1] - 29:5
**previous** [1] - 25:18
**pricing** [1] - 19:21
**primarily** [1] - 12:12
**principal** [8] - 17:24, 18:1, 18:11, 34:23, 34:24, 34:25, 35:2, 35:3
**privilege** [1] - 29:18
**problem** [1] - 7:19
**problems** [1] - 8:13
**proceed** [3] - 7:17, 27:23
**proceeded** [1] - 14:12
**proceeding** [1] - 27:19
**Proceedings** [1] - 36:10
**proceedings** [1] - 36:15
**produced** [1] - 31:23
**product** [7] - 19:6, 19:8, 19:9, 19:22, 19:23
**products** [9] - 12:20, 13:8, 13:13, 17:14, 23:3, 23:4, 27:4, 29:22, 30:6
**programs** [1] - 27:7
**prohibited** [1] - 5:17

**prolific** [1] - 27:17
**proof** [1] - 16:15
**properly** [1] - 28:12
**proposition** [4] - 6:6, 17:10, 20:25, 24:24
**prospects** [1] - 32:22
**prove** [2] - 29:2, 29:17
**provide** [2] - 18:16, 27:9
**provided** [7] - 9:8, 10:1, 20:2, 20:22, 32:2, 32:13, 32:22
**provisions** [1] - 6:17
**pseudo** [1] - 27:4
**pull** [2] - 8:5, 17:3
**purposes** [1] - 12:18

**Q**

**quite** [2] - 16:12, 16:21
**quote** [1] - 30:7
**quoted** [2] - 21:17, 30:6
**quotes** [1] - 21:18

**R**

**raise** [1] - 7:9
**random** [2] - 31:23, 33:1
**randomly** [2] - 32:18, 33:4
**rather** [4] - 8:15, 8:18, 11:24, 34:7
**ratification** [9] - 12:3, 13:11, 17:15, 23:14, 25:13, 30:8, 30:25, 35:11
**ratified** [2] - 25:3, 25:4
**re** [1] - 5:15
**re-alleges** [1] - 5:15
**reach** [1] - 28:16
**read** [3] - 9:2, 20:16, 32:10
**reading** [2] - 6:3, 6:23
**really** [5] - 8:13, 8:17, 9:13, 18:22, 29:2
**rearrange** [1] - 32:25
**reason** [2] - 15:3, 35:10
**receipt** [2] - 6:13, 6:16
**received** [8] - 10:9,

12:24, 13:7, 20:14, 25:20, 27:17, 34:18
**receiving** [1] - 20:15
**recent** [3] - 6:3, 31:16, 33:13
**recently** [1] - 5:7
**recess** [2] - 36:7, 36:9
**recorded** [1] - 34:14
**recording** [1] - 6:14
**records** [2] - 28:18
**rectify** [1] - 22:13
**referred** [2] - 9:23, 16:7
**referring** [4] - 15:8, 16:15, 16:16, 17:9
**regard** [1] - 9:21
**regarding** [9] - 6:25, 7:1, 8:19, 10:21, 11:7, 15:15, 15:24, 16:20, 33:14
**rehearing** [1] - 33:25
**related** [1] - 34:20
**relates** [2] - 8:25, 25:13
**relationship** [32] - 17:13, 17:15, 17:21, 18:3, 19:13, 19:14, 21:3, 21:8, 21:10, 21:14, 21:15, 21:20, 21:21, 21:23, 22:6, 22:7, 22:11, 22:16, 22:18, 22:21, 22:23, 23:5, 23:8, 24:7, 24:19, 25:2, 26:10, 26:14, 26:23, 26:24, 27:3, 30:11
**relationships** [1] - 26:20
**remain** [1] - 17:7
**remember** [1] - 15:12
**reorganized** [1] - 32:4
**replead** [6] - 6:25, 10:3, 10:4, 10:14, 33:22, 34:8
**reply** [1] - 16:20
**report** [1] - 32:12
**REPORTED** [1] - 3:1
**Reporter** [2] - 3:2, 36:20
**represents** [1] - 30:7
**request** [1] - 33:16
**requirements** [1] - 6:19
**requires** [3] - 18:8, 18:9, 21:23
**respect** [5] - 17:16, 17:22, 19:17, 20:5, 21:6

**respond** [2] - 11:23, 11:24
**response** [3] - 19:2, 22:3, 35:16
**responsible** [1] - 6:21
**rest** [1] - 11:10
**resulted** [1] - 16:14
**reveal** [1] - 28:11
**reviewed** [1] - 5:8
**rise** [1] - 36:8
**Rising** [1] - 28:15
**robo** [1] - 29:20
**RPR** [2] - 3:2, 36:19
**Rule** [3] - 13:18, 15:5, 25:8
**Rules** [1] - 25:7
**rules** [1] - 28:6
**run** [1] - 32:24
**running** [1] - 34:5
**RX** [2] - 4:10, 4:13

**S**

**sale** [2] - 21:1, 23:22
**save** [2] - 11:24, 16:16
**scenes** [1] - 27:14
**scope** [1] - 16:7
**script** [5] - 20:6, 20:7, 20:16, 20:22
**scripts** [2] - 20:2, 20:9
**second** [3] - 5:18, 14:16, 21:6
**section** [1] - 11:6
**Security** [3] - 4:3, 4:8, 30:24
**SECURITY** [1] - 36:8
**see** [1] - 34:1
**seem** [1] - 28:10
**sell** [6] - 12:20, 19:6, 19:8, 19:21, 23:4, 29:22
**seller** [23] - 9:15, 9:17, 11:16, 17:20, 18:16, 19:4, 19:21, 19:25, 21:9, 21:10, 21:15, 21:22, 22:5, 22:19, 23:2, 23:6, 23:12, 24:7, 29:9, 30:12, 32:2, 32:23
**sellers** [4] - 12:10, 17:7, 17:9, 27:14
**selling** [5] - 13:13, 19:7, 24:25, 26:10, 26:12
**Sense** [20] - 4:18, 7:11, 8:22, 8:25, 9:7,

9:9, 9:12, 9:21, 9:22, 9:24, 9:25, 11:16, 12:18, 12:20, 13:12, 13:13, 13:22, 27:4, 34:13, 34:25
**sense** [3] - 11:22, 13:19, 26:8
**Sense's** [1] - 10:1
**sent** [2] - 10:12, 26:6
**sequence** [1] - 32:16
**sequential** [2] - 31:23, 33:1
**sequentially** [2] - 32:18, 33:4
**services** [8] - 10:11, 12:20, 13:9, 13:13, 20:21, 20:25, 27:10, 30:6
**set** [2] - 22:24, 30:3
**sets** [1] - 5:16
**setting** [1] - 17:18
**settling** [1] - 11:18
**several** [1] - 24:10
**shotgun** [3] - 5:11, 7:16, 8:9
**show** [5] - 6:7, 8:20, 19:24, 21:4, 23:17
**shows** [1] - 24:5
**shut** [5] - 23:23, 24:6, 24:11, 24:20, 24:22
**signed** [2] - 30:10
**simplest** [2] - 25:9, 25:11
**simply** [5] - 6:23, 21:4, 22:11, 31:4, 34:19
**single** [2] - 6:11, 6:13
**six** [1] - 28:16
**skirted** [1] - 28:6
**smack** [1] - 32:21
**so-and-so** [1] - 29:6
**Solarity** [1] - 28:20
**sold** [5] - 9:17, 13:9, 13:11, 17:14, 22:8
**someone** [5] - 11:15, 13:1, 18:19, 18:20, 19:7
**somewhat** [1] - 8:9
**sooner** [1] - 5:6
**SOREL** [1] - 4:19
**Sorel** [1] - 4:19
**sorry** [2] - 26:9, 27:12
**sort** [4] - 7:25, 17:15, 27:7, 35:8
**sorted** [1] - 32:14
**Soto** [1] - 4:6
**South** [1] - 28:18

**Southern** [1] - 14:11
**SP** [1] - 33:18
**speaking** [1] - 13:1
**specific** [7] - 7:8,
11:7, 12:17, 20:4,
21:24, 26:9, 35:5
**specifically** [4] -
6:11, 18:9, 20:4,
30:22
**specificity** [4] -
12:13, 18:25, 25:1,
33:10
**specify** [1] - 8:25
**speculation** [2] - 9:7,
10:17
**Spiller** [1] - 33:18
**spoken** [1] - 11:15
**standing** [4] - 6:7,
6:12, 6:19, 22:18
**start** [2] - 7:17, 28:2
**starting** [1] - 11:10
**state** [1] - 14:6
**State** [1] - 34:20
**statements** [1] - 12:8
**States** [2] - 3:3,
36:20
**states** [1] - 31:12
**statute** [1] - 34:14
**statutory** [1] - 31:19
**stay** [1] - 9:14
**STENOGRAPHICA**
**LLY** [1] - 3:1
**step** [1] - 29:24
**still** [2] - 5:20, 5:21
**stop** [8] - 15:2,
25:12, 25:22, 25:23,
26:2, 26:7, 29:13,
29:14
**stored** [2] - 31:21,
31:23
**structure** [1] - 7:12
**stuff** [2] - 15:2, 15:17
**sub** [1] - 21:23
**subject** [1] - 14:18
**subjects** [1] - 7:8
**submit** [2] - 11:12,
24:17
**subsequent** [2] -
5:12, 29:20
**sued** [2] - 14:20,
15:13
**sues** [1] - 13:21
**sufficiency** [1] - 7:22
**sufficient** [3] - 6:12,
11:11, 18:10
**sufficiently** [1] - 7:20
**suit** [3] - 13:23,
14:18, 25:10
**super** [1] - 35:20

**supplemental** [1] -
6:3
**support** [1] - 22:2
**supports** [1] - 6:6
**supposition** [1] -
11:3
**system** [4] - 13:8,
21:18, 31:22

## T

**talks** [1] - 6:10
**targeted** [1] - 8:8
**TCPA** [8] - 6:18,
10:14, 12:11, 17:12,
18:9, 25:15, 29:4,
34:13
**technologies** [1] -
32:4
**technology** [3] -
32:24, 33:9
**Teladoc** [14] - 4:16,
10:7, 10:8, 10:11,
14:1, 17:1, 20:13,
20:16, 20:20, 21:11,
22:21, 34:13, 35:1
**telemarketer** [6] -
17:14, 18:10, 18:15,
20:22, 24:8, 32:5
**Telemarketer** [1] -
18:17
**telemarketer's** [1] -
22:10
**telemarketers** [15] -
14:3, 18:6, 19:5,
19:20, 20:3, 21:2,
21:8, 21:22, 22:9,
22:19, 22:22, 23:1,
23:7, 32:4, 32:24
**telemarketers'** [2] -
17:8, 33:2
**telemarketing** [22] -
6:17, 12:22, 12:23,
12:25, 13:2, 13:9,
13:11, 14:14, 14:19,
15:3, 17:22, 18:12,
19:24, 21:2, 23:18,
23:20, 24:17, 24:22,
26:13, 28:14, 30:12,
30:14
**telemedicine** [1] -
20:21
**telephone** [6] - 7:2,
9:4, 9:23, 31:8, 31:22,
32:3
**telephonic** [1] -
10:11
**terms** [2] - 25:9,
25:11

**Texas** [2] - 28:15,
34:17
**THE** [41] - 4:24, 5:4,
7:9, 7:18, 8:1, 8:4,
11:21, 11:25, 12:5,
12:9, 13:14, 14:5,
14:8, 15:7, 15:14,
15:24, 16:5, 16:24,
17:3, 18:21, 22:14,
23:9, 24:24, 25:17,
26:4, 26:9, 26:14,
27:5, 27:11, 27:22,
28:10, 30:21, 31:3,
33:13, 34:5, 35:16,
35:24, 36:1, 36:4,
36:6, 36:9
**themselves** [3] -
17:20, 32:8, 33:8
**theory** [5] - 6:2,
29:24, 30:15, 35:8,
35:13
**thereby** [1] - 19:10
**therefore** [4] - 16:14,
23:7, 34:21, 35:4
**third** [4] - 5:7, 21:2,
21:12, 21:21
**Third** [1] - 6:13
**third-party** [3] - 21:2,
21:12, 21:21
**thirty** [1] - 35:23
**three** [2] - 17:12,
27:17
**today** [2] - 4:7, 35:23
**together** [2] - 5:25,
21:25
**topic** [2] - 11:25,
12:1
**topics** [1] - 12:2
**tort** [2] - 34:12, 34:20
**tough** [1] - 34:4
**trademark** [3] -
19:10, 19:12, 19:15
**trademarks** [2] -
19:4, 19:5
**transcription** [1] -
36:15
**transferred** [1] -
28:23
**transparent** [1] -
33:23
**trebled** [1] - 29:6
**trial** [2] - 29:5
**tried** [2] - 12:14,
23:21
**true** [3] - 24:12,
26:22, 26:25
**try** [2] - 28:4, 33:22
**trying** [4] - 20:24,
28:7, 28:16, 29:22
**TV** [3] - 6:4, 25:20,

25:22
**two** [7] - 5:14, 8:24,
9:16, 12:12, 25:9,
27:18, 31:6
**Twombly** [9] - 7:16,
7:19, 8:8, 8:12, 11:12,
11:20, 15:10, 15:17,
17:18
**typical** [2] - 9:13,
10:7

## U

**umbrella** [1] - 15:4
**unclear** [1] - 31:12
**under** [11] - 6:2,
8:11, 11:11, 12:11,
13:18, 15:4, 15:10,
17:12, 25:7, 25:8,
35:13
**undertaken** [1] -
18:12
**undertaking** [1] -
17:25
**united** [1] - 3:3
**United** [1] - 36:20
**unless** [1] - 22:19
**unsolicited** [1] - 6:14
**unwarranted** [1] -
6:16
**up** [11] - 7:11, 7:14,
10:14, 11:9, 12:2,
15:23, 26:18, 30:4,
30:20, 33:25, 36:2
**uphill** [1] - 33:15
**urging** [1] - 16:22
**Utah** [1] - 34:23
**uttered** [1] - 9:24

## V

**Vacations** [1] - 31:17
**value** [1] - 16:13
**various** [1] - 9:6
**vast** [3] - 8:17, 11:2,
11:5
**vendor** [3] - 29:10,
29:11, 32:14
**verdict** [1] - 29:6
**versus** [4] - 4:2, 6:4,
14:11, 31:16
**vicarious** [3] - 7:4,
12:2, 15:25
**vicariously** [1] -
17:12
**violated** [2] - 25:15,
34:13
**violation** [2] - 6:17,

31:10
**violations** [2] - 21:2,
29:7
**violator** [1] - 27:23
**virtually** [1] - 10:8
**voice** [2] - 31:11,
31:13
**voicemail** [1] - 6:14

## W

**wants** [1] - 30:18
**warranted** [1] - 5:20
**wave** [1] - 14:16
**ways** [1] - 23:12
**web** [2] - 10:20,
10:21
**websites** [1] - 19:4
**weeks** [1] - 35:21
**welcome** [1] - 7:23
**whatsoever** [2] -
8:16, 11:4
**whereby** [1] - 22:21
**whole** [1] - 30:4
**words** [3] - 9:24,
14:16, 32:1
**works** [1] - 27:21
**writing** [1] - 20:9
**written** [1] - 6:20

## Y

**year** [1] - 35:21
**York** [1] - 35:2

## Z

**Zach** [2] - 4:15,
16:25