## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 0:19-cv-60597-RAR-BSS

ROBERT HOSSFELD, individually
and on behalf of others similarly situated,

         *Plaintiff*,                                 **CLASS ACTION**

   v.

AMERICAN FINANCIAL
SECURITY LIFE INSURANCE
COMPANY, FEDERAL INSURANCE                     **JURY TRIAL DEMANDED**
COMPANY, HEALTH INSURANCE
INNOVATIONS, INC., MED-SENSE
GUARANTEED ASSOCIATION,
NATIONAL CONGRESS OF
EMPLOYERS, INC., NATIONAL
BENEFIT BUILDERS, INC.,
HEALTHPOCKET, INC. d/b/a
AGILEHEALTHINSURANCE,
RX HELPLINE LLC,
TELADOC HEALTH, INC.,
AXIS INSURANCE COMPANY, and
ASSOCIATION FOR
ENTREPRENEURSHIP USA,

         *Defendants.*
_____/

### PLAINTIFF'S OPPOSITION TO MOTION TO STAY [ECF No. 146]

Defendants have filed a motion to defer the Rule 26(f) conference, for protective order, and to stay the action while their now-mooted joint motion to dismiss is pending.

The motion should be denied. *First*, *Chudasama v. Mazda Motor Corp*., 123 F.3d 1353 (11th Cir. 1997), does not say what defendants contend. It does not stand for the proposition that all discovery should be stayed pending a decision on a motion to dismiss. Instead, *Chudasama* and its progeny "stand for the much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount," an issue not

1

reasonably likely here. *Second*, Plaintiff's Second Amended Complaint [ECF No. 140] contains refined factual allegations, addresses any shortcomings Defendants claimed doomed previous versions, and is not an impermissible shotgun pleading. *Third*, this case should not be stayed pending the Supreme Court of the United States' review of the Fourth Circuit Court of Appeals' decision in *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*, 923 F.3d 159 (4th Cir. 2019). *Fourth*, Defendants' statement that "conducting a Rule 26(f) conference while the Motion to Dismiss is pending would be premature" incorrectly suggests that a Rule 26(f) conference has not already taken place. Counsel for the parties conducted an hour-long telephonic Fed.R.Civ.P. 26(f) conference on Thursday, May 2, 2019, as evidenced by Exhibit A. *Fifth*, Plaintiff has grave concerns about preservation of evidence, and will be unduly prejudiced by the delay a stay would cause while class call data and other critical records in the possession of third parties are at risk being lost or destroyed in the interim.

For these reasons and as further detailed herein, Defendants' motion should be denied.

## I. BACKGROUND

The Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, was enacted in response to widespread public outrage over the proliferation of intrusive, nuisance calling practices. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). Congress found that the unique personal nature and added cost of mobile phone use mandated strong consumer protections; specifically, targeting the autodialed and prerecorded calls it considered to be a greater nuisance and privacy invasion than calls from "live" persons. *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, at ¶ 124 (2015). Indeed, as the Supreme Court held in a different context: "The unwilling listener's interest in avoiding unwanted communication is

an aspect of the broader 'right to be let alone' ... the most comprehensive of rights and the right most valued by civilized men." *Hill v. Colorado*, 530 U.S. 703, 716–17 (2000) (citation omitted). Relevant to the instant case, the TCPA broadly prohibits "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA also prohibits initiating telemarketing calls without having instituted procedures for maintaining an internal do-not-call list, which must meet certain minimum standards, including personnel training, recording, and actually honoring such requests. 47 C.F.R. § 64.1200(d). Companies may be subject to liability whether illegal calls are made by them directly or by a third party on their behalf. *In re Rules & Regs. Implementing the TCPA*, 28 FCC Rcd. 6574, ¶ 1 (2013) ("*FCC 2013 Ruling*"). Moreover, because "[t]he TCPA is a remedial statute that was passed to protect consumers from unwanted automated telephone calls[,] .... it should be construed to benefit consumers." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

Plaintiff filed this action on March 6, 2019, seeking redress for calls he and others received from or on behalf of Defendants American Financial Security Life Insurance Company ("American Financial"), Federal Insurance Company ("FIC"), Health Insurance Innovations, Inc. ("HII"), Supreme Health Group Inc. ("Supreme Health"), Blake Fishman, Med-Sense Guaranteed Association ("Med-Sense"), National Congress of Employers, Inc. ("NCE"), National Benefit Builders, Inc. ("NBBI"), Health Advisors of America, Inc. ("HAA"), Michael Smith, and Zachary Cox, which violated the TCPA's internal do-not-call rules and prohibition against autodialed or prerecorded-voice calls to cell phones. On May 1, 2019, Defendants filed a motion to dismiss Plaintiff's claims, ECF No. 57.

On June 5, 2019, and with Defendants' consent, Plaintiff filed an amended complaint re-asserting autodialer/prerecorded-voice and internal do-not-call TCPA claims against American Financial, FIC, HII, Med-Sense, NCE, and NBBI, and adding HealthPocket, Inc. ("Agile"), Rx Helpline LLC ("Rx Helpline"), Teladoc Health, Inc. ("Teladoc"), Axis Insurance Company ("Axis"), and Association for Entrepreneurship USA ("AFEUSA") as Defendants.[1] A second amended complaint was filed on April 13, 2020, ECF No. 140.

On May 12, 2020, Defendants filed a motion, ECF No. 146, asking the Court to enter an order that defers the time for the Court to conduct a case management conference and to enter a scheduling order, and for a protective order staying all discovery in this matter until the resolutions of Defendants' forthcoming, renewed motion to dismiss.[2]

Defendants participate in a multi-tiered marketing strategy through which sellers (including insurance companies like American Financial, FIC, and Axis, and discount medical card and other healthcare-related product providers like Med-Sense, AFEUSA, NCE, and NCE's partner NBBI, Teladoc, Agile, and Rx Helpline) utilized HII to generate leads for prospective customers through illegal telemarketing. ECF No. 140, Sec. Am. Compl. ¶¶ 23-37. Plaintiff Robert Hossfeld received multiple calls from or on behalf of Defendants, including after directly asking not to be called. *Id.* ¶ 123-130. During one such automated call[3] on February 13, 2019, for example, the representative quoted Plaintiff for an AdvantHealth STM (short-term medical) underwritten by Defendant American Financial. *Id.* ¶ 53-69. During this same call, Defendants'

---

[1] Former Defendants Supreme Health, Blake Fishman, HAA, Michael Smith, and Zachary Cox were not included in the amended complaint.

[2] Due on or before June 8, 2020, ECF No. 142.

[3] These calls began with a prerecorded message, which required Plaintiff to click through a prompt in order to speak with a live person. E.g., ECF No. 77, Am. Compl. ¶¶ 35, 41, 91.

representative used HII's MyBenefitsKeeper platform to e-mail Plaintiff materials for this package, which consisted of a pre-filled application for an "AdvantHealth STM" plan through American Financial, NCE membership (provided through or in conjunction with NCE's partner NBBI), accidental death and dismemberment coverage through Federal Insurance (for which Med-Sense is listed as the policyholder), and membership in Med-Sense's discount program. *Id.* ¶¶ 64, Ex. A.

These calls did not stop with the pendency of this lawsuit. In fact, on May 22, 2019—more than two months after Plaintiff filed this action—Plaintiff received an automated call from or on behalf of Defendants during which he was similarly solicited healthcare-related products. *Id.* ¶ 78.

This time, Plaintiff was e-mailed a pre-filled application for an "AdvantHealth STM" NCE-group plan through American Financial, NCE membership (again, believed to be provided through or in conjunction with NCE's partner NBBI), accidental death and dismemberment coverage (allegedly offered by FIC), telephonic doctor services through Teladoc, a VibraSmile dental plan underwritten by Axis, and membership in the AFEUSA, ScripPal, PEP, and Rx Helpline discount programs. *Id.* 85, Ex. B.

Sellers like Defendants, who benefit from calls that violate the TCPA, cannot avoid liability simply because they did not physically place the illegal calls themselves. Rather, sellers are subject to potential vicarious liability for illegal calls made on their behalf. *FCC 2013 Ruling*, 28 FCC Rcd. 6574, ¶ 1. Plaintiff has been subjected to repeated, unsolicited robocalls that did not stop even after he explicitly requested that they cease, or even after he filed this lawsuit. This instant action is important to ensure that the illegal calling at issue stops, and to ensure that Plaintiff and other consumers whom Defendants similarly caused to be illegally called receive

appropriate redress. A stay poses significant risk of harm to Plaintiff's ability to effectively prosecute this action, and it should, respectfully, be denied, as further detailed herein.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 26(c), the Court may issue a protective order upon a showing of "good cause" to limit the scope of discovery upon motion of a party. Likewise, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936). The movant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255. One judge in this District provided an overview of motions to stay as follows:

> Courts are not compelled to grant such motions upon the filing of a motion to dismiss—there is no "broad rule that discovery should be deferred whenever there is a pending motion to dismiss." *Gannon v. Flood*, 2008 WL 793682, at *1 (S.D. Fla. Mar. 24, 2008). Further, "[s]uch motions are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (internal citation omitted). For this reason, "a request to stay all discovery pending resolution of a motion is rarely appropriate where resolution of the motion will not dispose of the entire case." *Id.* (internal citation omitted).

*Proflex Prod., Inc. v. Protecto Wrap Co.*, No. 12-21280, 2013 WL 12061839, at *1 (S.D. Fla. Feb. 28, 2013). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997) (citations omitted).

## III. ARGUMENT

Stay motions under circumstances like those before this Court are only granted in rare

circumstances. *Landis*, 299 U.S. at 255. The party seeking the stay "shoulders a heavy burden" and "must make out a clear case of hardship or inequity in being required to go forward[.]" *Id.* (requiring showing of "clear case of hardship or inequity"). This case is no different than any of the numerous other TCPA cases, and Defendants fail to meet their burden of showing the unique "hardship or inequity" they purportedly face such that a stay might be warranted. As detailed below, Defendants' motion should be denied.

> ### A.     *Chudasama v. Mazda Motor Corp.* Does Not Say What Defendants Contend.

Defendants' heavy reliance on the 11th Circuit's twenty-year-old *Chudasama* decision for the proposition that no discovery can commence until a defendant's motion to dismiss is resolved grossly misstates *Chudasama*'s holding.

To be clear, the Federal Rules do not provide that discovery starts only after the district court rules on a defendant's motion to dismiss; rather, discovery properly commences after the parties have conferred as required by Rule 26(f)—which the Parties have already done. Fed. R. Civ. P. 26(d)(1). This Federal Rule applies to cases before this Court. *See Marketran, LLC v. Brooklyn Water Enters., Inc.*, No. 16-81019, 2016 WL 8678547, at *1 (S.D. Fla. Aug. 5, 2016) (citing rule in ultimately finding expedited discovery prior to Rule 26(f) conference appropriate). Because the parties in this case have already conducted their Fed. R. Civ. P. 26(f) conference, that portion of this motion is moot.

Moreover, *Chudasama* is inapposite. In *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353 (11th Cir. 1997), a husband and wife filed a complaint against car manufacturer defendants (collectively, "Mazda") after getting in an accident allegedly caused by a loss of control of their Mazda minivan, asserting what the Eleventh Circuit deemed three "standard" products liability counts, plus one fraud count that was "novel and of questionable validity." *Id.* at 1368. The

plaintiffs propounded vague and "excessively broad discovery requests," *Id.* at 1358, exacerbated by the specious fraud count, which "substantially widened the scope of discovery" from what would have been limited to "information related to the [] minivan's brakes and side structure," to "information relating to Mazda's intentions in designing and marketing the [] minivans, and possibly other 'vehicles similar.'" *Id.* at 1360. Mazda then moved to dismiss the fraud count. *Id.* at 1359. However, the court *never ruled on that motion*, and then over a year later, in response to the plaintiffs' subsequent motion to compel, admonished Mazda for withholding responsive materials in the interim—ultimately striking Mazda's answers and affirmative defenses and entering a default judgment as a discovery sanction. The Eleventh Circuit found it "hard to believe that Georgia law would recognize such a [fraud] claim[,]" and "conclude[d] that this claim was dubious enough to require the district court to rule on Mazda's motion to dismiss prior to entering the compel order." *Id.* at 1369. The Eleventh Circuit admonished the lower court for not properly managing the case, vacated its orders, and had the matter reassigned to a different judge. *Id.* at 1374.

The lesson from *Chudasama* is thus not, as Defendants claim, that discovery can only commence after this Court rules on its motion to dismiss, but that:

> [A]s the burdens of allowing a dubious claim to remain in the lawsuit increase, so too does the duty of the district court finally to determine the validity of the claim. Thus, when faced with a motion to dismiss a claim for relief that significantly enlarges the scope of discovery, the district court should rule on the motion before entering discovery orders, if possible. The court's duty in this regard becomes all the more imperative when the contested claim is especially dubious. [*Id.* at 1368.]

Indeed, numerous courts have expressly **rejected** Defendants' interpretation of *Chudasama*:

> *Chudasama* states: "Facial challenges to the **legal sufficiency** of a claim or defense … should … be resolved before discovery begins." 123 F.3d at 1368. The holding in *Chudasama* does **not** establish the general rule that discovery should

> not proceed while a motion to dismiss is pending. In *Chudasama*, the cause of action contested in the motion significantly enlarged the scope of discovery and was "especially dubious." *Id.* Instead, *Chudasama* and its progeny "stand for the much narrower proposition that courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount." *In re Winn Dixie Stores, Inc.* [*Erisa Litig.*], [No. 04-194,] 2007 WL 1877887, at *1 [(M.D. Fla. June 28, 2007)].

*Koock v. Sugar & Felsenthal, LLP*, No. 09-609, 2009 WL 2579307, at *2 (M.D. Fla. Aug. 19, 2009) (emphasis added); *accord Schreiber v. Kite King's Lake, LLC*, No. 10-391, 2010 WL 3909717, at *1 (M.D. Fla. Oct. 1, 2010) ("*Chudasama* does not stand for the proposition that all discovery should be stayed pending a decision on a motion to dismiss."); *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 754 F. App'x 955, 960-61 (Fed. Cir. 2018) ("[N]othing in *Chudasama* states that discovery must be stayed pending a decision on a motion to dismiss or that such a motion must be resolved before discovery can begin."); *Proflex Prod., Inc.*, 2013 WL 12061839, at *1; *Gannon*, 2008 WL 793682, at *1.

"This is not a case like the one presented in *Chudasama* …, where the Court found there to be an 'especially dubious' claim filed that if disposed by motion to dismiss would save needless and extensive discovery." *S.K.Y. Mgmt. LLC*, 2007 WL 201258, at *1 (denying motion to stay). Rather, Plaintiff alleges that Defendants are liable for violations of the TCPA's broad prohibition against autodialed or prerecorded-voice calls to cell phones, and internal do-not-call rules, in relation to the multiple nonconsensual, autodialed and prerecorded-voice calls Plaintiff received to his cell phone for the purpose of encouraging the purchase of Defendants' goods and services (including after being asked to stop). ECF No. 140, Sec. Am. Compl. ¶¶ 38-122, Ex. A-B.

There is nothing dubious about the Second Amended Complaint. It alleges specific facts as to each Defendant, and even attaches the sales materials e-mailed to Plaintiff *during such calls*

that explicitly solicit his application for Defendants' goods and services. *Id.* The TCPA is a straightforward consumer protection statute[4] that does not permit companies like Defendants to avoid liability by paying others to illegally telemarket on their behalf,[5] and Plaintiff has thus more than satisfied the base notice pleading requirements of Rule 8(a).

In short, unlike the "novel" claims in *Chudasama* that were of "questionable validity," there is no "legal sufficiency" issue with Plaintiff's claims here. Indeed, "[c]lass certification is normal in litigation under § 227 [the TCPA]." *Turza*, 728 F.3d at 684. This Court maintains broad discretion as to the management of this case, and where implementing a stay in lieu of the normal course of discovery under Fed. R. Civ. P. 26(d)(1) presents substantial risk of harm to Plaintiff's ability to effectively prosecute this case due to the unknown nature – and likelihood of loss or destruction – of the call and consent evidence for the calls at issue as a result of being in the possession of yet-unknown third parties, the soundest course of action is to maintain the status quo and adhere to the procedure contemplated under the Federal Rules. Defendants' motion to dismiss should, thus, be denied.

**B.    Plaintiff's Second Amended Complaint Is Not an Impermissible Shotgun Pleading.**

The crux of Defendants' motion to stay is that their motion to dismiss is so strong that the case will likely be dismissed. But Plaintiff has conformed his complaint to parallel the requirements espoused in *Weiland v. Palm Beach County Sheriff's Offices*, 792 F.3d 1313, 1320 (11th Cir. 2015), and removed internal "incorporation" allegations and included specific

---

[4] *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) ("The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.") (citing 47 U.S.C. § 227(b)(1)).

[5] *See FCC 2013 Ruling*, 28 FCC Rcd. 6574, ¶ 1 (affirming vicarious liability for sellers whose third-party telemarketers violate the TCPA).

allegations as to what each independent defendant allegedly did wrong. Moreover, Plaintiff has learned substantially more about Defendants' telemarketing scheme, partly because Defendants called Plaintiff again to offer many of the same products and services they offered him the first time, and which form the basis for the instant lawsuit. Specifically, Plaintiff's Second Amended Complaint includes new allegations that confirm that third-party lead generators and insurance agents made or facilitated the automated calls on behalf of HII and the other Defendants, like Health Advisors of America, Inc. ("HAA") did in relation, for example, to the August 8, 2018 call, February 13, 2019 call (which resulted in a quote), and likely other calls Plaintiff received. ECF No. 140, Sec. Am. Compl. ¶¶ 92, 103.[6] Plaintiff also included specific allegations detailing a more recent automated call he received on behalf of Defendants, which followed the same, standard procedure as the earlier calling process and similarly resulted in an attempted sale of an "AdvantHealth STM" plan packaged with memberships in other Defendants' other goods and services. *Compare Id.* ¶¶ 53-69, Ex. A (detailing call February 13, 2019 call soliciting AdvantHealth STM package offered by HII subsidiary Agile, underwritten by American Financial, and included with accidental death and dismemberment coverage through FIC and memberships in NCE/NBBI and Med-Sense), *with* Id. ¶¶ 78-91, Ex. B (detailing the May 22, 2019 call soliciting AdvantHealth STM NCE-group plan package through American Financial, and included with accidental death and dismemberment coverage through FIC, offers through Teladoc, VibraSmile dental coverage through Axis, and membership in NCE/NBBI, AFEUSA, and Rx Helpline). In short, there is no question that these Defendants continue to engage in the conduct complained of, in spite of this lawsuit.

---

[6] Former Defendant Supreme Health and its owner, Blake Fishman, were dropped as defendants without prejudice after representing to Plaintiff's counsel that they were not involved in the calling at issue, and confirming that the "Ashley Eastlack" agent on the application materials Plaintiff received was believed to be employed by HAA.

And in addition to specific allegations based on each Defendants' liability based on ratification and apparent authority theories[7], *e.g., Id.* ¶¶ 126-127. Plaintiff also alleges Defendants' direct liability for their own participation and involvement as to the calls at issue, e.g., *Id.* ¶ 124, as well as based on Defendants having authorized the selling of their products during such telemarketing, engaged HII and its agents to enter into contractual relations on their behalf, knowingly compensated HII for the sale of its products derived from such calls, and issued quotes for insurance or acquired memberships arising from such calls, *e.g., Id.* ¶¶ 124, 125. Defendants are also specifically identified as being solicited in the pre-filled application materials Plaintiff was e-mailed during two of these calls. *Id.* at Exs. A-B.

The theory of Plaintiff's case is not hard to understand: Defendants are liable for the illegal telemarketing calls Plaintiff and others received that encouraged the purchase of their goods and services. This is a long-recognized, valid theory of liability under the TCPA. *See FCC 2013 Ruling*, 28 FCC Rcd. 6574, ¶ 28 ("[A] seller may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers[,] … including not only formal agency, but also principles of apparent authority and ratification."); *In re Rules & Regs. Implementing the TCPA*, 23 FCC Rcd 559, ¶ 10 (2008) ("[A] creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation…. Calls placed by a third-party collector on behalf of that creditor are treated as if the creditor itself placed the call."); *Harrington v. RoundPoint Mortg. Servicing Corp.*, 163 F. Supp. 3d 1240, 1244 (M.D. Fla. 2016) ("[N]umerous courts have held that § 227(b)(1)(A) imposes liability upon a showing of vicarious liability.") (citing cases).

---

[7] For purposes of brevity, only the allegations against HII are identified. The second amended complaint includes identical and independent allegations against each defendant.

Courts considering the pleading standards for vicarious liability universally recognize that the ultimate determination of vicarious liability hinges on the totality of circumstances, rather than facts that a plaintiff who received an unsolicited call could allege. Defendants' dubious position that Plaintiff apparently needs to plead with specificity every aspect of the illegal calling strategy at issue, if adopted, would establish a near-insurmountable pleading standard for most consumers who receive unsolicited lead generation calls. These pleadings often omit any identification of the seller until well into the litigation process (as was the case here), let alone any particularized facts about the inner workings of the seller's relationship with the third-party telemarketer who made the call. For this reason, courts have consistently rejected Defendants' heightened standard, which is more akin to a Fed. R. Civ. P. 9(b) particularity standard than to the "plausibility" standard of Fed. R. Civ. P. 8(a). *See Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1150-51 (N.D. Ill. 2014) (rejecting argument, in TCPA class action, "that plaintiff has not pled any basis from which to infer vicarious liability because he 'does not identify the third-party telemarketer or lead generator' who initiated the call, nor does he allege 'what arrangement, if any, that third party had with either defendant[,]' ... [as] meritless because it is defendants, not plaintiff, who can reasonably be expected to know these facts") (citing *FCC 2013 Ruling*, 28 FCC Rcd at 6592 ¶ 46, for indicating that "consumers may acquire evidence of relationship between telemarketer and seller through discovery if they are not independently privy to such information") (emphasis added).

In *Wagner v. CLC Resorts & Developments, Inc.*, 32 F. Supp. 3d 1193 (M.D. Fla. 2014), for example, the court rejected two defendant sellers' arguments that the consumer plaintiff's TCPA complaint should be dismissed for failing to adequately allege vicarious liability for the calls made by a third-party telemarketer. The *Wagner* court reasoned:

13

Wagner has sufficiently alleged a claim against Surrey under § 227(b) of the TCPA. Wagner alleged that Surrey contracted with Passport to market Surrey's resort and timeshare properties. (Doc. 39 ¶ 17). Wagner also alleges that he received calls from Passport, and that the purpose of these calls was to pitch Surrey's timeshare products and to convince him to visit Surrey's sales offices. (Id. ¶ 39). Wagner contends that Passport placed the calls using an ATDS. (Id. ¶ 28). Wagner further alleges that he did not give Surrey or Passport consent to call him. (Id. ¶ 44). Wagner also sufficiently alleged that Surrey is liable for Passport's action under three theories of vicarious liability—formal authority, apparent authority, and ratification. Based on the reasons above, Surrey's motion to dismiss Wagner's TCPA claim under section 227(b) will be denied....

[As to CLC, the other defendant,] ... Wagner asserted that CLC contracted with Passport to market CLC's resort and timeshare properties. (Doc. 39 ¶ 16). Wagner also alleges that he received calls from Passport, and that the purpose of these calls was to pitch CLC's timeshare products and to convince him to visit CLC's sales offices. (Id. ¶ 34). Wagner also alleged that Passport placed the calls using an ATDS (id. ¶ 28), and that the calls were placed without his consent (id. ¶ 44). Wagner also sufficiently alleged that CLC is vicariously liable for Passport's actions. Thus, the Court will deny CLC's motion to dismiss Wagner's TCPA claim under section 227(b).

*Wagner*, 32 F. Supp. 3d at 1196-97.[8]

---

[8] 4 *See also Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 703-04 (M.D. Pa. 2014) (finding vicarious liability adequately pleaded in TCPA action, where plaintiff alleged that a defendant's calls were made "at [the other defendant's] direction, and under their control," and alleged that caller stated it was calling "on behalf of" the other defendant); *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-6131, 2014 WL 3014874, at \*4 (E.D.N.Y. July 3, 2014) (finding, in TCPA action, that plaintiff's allegation that the robocall was made pursuant to a contract was sufficient, considering the totality of allegations, to plead vicarious liability); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1258 (S.D. Cal. 2012) (finding, in TCPA action, general allegations that "Defendants and their agents directed the mass transmission of wireless spam to the cell phones nationwide[,]" and that one defendant "engaged [the other]," sufficient for pleading vicarious liability); *Spillman v. Dominos Pizza, LLC*, No. 10-349, 2011 WL 721498, at \*3 (M.D. La. Feb. 22, 2011) (deeming sufficient, in TCPA action, plaintiff's inclusion of call script referencing Domino's and allegation that "RPM Pizza, by virtue of its franchise or agency relationship, is obligated to engage in advertising and marketing campaigns to sell Domino's pizzas"); *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1302 (D. Nev. 2014) (finding that the plaintiff has "sufficiently pleaded a plausible agency relationship based on actual authority (arising through contractual relationships), apparent authority (based on a reasonable person's perception of who authorized the sending of the text message), and ratification (based on the apparent benefits received…)[,]" and that he "need not plead the identity of every player in the alleged scheme nor every nuance of the relationships among the

Here, not only has Plaintiff specifically alleged each Defendant's particular role and relevance as to the calls and solicitations at issue (i.e., through contracting with HII to solicit its goods and services and knowingly accepting the benefit of illegal telemarketing); he has attached to his complaint the pre-filled materials Defendants' representatives e-mailed him *during the illegal, autodialed calls*, which explicitly solicit his application for Defendants' goods and services. ECF No. 140, Sec. Am. Compl. at Exs. A-B. This goes well beyond what is required under basic Rule 8(a) notice pleading, and thus a "preliminary peek" at Defendants' motion to dismiss shows that it is unlikely to be granted, such that no stay is appropriate.

Defendants also claim that their not-yet-filed request to strike class allegations warrants a stay, but such pre-discovery attempts to circumvent the Court's necessary rigorous analysis of the Fed. R. Civ. P. 23 requirements are seldom granted. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) ("[T]he parties' pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery and/or an evidentiary hearing to determine whether a class may be certified."); *Shamblin v. Obama For Am.*, No. 13-2428, 2014 WL 631931, at *2 (M.D. Fla. Feb. 18, 2014) (Motions to strike are considered "'drastic' and are disfavored by the courts."). Moreover, "[c]lass certification is normal in litigation under [the TCPA] because the main questions ... are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013).

Moreover, Plaintiff respectfully submits that, even if this Court were so inclined, it is unlikely, in any event, that the now-mooted motion to dismiss would have been granted as to *all*

---

Defendants; indeed, the information necessary to connect all the players is likely in Defendants' sole possession") (emphasis added).

Defendants—not only based on the plain sufficiency of Plaintiff's pleadings. This is because recently-added Defendants Agile, Rx Helpline, Teladoc, Axis, and AFEUSA haven't even joined in the motion. The fact that the motion to dismiss would not resolve the entire litigation thus further supports denial of Defendants' motion to stay. *See Proflex Prod., Inc.*, 2013 WL 12061839, at *1 (noting that "courts have considered whether the pending motion to dismiss would resolve the entire litigation" in determining whether to implement a stay, and ultimately denying defendants' motion); *S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*, No. 06-21722, 2007 WL 201258, at *2 (S.D. Fla. Jan. 24, 2007) (declining to stay case where pending motion to dismiss would "not result in a resolution of the entire case").

In short, Plaintiff has filed a well-pleaded and detailed Amended Complaint that specifically alleges the basis for TCPA liability as to each Defendant. These are not specious or overbroad allegations, but specifically-alleged facts demonstrating each Defendant's liability as a result of its knowing participation in a lead generation strategy that utilizes automated telemarketing to solicit potential customers, without regard to whether consent actually exists for such calls or whether sufficient do-not-call policies have been implemented. The sufficiency of Plaintiff's pleadings, and the fact that not all Defendants have joined in the motion to dismiss, ensures the futility of their dispositive motion in resolving this action, and consequently supports denial of Defendants' instant motion to stay. As such, the motion should be denied.

**C.    This case should not be stayed pending a Supreme Court decision in
      *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*,
      923 F.3d 159 (4th Cir. 2019).**

Defendants' argue that this case should be stayed pending a Supreme Court decision in *Am. Ass'n of Political Consultants, Inc. v. Fed. Commc'ns Comm'n*., 923 F.3d 159 (4th Cir. 2019), because "can potentially find that the TCPA, as a whole, is unconstitutional and

consequentially be dispositive of this case." The issue on appeal, however, is a narrow one: "[w]hether the government-debt exception to the TCPA's automated-call restriction violates the First Amendment" and "whether the proper remedy for any constitutional violation is to sever the exception from the remainder of the statute." Defendants argument is purely speculative; multiple courts have denied requests to stay litigation absent some indication that a pending appeal would result in a "seismic shift" in controlling law. *See e.g., Weitzner v. Sanofi Pasteur, Inc.,* 2012 WL 1677340 at *9 (M.D. Pa. May 14, 2020) ("While the Defendants are correct to note that—like many other areas—this area of law is evolving, there is simply no concrete suggestion that the rehearing in *Landsman* will produce any seismic shift. Therefore, since a stay in this matter will not to simplify issues or promote judicial economy, it will be denied.).

Although decisions of pending appeals may clarify the law or move the law in a particular direction, such speculation (as offered by Defendants here) is not, without more, a compelling reason to stay this case. *Giorgio Foods, Inc. v. US*, 2013 WL 363312 at *2 (Ct. Int'l Trade Jan. 30, 2013).

### D. The Parties Already Conducted their Rule 26(f) Conference.

A procedural basis for Defendants' motion is their' unqualified statement that "have not conducted their Rule 26(f) conference." Defendants' motion does not explain to the Court that the parties did in fact conduct their 26(f) on May 2, 2019. Exhibit A contains the email string scheduling the call. Defendants asked Plaintiff to circulate a draft discovery plan based upon Judge Gayles' standing order, which Plaintiff did in advance of the call. During the call, the parties discussed these dates, as well as document preservation and the possibility of resolution. Thus, the parties *did* confer under Rule 26(f), and the discovery period has commenced. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have

conferred as required by Rule 26(f)[.]"). Indeed, not only has Plaintiff propounded discovery requests on Defendants American Financial, Federal Insurance, HII, Med-Sense, NCE, and NBBI, but his counsel have already retrieved pertinent information from former Defendants HAA and Supreme Health, as well.

### E.  Preservation is Paramount, and the Violations Continue.

Memories fade and data and documents are lost, deleted and/or archived during delays in litigation. A stay of discovery presents real risk of loss or downgrading of class data—a loss that can have considerable impact on a data-centric TCPA case like this one.[9] This is particularly true where such records are in the hands of third parties, as is the case here. As such, the potential for case-determining undue prejudice to Plaintiff based on the risk of lost or destroyed evidence during the pendency of a stay supports denial of Defendants' motion.

For example, in *Johansen v. Mutual of Omaha Ins. Co.*, No. 16-4108 (N.D. Ga.), discovery was stayed during the pendency of a motion to dismiss. The plaintiff explicitly requested that call and consent records be produced or preserved by defense counsel, but the Court denied that request based upon defense counsel's representations that all third parties had

---

[9] 9 *E.g., Leyse v. Lifetime Entm't Servs.*, No. 13-5794, 2015 WL 5837897, at *5 (S.D.N.Y. Sept. 22, 2015), aff'd, 679 F. App'x 44 (2d Cir. 2017) (denying class certification in TCPA action on ascertainability grounds given that "[t]here is no copy of the list of called numbers that the parties have been able to discover"); *but see Mullins v. Direct Digital, LLC*, 795 F.3d 654, 668 (7th Cir. 2015) (rejecting "enhanced ascertainability" requirement for class certification, and citing *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 250 (N.D. Ill. 2014), for the proposition that making a class contingent on a defendant's own recordkeeping "or declining to certify a class altogether, ... would create an incentive for a person to violate the TCPA on a mass scale and keep no records of its activity, knowing that it could avoid legal responsibility for the full scope of its illegal conduct").

been notified of the litigation. Upon denial of the motion to dismiss, it turned out that almost no records had been preserved, *Id*. ECF No. No. 43 at 2 (granting motion to compel consent and call records in TCPA case where defense counsel previously but unfruitfully notified vendors of litigation), thereby forcing the parties to attempt to piece the evidence back together. ECF No. No. 54 at 3 (denying reconsideration and authorizing letters rogatory).

Moreover, data that is very accessible and cheap to obtain today may become inaccessible or exorbitantly more expensive to obtain after a stay has been lifted. This happens fairly often in this type of case in the event of a stay. For example, in *Ahmed v. HSBC Bank USA, NA*, No. 15-2057 (C.D. Cal.), the TCPA defendant failed to preserve call data that was in the hands of its third-party calling vendor. Two years' worth of calling data was archived during the pendency of the case, which ultimately required motion practice about who show should have to pay more than $100,000 to extract data that was cheaply available at the beginning of the case. ECF No. Nos. 154, 159 & 161. That defendant justified not preserving data on the ground that the case had been stayed. ECF No. No. 159 at 4. Either way, these examples would have been mitigated or eliminated if the actions had not been stayed, or if the defendants had just preserved the data in the first place.

And in this case, Plaintiff's investigation[10] has revealed that the FBI has confiscated the servers of an autodialer vendor believed to have made these calls, called Celerity Telecom Inc. Plaintiff is actively working with the FBI to obtain those materials, but he is not optimistic that they will be produced without motion practice.

---

[10] Plaintiff's counsel is engaged in a similar case pending in the Northern District of Illinois, *Bilek v. Nat'l Congress of Employers, Inc.*, No. 1:18-cv-3083 (N.D. Ill.). Discovery obtained in *Bilek* suggests that Celerity was involved in the allegedly illegal calls in both cases.

Of course, any party has a duty to preserve relevant documents and data. *Tesoriero v. Carnival Corp.*, No. 16-21769, 2017 WL 8895347, at *23 (S.D. Fla. Sept. 22, 2017) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.") (citation omitted). Plaintiff's counsel is particularly concerned in this case given that Defendants here did not themselves make the calls at issue, but rather, used third parties to do so—third parties that may have no reason to be aware of this lawsuit or any obligation to preserve relevant evidence. Defendants tellingly make no representations in their motion about the extent to which such data and evidence has or is being preserved, and the fair, impartial determination of this matter based on its merits, as opposed to a "gotcha" due to lost evidence, thus strongly disfavors a stay. As such, Defendants' motion should be denied. *See Chimeno-Buzzi v. HOLLISTER CO.*, No. 14-23120, 2015 WL 11233196, at *1 (S.D. Fla. Apr. 9, 2015) ("Motions to stay 'are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'") (quoting *Feldman*, 176 F.R.D. at 652).

Apart from all of the above, it is apparent that Defendants continue their illegal practices, because Plaintiff Robert Hossfeld received another illegal call advertising Defendants' products and services, after this case was filed. Plaintiff has requested injunctive relief in the Amended Complaint, and is contemplating filing a motion to enjoin the conduct alleged herein, but needs discovery in order to properly support such a motion. A delay in discovery could lead to thousands – or *millions* – more calls that are just like the ones challenged here.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion to stay, ECF No. 146, should be denied.

Respectfully submitted,

ROBERT HOSSFELD, individually and on
behalf of others similarly situated

_s/ Scott D. Owens_____
Scott D. Owens (FBN 597651)
Scott D. Owens, P.A.
3800 S. Ocean Dr., Suite 235
Hollywood, FL 33019
Telephone: (954) 589-0588
scott@scottdowens.com

Alexander H. Burke (*pro hac vice*)
Burke Law Offices, LLC
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
Telephone: (312) 729-5288
aburke@burkelawllc.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 26, 2020, I caused the foregoing to be electronically filed

with the Clerk of the United States District Court for the Southern District of Florida using the

CM/ECF system, which will send notification of such filing to all counsel of record.

_s/ Scott D. Owens_____
Scott D. Owens Esq.