## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ROBERT HOSSFELD, individually
and on behalf of others similarly situated,

         Plaintiff

v.

AMERICAN FINANCIAL SECURITY
LIFE INSURANCE COMPANY, ET AL,

         Defendants.

_____/

CASE NO. 0:19-cv-60597-DPG

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION
## COMPLAINT

This case has proceeded for nearly fifteen months, yet Plaintiff is still unable to string together cogent allegations that support claims against any of the Defendants. Moreover, he continues to seek shortcuts, declining to sue first the entities that he knows placed the calls, and then add other defendants only as appropriate. Plaintiff's Response (Dkt. 173, "Pl. Resp.") underscores the futility of Plaintiff's efforts.[1]

**I.**     <u>**The Court Must Again Disregard Plaintiff's Attempt to Introduce Documents and Allegations Outside the Pleadings.**</u>

As he did in opposing Defendants' prior motion to dismiss, Plaintiff tries to backfill his deficient allegations by alleging "facts" and documents absent from the Second Amended Complaint (Dkt. 140, "SAC"). This backfilling pervades nearly every section of the Opposition.[2]

---

[1]     References to capitalized terms shall have the same meaning as in the Joint Motion to Dismiss. (Dkt. 153, "Motion").

[2]     Examples include Plaintiff's reliance on the FCC's Notice of Apparent Liability and the "findings" therein (Pl. Resp. p.1, 7, 27); a complaint filed in the Middle District of Florida against HII (*id.* at 29 n.29); the docket from a 2017 South Carolina Small Claims case (*id.* at 4,

Defendants need not address these allegations and documents[3] because the Court's review is "limited to the four corners of the complaint." *Wilchombe v. Teevee Toons, Inc. d.b.a. TVT Records*, 555 F.3d 949, 959 (11th Cir. 2009). A plaintiff "cannot amend a complaint by attaching documents to a response to a motion to dismiss," and the Court, therefore, must refuse to consider them. *Jallali v. Nova Se. Univ., Inc.*, 486 F.App'x 765, 767 (11th Cir. 2012). *See also Burgess v. Religious Tech. Ctr., Inc.*, 600 F.App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.").

## II.    Plaintiff's SAC Continues to Constitute Shotgun Pleading.

The SAC continues to resort to scattershot, shotgun pleading. Rather that articulate facts specific to each Defendant, Plaintiff simply repeats, almost verbatim, the same general, conclusory, and boilerplate allegations against each Defendant (other than HII). (SAC,¶¶ 131–35, 136–140, 141–45, 146–150, 151–157, 158–162, 163–167). This copy-and-paste repetition lengthens the pleading but fails to supply any factual, non-conclusory allegations against the

---

27 n.25, Ex. 2); a 2018 settlement between the SEC and HII (*id.* at 28 n.27); a declaration from a case in the Northern District of Illinois (*id.* at 30 n.33, Ex. 4); settlements between HII and various attorneys general (*id.* at 36 n.41, Ex.6); internal emails from Defendant NBBI (*id.* at 39, Ex.7); documents relating to Defendants' registered agents (*id.* at 36 n.43, Ex.8); and a complaint filed against the Palm Beach Sheriff's Office. (*id.,* Ex.1).

3        One point warrants addressing, given its prominence in the Opposition and wholesale lack of support. Plaintiff insists breathlessly that the calls in this case are the same calls that Rising Eagle made and that are at issue in the FCC'S Notice of Apparent Liability in *In Re Spiller*. (Pl. Resp. p.2 ("This case involves the same set of robocalls as *In re Spiller* . . . ."). According to the FCC, however, Rising Eagle's calls were made using "spoofed numbers" (false or misleading caller ID information) that masked the caller, enabling the callers to practice a deception that they called on behalf of "well-known American health insurance companies like Blue Cross Blue Shield and Cigna." 2020 WL 3091143 *2. This does not align with Plaintiff's claims that he returned many of the calls he received, demonstrating that the calls were not made using spoofed numbers. Nor does the time period at issue in *Spiller* match the time period at issue in this case. Plaintiff's application of the findings in *Spiller* to this case (for example, that "[t]he FCC, too, found that the robocalls *in this case* caused consumers 'significant harm . . .'" (Pl. Resp. p.7) (emphasis in original) is utterly baseless.

2

individual Defendants. According to the Plaintiff, they all have done precisely the same things. Worse, the allegations themselves are purely conclusory recitations of legal elements of the type condemned by *Twombly/Iqbal*. These allegations do not support, but rather undermine, Plaintiff's claim.

### III.   Plaintiff Lacks Standing to Pursue His TCPA Claims Against Defendants.

Plaintiff tries to substitute the Third Circuit's holding in *Susinno v. Work Out World Inc.*, 862 F.3d 346, 351 (3d Cir. 2017) (one telephone call in violation of the TCPA is sufficient to create standing) for actual language used by the Eleventh Circuit in *Cordoba. v. DirecTV*, 942 F.3d 1259, 1270 (11th Cir. 2019). As the Court in *Cordoba* said, "[t]he receipt of ***more than one*** unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing." (emphasis added). In fact, the Eleventh Circuit has repeatedly described the minute injury in TCPA cases and similar cases as close questions and described its approach to the injury required to confer standing as "qualitative, not quantitative." *See, e.g., Salcedo v. Hanna,* 936 F.3d 1162, 1163 (11th Cir. 2019).

This distinction is important because, for most of these Defendants, Plaintiff alleges only a single violation. Specifically, as to Federal Insurance, Med-Sense, NCE, NBBI, Rx Helpline or Teladoc, Plaintiff alleges attenuated and legally insufficient connections to only one call--on February 13, 2019--that featured a prerecorded message. (SAC, ¶¶ 53–69).[4] Plaintiff alleges

---

[4]       Because Plaintiff has limited his TCPA claims to prerecorded call claims and does not include claims under the automatic telephone dialing system provision, the playing of a prerecorded message is an essential element of Plaintiff's claims. *See, e.g., Ybarra v.Dish Network, L.L.C.,* 807 F.3d 635, 640 (5th Cir. 2015) ("To be liable under the 'artificial or prerecorded voice' section of the TCPA ... [the] artificial or prerecorded voice must actually play.").

nothing about this single phone call capable of changing it from mere trifle into an Article III injury that would confer standing on the Plaintiff. (*See* Pl. Resp. p.8).

When the qualitative impact of this call is considered, it is clear there is no injury. Indeed, far from being annoyed, the SAC demonstrates that Plaintiff seized upon this telephone call as a litigation opportunity. Plaintiff feigned interest in the product being offered, affirmatively elected to be transferred to an insurance agent, chose to remain on the phone with this insurance agent, and voluntarily provided information (albeit false)--all on the pretext of demonstrating his willingness and desire to participate in the telephone conversation. (SAC, ¶¶ 56, 57, 62, Ex.D). For calls he missed, Plaintiff went out of his way to call back in order to feign interest in the insurance products being offered. (*Id.* ¶ 70, 72, 92, 94). He repeatedly called back such missed call numbers when he apparently could not get a good connection. (*Id.* ¶ 103, 105, 106, 107). Qualitatively, Plaintiff suffered no concrete harm sufficient to constitute an injury in fact under Article III. Rather, Plaintiff was looking for a means to file this litigation.

Nor can Plaintiff rely on the injury to the supposed "millions of others who received" the alleged call. (Pl. Resp. p.6). Plaintiff's standing is determined by Plaintiff's injury. *Salcedo v. Hanna*, 936 F.3d 1162, 1167 n.3 (11th Cir. 2019) ("As the would-be class representative, Salcedo must establish his own personal, concrete injury notwithstanding whatever injuries may have been suffered by the other members of the class.").

**IV.**   **Plaintiff Ignores HII's Arguments Regarding His Failure to Plead Any Basis for Direct Liability.**

In their Motion, Defendants pointed out that Plaintiff failed to allege direct TCPA liability against HII for failure to claim that HII physically placed any calls or was so involved in the placing them that HII should be deemed to have placed them. (Motion, pp.9–11). Plaintiff makes no attempt to address these arguments, and therefore presumably intends to abandon the

4

claim. *Balbin v. Concepcion,* 411 F.Supp. 3d 1340, 1358 (S.D. Fla. 2019) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned."); *see* also S.D. Fla. Loc. R. 7.1(c) (same, "sufficient basis to dismiss such claims by default[.]").

**V.      Plaintiff Fails to Explain How the August 8, 2018, March 5, 2019, May 22, 2019, August 14, 2019, and August 29, 2019 Calls Give Rise to Liability Against Any Defendant.**

Plaintiff does not address and apparently concedes the deficiencies with his claims arising out of the calls on August 8, 2018, March 5, 2019, May 22, 2019, August 14, 2019, and August 29, 2019. The August 8, 2018 call did not mention any of the Defendants, and thus Plaintiff failed to state a basis for holding any Defendant vicariously liable for the call. (Motion, pp.11–12). The March 5, 2019, May 22, 2019, August 14, 2019, and August 29, 2019 calls did not feature an artificial or prerecorded voice and, therefore, did not violate the TCPA. *Id.* This disposes of all but *two calls* alleged in the SAC -- November 26, 2018, and February 13, 2019. *Balbin, supra.*

**VI.     Plaintiff Fails to Establish Vicarious Liability Against the Defendants.**

**A.      Plaintiff fails to allege facts that plausibly support an inference that the individuals who placed the calls were acting as actual agents of any Defendant.**

**i.       *Plaintiff abandons his actual agency argument against the majority of Defendants.***

Plaintiff offers no rebuttal to the argument that Med-Sense, NCE, NBBI, Rx Helpline, and Teladoc cannot be vicariously liable under an actual agency theory. Therefore, the Court should treat this position as abandoned by Plaintiff. *Balbin, supra.*

ii. **Plaintiff's does not establish that HII, Federal Insurance, or American Financial had a sub-agency relationship with Rising Eagle.**

Plaintiff gilds its allegations against HII by mischaracterizing and misquoting Exhibit A to the SAC, engaging in rank speculation in the process.

Exhibit A is a redacted document, and the unredacted portions do not mention non-parties HAA or Rising Eagle at all. Thus, the Court must reject Plaintiff's argument that Exhibit A illustrates an agency relationship between HII and HAA or Rising Eagle because the argument relies upon purported facts that are not plead in the SAC.( Pl. Resp., pp.11–16).

Plaintiff grossly misinterprets Exhibit A, relying upon an obvious typographical error. The meaning of the exhibit is clear from other direct provisions and the overall context. Plaintiff takes one clause, which is not even a complete English sentence, ignores the fact that it obviously omitted the word "not," and absurdly concludes that HII had directed the anonymous signatory that it must make calls to telephone numbers on the DNC Registry. *Id.*, p.13. This opportunistic seizure on a clerical error is revealed to be inaccurate by reviewing other language on the same page 6. Immediately above this set of sub-bullet points is the point requiring the anonymous signatory to "[e]nsure compliance with the Federal Trade Commission's Telemarketing Sales Rule, including, but not limited to, Local, State, and Federal laws promulgated pursuant to the Telephone Consumer Protection Act ("TCPA")." In the same set of sub-bullet points relied upon by the Plaintiff, the anonymous signatory is called upon to "manag[e] updat[e] and maintain[] the internal Do Not Call list" and to "implement and disseminate internal DNC policy and procedures to all entity staff[.]" *Id.* The signatory is further directed to "obtain[] certification from each entity supplying leads to verify that supplied leads have been checked against the National and applicable State Registries." What's more, the

45492116V1

signatory is required to re-confirm that all of the signatory's staff persons have been trained and informed of these policies at least every six months. *Id.* The Plaintiffs misreading of a single snippet of a bullet-point is so obviously incorrect as to be disingenuous.

The Plaintiff directly contradicts the language of Exhibit A and its reference to "pre-recorded solicitation" calls, resorting to misquotation by omission. Despite the Plaintiff's repeated assertion that Exhibit A authorizes or encourages such pre-recorded solicitation calls, (Pl. Resp. p.12, 14, 15, 16), Exhibit A actually requires the anonymous signatory to ensure that "leads are ***not*** obtained *via* pre-recorded solicitation calls," and to "scrub[]" leads that are not certified to be free of this defect. (Dkt. 140-1, p.6) (emphasis added). This glaring misquotation of Exhibit A cannot be excused by reliance on a typographical error.

Plaintiff attempts to address these exculpatory provisions of the Exhibit A by denigrating them as "lip service." (Pl. Resp., p.14). Not so fast. The Plaintiff cannot attach a document to his Complaint in an effort to make an adequate pleading of agency, and then invite the Court to ignore clear provisions that contradict his pleading. *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205, 1206 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations. Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.")

Plaintiff's argument that HAA was the "formal agent" and Rising Eagle was the Sub-Agent of any Defendant misses the mark. (Pl. Resp., pp.16-18). First, Plaintiff fails to plead plausible facts whereby any Defendant "acknowledged" that either non-party HAA or non-party Rising Eagle could act for them, as required to state an actual agency claim. *Wolf v. Celebrity Cruises, Inc.*, 683 F.Appx. 786, 796 (11th Cir. 2017).

Plaintiff's allegations also fail to allege the requisite control. *Wolf*, 683 F.Appx. at 796. Plaintiff fails to allege that these Defendants controlled the "manner and means by which the [alleged] agent accomplishes the" telemarketing. *Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011). If a principal controls the *outcome* of an endeavor but not the *means* used to achieve that outcome, there is no agency relationship. *In re: Cuenant*, 339 B.R. 262, 276 (Bankr. M.D. Fla. 2006). It is not enough for Plaintiff to baldly assert that that these Defendants (1) entered into "agreements with HII" that "authorized the calls;" (2) "authoriz[ed]" use of "trade name[s];" (3) provided "product and pricing information;" and (4) "pa[id] for and accept[ed] the benefits" of the telemarketing." (SAC, ¶¶ 132(a)-(d), 137(a)-(d)). Plaintiff does not allege facts that each of these Defendants *controlled* the manner and means of the telemarketing, in this case, use of prerecorded calls. *Ewing v. Encor Solar, LLC*, No. 17-cv-2247-CAB-MDD, 2019 U.S. Dist. LEXIS 10270, at *16 (S.D. Cal. Jan. 22, 2019) (actual authority theory failed where plaintiff failed to allege defendant controlled "the manner and means of all the calls made to Ewing."). Unable to meet the standard to show control over the alleged use of a prerecorded or artificial voice, Plaintiff resorts to distinguishable, non-controlling cases, none of which override the pleading requirements for actual authority.[5] Thus, Plaintiff's arguments provide no basis for liability of American Financial and Federal Insurance.

---

[5]     *Gould v. Farmers Insurance Exchange*, 288 F. Supp. 3d 963, 969 (E.D. Mo. 2018) is distinguishable because the plaintiff there actually pled facts showing that the defendant could control the "conduct and content of text advertising." Here, by contrast, Plaintiff pleads no facts suggesting how Defendants controlled the means of telemarking. Similarly, in *In re Jiffy Lube Int'l Inc. Text Spam Litigat.*, 847 F.Supp. 2d 1253, 1258 (S.D. Cal. 2012), the plaintiff pled facts that the defendant directly hired "TextMarks", the texting company, which is a direct nexus and control over the means of telemarketing that is entirely absent from Plaintiff's allegations here. Likewise, Plaintiff's reliance on *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 817, 833 (N.D. Ill. 2016) is misplaced, as that opinion dealt with summary judgment motions and not pleading deficiencies at the motion to dismiss stage.

Nothing in Exhibit A implies that HII has the power to control or direct the marketing operations of the anonymous signatory. Quite the contrary, the document puts all of this responsibility for compliance with the TCPA on that anonymous signatory. (Exh.A, p.6). The document emphasizes the separate nature of the two entities. *Id.,* (precluding signatory from using HII's name or products in advertising without separate written approval, signatory is an independent contractor, signatory has no authority to act on behalf of HII or to bind coverage, representations of signatory are not binding on HII). In contrast with the mere legal conclusions of control that are plead, which this Court should disregard, *Griffin Indus., supra; Honig v. Kornfeld,* 339 F.Supp. 3d 1323, 1347 (S.D. Fla. 2018), this document affirmatively demonstrates HII's lack of control over the daily marketing operations of the anonymous signatory. The Plaintiff misinterprets Exhibit A, pp.8-14 (Pl. Resp., p.14, 15), as evidencing control over the anonymous signatory. These pages address HIPAA. The power to terminate for HIPAA violations implies no control of marketing operations or agency relationship. Moreover, there is certainly nothing in Exhibit A suggesting that HII has any right to control the telemarketing efforts of alleged sub-agents further down the line from the anonymous signatory. The other Defendants were even further removed up the line from any of this allegedly violative activity and thus certainly had no means of control over these virtual strangers.

Plaintiff places glancing reliance on an alleged "power to assess" the performance of insurance sales agents. (Pl. Resp. p.12). Although HII presumably could choose to disassociate itself from a commissioned insurance sales agent, this does not suggest any operational control over the marketing activities of any particular sales agent. Plaintiff makes conclusory allegations that HII controlled HAA or Rising Eagle by partially paying for some or all of the calls. (Pl. Resp. p.2). Plaintiff pleads only bald, unsupported assertions are that are insufficient to meet

the plausibility standard of *Twombly/Iqbal*, and accordingly should be disregarded. *Montalvo, supra; Honig, supra.*

Plaintiff places similar glancing reliance on sales scripts. Here, the Plaintiff actually misstates his own pleadings when he claims that he alleged that HII "dictated" or "specified the scripts that were to be used." (Pl. Resp. p.2, 12). The SAC merely alleges that "HII provides scripts," without any allegation that HII requires their use or polices compliance with such a requirement. SAC. ¶ 29. Moreover, the pleading of the calls bears no resemblance to the scripts and there is no allegation that the scripts were followed in the alleged calls to Plaintiff.

Plaintiff's reliance on *United States v. Dish Network,* 954 F.3d 970 (7thCir. 2020), a final appeal after a five week bench trial, is misplaced. (Pl. Resp. p.15). In *Dish,* the defendant did not even contest the district court's factual findings of agency, and the *Dish* opinion did not discuss them. *Id.* at 975. Instead, the defendant asserted a legal error by the district court in interpreting the defendant's contracts with its agents, *id.*, an issue not presented in the instant Motion.

## VII.   Plaintiff Fails to Show that any Defendant, Let Alone All of Them, Ratified a Decision by Another Defendant or Third Party to Place the Alleged Calls.

For ratification, Plaintiff concedes that the SAC must allege that the Defendants either (1) *knowingly retained the benefits* of the alleged TCPA violations or (2) chose to ratify the TCPA violations *with awareness that such knowledge was lacking* to proceed under a theory of ratification. (Pl. Resp. p.18). Yet Plaintiff's Response fails to demonstrate (because he cannot) that the SAC sets forth any such allegations.

A.     **The SAC does not allege that the Defendants knowingly retained the benefits of HII's purported TCPA violations.**

While it is true that a principal can "ratify" an agent's unauthorized torts undertaken without "actual authority," ratification -- as a threshold matter -- requires the existence of an *agency relationship*. Where there is no agency there is no ratification, in other words, and here Plaintiff has failed even to allege any actual agency. *See, e.g. Richards v. Finlay*, 259 So. 2d 167, 168 (Fla. 4th DCA 1972) (holding that issues of ratification were moot when no agency relationship exists to begin with); *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679–80 (9th Cir. 2014) (finding that the defendant did not ratify the purported agent's conduct because the plaintiff did not plead a principal-agent relationship); *Batzel v. Smith*, 333 F.3d 1018, 1036 (9th Cir. 2003) ("Although a principal is liable when it ratifies an originally unauthorized tort, the principal-agent relationship is still a requisite, and ratification can have no meaning without it.") (superseded on other grounds); *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *5 (collecting cases), *adopted*, 2019 WL 1306064, at *5 n.4 (E.D.N.Y. Mar. 22, 2019) ("Ratification requires a principal-agent relationship."). Plaintiff failed to allege an agency relationship between Rising Eagle and each Defendant, and has thus also failed to plead ratification.

Plaintiff argues that the SAC properly alleges that Defendants knew of the purported TCPA violations by reiterating the boilerplate, shotgun allegations from the SAC and arguing that they "allege[] that HII and the Seller Defendants knowingly accepted the benefits of the illegal telemarketing calls, and thus ratified them sufficient to plead vicarious liability." (Pl. Resp. p.19). Plaintiff is flat wrong, and the SAC falls well short of the specificity and plausibility required to plead ratification in the complex, multilayered marketing scheme he asserts exists.

11

For instance, with regards to HII, Plaintiff copy-and-pastes various allegations setting forth how HII "issue[d] email[ed] quotes to call recipients," "paid for all or part of the telemarketing at issue," and "coordinate[ed] in the management of billing" (Pl. Resp. p.19, 20), but fails to point to any allegation in the SAC *that HII knew the telemarketing efforts were in violation of the TCPA*. Plaintiff only reiterates the conclusory allegation that HII "knew that its insurance agents . . . were making nonconsensual, prerecorded telemarketing calls," *id.*, but fails to point to any allegations in the SAC detailing *how* HII knew the telemarketing efforts were violative of the TCPA, *what* HII knew was occurring that was purportedly violative of the TCPA, or any other facts capable of supporting HII's alleged knowledge.

The allegations are even more attenuated for the Seller Defendants. According to Plaintiff, the Seller Defendants contracted with HII and reviewed various telemarketing scripts (which were apparently not used in the calls at issue). (Pl. Resp. p.21–22). Based on this allegation alone, Plaintiff makes the incredible leap that the Seller Defendants *knew* that various third party telemarketers like Rising Eagle (with whom Defendants have no direct contact) were violating the TCPA violations and *reaped the benefits* such violations. *Id.* Yet again, Plaintiff speculates. Plaintiff's only allegation directly stating that the Seller Defendants had knowledge of TCPA violations, (Pl. Resp. p.21), is wholly conclusory and fails to plead the requisite who, what, when, where to survive a motion to dismiss.

Plaintiff's reliance on *Mey v. Venture Data, LLC*, No. 5:14-CV-123, 2016 WL 11501595, at *5 (N.D. W.Va. July 26, 2016) is misplaced. The court found there that the plaintiff had adequately alleged ratification where the complaint alleged that *one* defendant contracted with *one* co-defendant to place the calls at-issue, provided the plaintiff's number to the co-defendant, and controlled the manner and method of calling by the co-defendant. *Id.* at *4-5. Here, by

12

contrast, Plaintiff has not expressly alleged that any Defendant, let alone all of them, contracted with the unnamed telemarketers, provided Plaintiff's number to the telemarketers, controlled the manners and methods of the telemarketer's calling practices, or otherwise alleged any conduct that would warrant vicarious liability over the various Defendants.

Plaintiff's Opposition cannot cure the SAC's failure to plead that the Defendants knowingly retained any benefits of the purported TCPA violations. Plaintiff's argument that "marketing *itself* benefits the person whose goods and services are being pitched" borders on the absurd. (Pl. Resp. p.23). Plaintiff does not allege that the marketing at-issue resulted in Plaintiff doing business with any of the Defendants, or that the Defendants received additional clients, customers, or other sources of revenue as a result of the calls. Rather, as Plaintiff states in his Opposition, the point of marketing is to "retain[] revenue from sales." *Id*. There is no allegation that the marketing at issue actually resulted in sales or created some other benefit like brand awareness for any of the Defendants. This is fatal to Plaintiff's claim. *See Toney v. Quality Res., Inc.*, 75 F.Supp. 3d 727, 745–46 (N.D. Ill. 2014) ("Plaintiff's ratification theory fails because plaintiff does not allege that Sempris or Provell accepted any benefit that stemmed from Quality's telemarketing calls to plaintiff. Indeed, plaintiff fails to allege that she did business with Sempris or Provell as a result of Quality's calls.").

Notably, many of the Seller Defendants were *never even mentioned* during any of the calls at issue and therefore did not have their products "pitched" during the supposedly illegal marketing calls. To illustrate, Plaintiff asserts that Teladoc is liable for the February 13, 2019 and May 22, 2019 calls simply because its services were included in bundles of insurance products emailed to Plaintiff after the call ended, SAC ¶ 64, 85; bundles he did not purchase because he is a professional TCPA plaintiff feigning interest to generate claims. There similarly is no claim

that Med-Sense was referenced during any call. Therefore, Teladoc (and the other similarly situated Defendants) did not and could not "knowingly accept" based on the marketing efforts of third party telemarketers.[6] Plaintiff's circular argument therefore fails.

Plaintiff's argument that the SAC adequately pleads "material facts" and not "knowledge of the law", (Pl. Resp. p.24), is a distinction without a difference. As demonstrated above, Plaintiff has not pleaded any material facts supporting a ratification through knowing retention of benefits theory. The SAC should therefore be dismissed.

### B.    The SAC does not allege that Defendants were willfully ignorant.

Plaintiff's further argument that the SAC alleges "red flag[s] that would lead a reasonable person to investigate" also fails. *See Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1015 (9th Cir. 2018). For instance, Plaintiff argues that the Defendants were willfully ignorant because they "continued to accept business through HII's third-party lead generation platform despite prior TCPA lawsuits against themselves and others," but this is not the sort of "red flag" necessary to sustain a vicarious liability claim. Indeed, the "mere fact that [the Defendants were] previously sued does not provide factual support for plaintiff's conclusory statements that [the Defendants] 'must have been aware of' [the] offending conduct." *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, at *10 (N.D. Cal. Dec. 4, 2017). In other words, just because the Defendants are involved in lawsuits does not mean that there *must have been an underlying TCPA violation* and that Defendants *must have known of such violations*.[7] To hold

---

[6]    In fact, according to Plaintiff's own narrative, the Seller Defendants are at least three degrees of separation removed from Rising Eagle: Rising Eagle supposedly contracted with HAA, who contracted with HII, who contracted with the Seller Defendants. (SAC ¶ 25-27).

[7]    As previously noted, Plaintiff's reliance on *Aranda*, 179 F. Supp. 3d at 833 is misplaced, as that opinion dealt with summary judgment motions and not pleading deficiencies at the motion to dismiss stage. *See also Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 577, 588 (S.D. Ohio 2016) (granting motion to dismiss despite plaintiff's claim that two prior lawsuits were "red

otherwise would render any company using a third party to place telemarketing calls vicariously liable once that third party has a lawsuit initiated against it. This is an untenable position.

Plaintiff also argues that HII's filings with the SEC put the Defendants on notice of illegal activity, but the relevant 10-K states "[w]e, our distributors, and our carriers ***have been, and may continue to be*, the subject of allegations of TCPA violations**." (Pl. Resp. p.27). The 10-K does not state that HII *has* violated the TCPA or has had a judgment entered against it in a TCPA case. This key difference also separates the allegations here from those in *Abante Rooter & Plumbing, Inc. v. Alarm.com Inc.*, No. 15-CV-06314-YGR, 2018 WL 3707283 (N.D. Cal. Aug. 3, 2018), cited by Plaintiff on page 28 of the Opposition. There, the court denied a motion for summary judgment finding that "a reasonable jury may return a verdict finding that Alarm.com is vicariously liable for the telemarketing calls at issue based on a ratification theory" where "Alarm.com knew … that VMS, ***had admitted to violations of state telemarketing laws*.**" *Id.* at *5 (emphasis added). There is no equivalent factual allegation here. Plaintiff's SAC does not allege that the Defendants had notice of any *admission of a TCPA violation*. Without any such allegations, and contrary to Plaintiff's argument, (Pl. Resp. p.29), Defendants were under no obligation to investigate further or cease any telemarketing activities.

What Plaintiff is really advocating for here is a *per se* rule that once a caller has been sued more than a handful of times under the TCPA, third parties will become strictly liable for this third party marketer's future calls relating to the third party's products (regardless of whether the caller has ever actually been held liable or later changed its operations). But that is not the law and ignores to reality of the modern TCPA landscape, which encompasses a feeding frenzy

---

flags" of illegal telemarketing where, among other things, plaintiff failed to "allege *where* he filed those lawsuits, *which* third-party telemarketers were at issue in those cases, or *what* remedial steps, if any, [defendant] took (or failed to take) as a result of his legal actions.").

of tens of thousands of cases, with opportunistic plaintiffs and plaintiffs' counsel, in many cases, bringing contrived claims.[8]

In sum, the SAC fails to allege any facts demonstrating that the Defendants ratified any purportedly violative behavior. The SAC fails to allege *facts* sufficient to even suggest that Defendants are liable on a theory of ratification and, therefore, should be dismissed.

## VII.   Plaintiff Does Not Present a Viable Claim for Vicarious Liability Under An Apparent Authority Theory.

The essential element of apparent authority is a manifestation from the alleged principal of the supposed agent's authority. Plaintiff's apparent authority theory is fatally flawed and his opposition is calculated to obscure the fact that he fails to plead this essential element. Apparent authority depends upon (1) the *alleged principal* making some sort of manifestation that causes a third party to believe that the alleged agent had authority to act for the principal; (2) the third party's belief was reasonable; (3) the third party reasonably acted on such belief to his detriment. *Doonan v. Carnival Corp.*, 404 F. Supp. 2d 1367, 1371 (S.D. Fla. 2005).

Plaintiff simply ignores the fact that no Defendant manifested to him that Rising Eagle (or any other caller) was its agent. Instead, Plaintiff quotes selectively from Rest. (3d) of Agency § 2.03, ignoring the portion that clearly states: "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent *when*

---

[8]     Web Recon, 2019 Year in Review, https://bit.ly/3gSUHP1 (reflecting that over 22,000 TCPA lawsuits were filed over the last six years) (last accessed 10/2/2020). *See also Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 788, 796 (W.D. Pa. 2016) (granting summary judgment to defendant where plaintiff "collect[ed] a shoe box" full of "at least thirty-five cell phones" in order "to fish for accidental wrong number calls"); *Alan v. BrandRep, Inc*, No. 16-1040, 2016 WL 10988679, at *1 (C.D. Cal. Nov. 28, 2016) (plaintiff allegedly "advertises businesses that do not exist using his personal number in order to manufacture TCPA violations"); *Franklin v. Upland Software, Inc.*, No. 18-236-LY, 2019 WL 433650, at *3 (W.D. Tex. Feb. 1, 2019) (similar); *Garcia v. Credit One Bank, N.A.*, No. 18- 191, 2020 WL 4431679, at *1 (D. Nev. July 31, 2020) (similar).

*the belief is reasonable and is traceable to a manifestation of the principal.*" Rest. (3d) of Agency § 2.03, cmt. C (italics added). This rule is in accord with the law of this District and elsewhere in demanding that the alleged principal's own words or deeds communicate to the plaintiff the existence of a principal-agent relation. *See, Warciak*, 2019 WL 978666, at * 6 (N.D. Ill. Feb. 28, 2019) (in order to plead apparent agency, plaintiff was required to plead some communication from the defendant to plaintiff regarding the authority of the alleged agent), *aff'd* 949 F.3d 354 (7th Cir 2020) ("Apparent authority exists when a third-party reasonably relies on the principal's manifestation of authority to an agent . . . Statements by an agent are insufficient to create apparent authority.") (citations omitted). In order to properly plead apparent authority, therefore, Plaintiff must allege "that he reasonably relied upon something said or done by [a defendant] to his detriment." *See Canary v. Youngevity, Int'l, Inc.*, 2019 WL 1275343, at *8 (N.D. Cal. Mar. 20, 2019).

Rather than allege that any of these Defendants made representations to him, Plaintiff contends that the unnamed marketers offered him insurance packages from HII's system that contained insurance and services offered by the Seller Defendants. Opp. p.31-32. None of this, however, qualifies as a manifestation from any Defendant to Plaintiff that any caller acted as agent of a Defendant. This is illustrated by *Shanahan v. Nat'l Auto Protection Corp.*, Case No. 1:19-cv-03788, 2020 WL 3058088, at *5-*6 (N.D. Ill. June 9, 2020), in which the court held that a company administering an auto service plan did not manifest to plaintiff that the telephone solicitor who called her was acting as that company's agent. The mere fact that the "Service Plan contract and brochure ... 'included [defendants'] names and made them parties to the Service Plan,'" was insufficient to create apparent authority because "reasonable third parties frequently encounter scenarios where one party sells or markets the goods or services of another company

17

without being an agent of that company." 2020 WL 3058088, at *5-*6. The mere allegation that Defendants' products were mentioned or sold in a call is <u>not</u> an assertion of agency by the principal and implies no agency relationship.

In order to sustain his burden to plead apparent authority, Plaintiff must allege "that he reasonably relied upon something said or done by [a defendant] to his detriment." *See Canary, supra.* Plaintiff suggests that he reasonably relied on the fact that the Seller Defendants' products were solicited during the calls and that HII transmitted application documents. As an initial matter, this contradicts Plaintiff's allegations. Federal Insurance, Med-Sense, NCE, NBBI, Rx Helpline or Teladoc were not mentioned *during* the two calls that featured a prerecord voice (the November 26, 2018, and February 13, 2019 calls) and were only included in the insurance package provided to him *after he went through the quote process and the call ended.* (SAC, ¶ 64). Therefore, even if the sale of their products constituted a representation for apparent agency purposes, Plaintiff did not and could not rely on that representation. Further, Plaintiff does not allege that he relied on any representation *to his detriment*. Plaintiff did not sit through any phone call because he believed that he would have the opportunity to purchase goods or services of Defendants,[9] but instead did so in search of a ticket to the litigation lottery.[10]

---

[9]     The Opposition falsely claims that Defendants "went on to provide the products and services purchased during these calls." (Pl. Resp. p.31). Plaintiff purchased nothing, the paragraphs that he cites do not claim otherwise, and it is Plaintiff's burden to plead facts in support of his own claim and not to fabricate assertions regarding what persons unknown to him may have done.

[10]     Plaintiff has played this lottery many times. *See Robert Hossfeld v. Compass Bank, et. al*, Northern District of Alabama, 2:16-cv-02017-ACA; *Robert Hossfeld v. Lyft, Inc., et. al*, Northern District of Georgia, 1:19-cv-02914-TWT; *Robert Hossfeld v. Allstate Insurance Company*, Northern District of Illinois, 1:19-cv-03492; *Robert Hossfeld v. Caribbean Cruise Line, Inc., et. al,* Western District of Michigan, 1:13-cv-01029-PLM; *Robert Hossfeld v. Lifewatch, Inc., et. al,* Southern District of New York, 7:16-cv-01614-KMK-PED; *Robert Hossfeld v. Elephant Insurance Company, et. al*, Western District of Texas, 6:16-cv-00130-RP;

18

Notwithstanding that a manifestation from Defendant to Plaintiff is essential to apparent authority, Plaintiff cites to inapposite. Plaintiff's brief wholly misses the mark, therefore, by citing cases that consider apparent authority in the context of class certification, *see Braver v. Northstar Alrm Servs., LLC*, 329 F.R.D. 320, 332 (W.D. Okla. 2018) (addressing issues of commonality for purposes of class certification), or whether the plaintiff's theory of agency has enough evidence to survive summary judgment, *see Shamblin v. Obama for Am.*, 2015 WL 1754628 (M.D. Fla. Apr. 17, 2015) (discussing several categories of evidence including scripts that bears upon agency, but not tying that evidence and the decision to deny defendants' motion for summary judgment to any particular agency theory) (both cases cited in Pl. Resp. at 30, 32). Moreover, it is of no help to the Court for Plaintiff to cite cases that give no indication that this specific issue was raised and considered on the motion to dismiss or that do not even make clear that their conclusions rest upon apparent authority rather than agency theory. *See Snyder v. iCard Gift Card, LLC*, 2017 WL 10379592 (S.D. Fla May 11, 2017); *Golan v. Veritas Entertainment, LLC*, No. 4:14CV00069 ERW, 2016 WL 880402 (E.D. Mo. Mar. 8, 2016); *Wagner v. CLC Resorts and Developments, Inc.*, 32 F.Supp. 3d 1193 (M.D. Fla. 2014) (Motion, p.33-34).

Plaintiff's opposition is insufficient to withstand dismissal on the theory of apparent agency because Plaintiff is required to plead a manifestation from each Defendant, made to Plaintiff, that is capable of imposing liability on an apparent agency theory. *Doonan, supra,* 404 F. Supp. 2d at 1371. Plaintiff fails to plead any such manifestation, attempting instead to read that requirement out of the Restatement of Agency. Further, Plaintiff relies upon cases that are not motion to dismiss cases and do not hold that this manifestation is not strictly required. The

---

*Robert Hossfeld v. North American Credit Services, Inc.*, Western District of Texas, 6:16-cv-00386-RP-JCM.

Plaintiff's cases on this issue were also decided before the cases cited by Defendants, including the Seventh Circuit's well-reasoned opinion in *Warciak, supra,* 949 F.3d 354.

**VIII.   <u>Plaintiff Fails to State Facts to Support Count II of the SAC Against HII.</u>**

Count II of the SAC, addressed against HII only, also fails to state a claim. Here, Plaintiff's reliance on Exhibit A is fatal. Notwithstanding the grammatical deficiencies resulting from the bullet point format, Exhibit A clearly establishes that HII required the anonymous signatory to comply with all TCPA requirements, specifically: to maintain an internal Do Not Call list, to train employees on it, to implement and maintain a DNC policy, to only use leads that are certified to be in compliance with National and State registries, to check all leads, to scrub non-compliant leads, and maintain records of each employee's TCPA training. (SAC Exh.A, p.6.). By relying on Exhibit A, in other words, Plaintiff has actually plead that HII is compliant and cannot be held liable for mistakes. *Griffin Indus., supra.* Since Plaintiff has not alleged that HII purposely made the alleged calls in violation of Do Not Call rules, he has failed to state a cause of action.

Plaintiff also glosses over the facts he has actually alleged. He alleges that the first time he asked not to be called was in the alleged May 22, 2019 call to his son's phone. But he fails to allege that he had previously placed his son's phone on any DNC list, nor does he allege any subsequent call to that number. The alleged August 14, 2019 call was a call by Plaintiff himself, which cannot constitute a telemarketing call. Plaintiff further fails to allege that he provided any number to be placed on any Do Not Call list, nor that he ever contacted HII and asked that a particular number be placed on any Do Not Call list. Similarly, the alleged August 14, 2019 call was also a call made by Plaintiff himself, and again does not allege that Plaintiff gave a number to be listed on any Do Not Call list. These pleading deficiencies were pointed out in the original

Motion, p.26-28. Plaintiff has made no response, (Pl. Resp. p.33), and therefore concedes these arguments as well.

## IX. Plaintiff Fails to Allege Personal Jurisdiction Over Federal Insurance, Med-Sense, NCE, NBBI or Teladoc.

Further, the SAC fails to sufficiently allege Florida personal jurisdiction over Federal Insurance, Med-Sense, NCE, NBBI and Teladoc ("Jurisdictional Defendants"). As Defendants' Brief shows, the SAC identifies no factual basis for general or specific jurisdiction over these Defendants. Dkt.153 at pp.28-30. Plaintiff's Response fails to demonstrate otherwise.

Plaintiff argues that the Court should accept as true the factual allegations in the SAC. Pl. Resp. p.35. While Defendants do not dispute this, the Court should not accept conclusory allegations that are devoid of factual support. *See Twombly/Iqbal*, supra; *Montalvo, supra; Honig, supra.* Nor should the Court accept extraneous factual claims and documents. *See* Part I, supra. And here, Plaintiff once again relies – improperly – on outside material. *See* Pl. Resp. p.36 n.41-43; p.38 n.45 & Ex.8; p.39 n.47.

The SAC indeed fails to allege *facts* capable of creating general jurisdiction over the Jurisdictional Defendants. None of them are incorporated in Florida. SAC pp.5-7. None use Florida as their principal place of business. *Id.* Plaintiff, moreover, has failed to allege systematic, substantial, and not isolated activities in Florida by any of the Jurisdictional Defendants. *Id. & Daimler,* 571 U.S. at 139.

Notwithstanding these glaring deficiencies, Plaintiff asserts that the Court has specific personal jurisdiction pursuant to a provision of Florida's long-arm statute which extends jurisdiction to nonresidents for "any cause of action **arising from** ... [o]perating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." § 48.193, Fla. Stat. (emphasis added). While the term "arising from" is

broad and does not mean "proximately caused by," it does require "a direct affiliation, nexus, or substantial connection to exist between the basis for the cause of action and the business activity." *Hinkle v. Cirrus Design Corp.*, 775 F.App'x 545 (11th Cir. 2019) (internal citations and quotations omitted); *see also Insight Instruments, Inc. v. A.V.I.-Advanced Visual Instruments, Inc.*, 44 F. Supp. 2d 1269, 1272 (M.D. Fla. 1999). But it is not enough to simply allege similarities between Plaintiff's claims and the activities that connect these Defendants to the forum. Rather, Plaintiff's claims must have a "substantial connection" to the defendant's business ventures in the State for long-arm jurisdiction to be proper. *Hinkle*, 775 F.App'x 545, at *4. Here they do not.

Plaintiff also asserts that the Court has jurisdiction because each of the Jurisdictional Defendants contracted with Florida-based HII.[11] Yet "the fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant." *Zuccarini v. Network Sols., LLC*, 2011 WL 13186048, at *3 (S.D. Fla. Dec. 9, 2011); *see also Walack v. Worldwide Mach. Sales*, Inc., 278 F.Supp.2d 1358, 1366 (M.D. Fla. 2003).

Even if there is a basis for the assertion of personal jurisdiction under Florida's long arm statute, due process does not permit the exercise of personal jurisdiction over the Jurisdictional Defendants in this case because the suit does not arise out of or relate to the Jurisdictional Defendant's contacts with the forum. *See Bristol-Myers Squibb Co v. Superior Court of California*, 137 S.Ct. 1773, 1780 (2017). None of the allegations set forth by Plaintiff in his SAC or Response, establishes that the Jurisdictional Defendants' conduct and connection with the

---

[11]     NBBI has no alleged contract or direct contact with HII. *See Contrast Sun Bank, N.A. v. E.F. Hutton & Co.*, 926 F.2d 1030, 1034 (11th Cir. 1991) (holding that no personal jurisdiction exists where the defendant "entered into no contract or other continuing relationship or obligation" with the forum.

forum is of a character that they should reasonably anticipate being haled into court here. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Importantly, Plaintiff alleges that a third party – not any of the Jurisdictional Defendants – initiated the calls to Plaintiff that are at issue in this case. Plaintiff concedes "that neither NCE, Federal Insurance, Teladoc, Med-Sense, nor NBBI made the calls at issue." *See* Pl. Resp. at 37. Plaintiff asserts that personal jurisdiction exists over these Defendants because non-party telemarketers, contracting with non-party insurance agents, targeted Florida. Yet Plaintiff did not even receive the calls at issue in Florida; he presumably received them in Texas, where he resides. Plaintiff, therefore, alleges nothing to show that Jurisdictional Defendants themselves targeted Florida. Because the Jurisdictional Defendants did not make any of the calls to Plaintiff or residents of Florida, Plaintiff's claims do not relate to any of the Jurisdictional Defendants forum state activities. [12]

Even more basically, Plaintiff has failed to plead facts capable of establishing an agency relationship with these third-party telemarketers. While in-forum conduct by an agent can subject a principal to jurisdiction in the forum, calls made by these purported agents – with no allegation of any contractual relationship to any Jurisdictional Defendant – do not constitute contacts created by those defendants with the forum state. Notably, the Court must assess each

---

[12]     The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state under the due process analysis. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* This requirement assures that a defendant, such as the Jurisdictional Defendants here, will not be haled into a jurisdiction as a result of random, fortuitous, or attenuated contacts, or because of the unilateral activity of a third person. *Burger King*, 471 U.S. at 475.

Defendant's alleged contacts with Florida before exercising personal jurisdiction over them.[13] When it does this, the Court will find that the alleged relationship between the Jurisdictional Defendants and the Florida-based telemarketers and insurance agents who made the alleged calls is much too tenuous.

Plaintiff has also contended – incorrectly – that its allegations are sufficient to state a claim that Defendants ratified the conduct of the Florida-based agents when they accepted the benefits of said conduct. Plaintiff's continued reliance on *Keim v. ADF Midatlantic, LLC*, 199 F. Supp. 3d 1362 (S.D. Fla. 2016) to support this claim is misplaced. In *Keim*, the tortious act allegedly occurred in Florida when a Florida resident received a text message in Florida. *Id.* at 1367, 1369. Here, Plaintiff is a person and citizen of Texas and does not allege to have received the phone calls in Florida. (Dkt. 77 at ¶ 23). As shown above, moreover, there is no ratification without the existence of agency in the first instance. And also, a call made by a purported agent – without these Jurisdictional Defendants having knowledge or control over such purported agent – is not a contact created by them.[14] The SAC, for all of these reasons, fails to allege personal jurisdiction as to the Jurisdictional Defendants.

---

[13]    This is necessary, in part, due to Plaintiff's varying allegations against specific Jurisdictional Defendants in an attempt to tie them to the forum. For example, although unsubstantiated, Plaintiff claims that "Federal Insurance also directly engaged the Florida-based insurance agents that made the sales pitches to Plaintiff and the class" (Pl. Resp. at 37), while no similar allegation is made as to NBBI or Med-Sense. Additionally, NBBI has no alleged contract or direct contact with Florida-based HII. Plaintiff claims that NBBI is subject to personal jurisdiction because it has a relationship with NCE, a non-Florida entity. (Dkt. 140 at ¶ 19, 20).

[14]  *See Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1241 (S.D. Fla. 2015) (agency-based personal jurisdiction only exists where the parent entity exercises operational control over a subsidiary and operational control means the day-to-day control of the internal affairs or basic operations of the subsidiary); *see also Daimler AG v. Bauman*, 571 U.S. 117 (2014) (foreclosing general jurisdiction based on agency).

## CONCLUSION

Plaintiff -- after three attempts -- has again failed to state a claim against any of these Defendants, none of whom even made the calls at issue. Enough is enough. Defendants respectfully request that the Second Amended Complaint be dismissed with prejudice. As the Seventh Circuit noted in a similar circumstance, where plaintiff failed on his third attempt to plead valid claims, "in court, as in baseball, three strikes and you're out." *Bank of Am., N.A. v. Knight,* 723 F.3d 815, 818 (7th Cir. 2013).

Respectfully submitted this 9th day of October 2020.


By: *s/ Zachary Foster*
    **Zachary Foster, Esq.**
    Florida Bar No. 111980
    Email: Zachary.foster@quarles.com
    **Gregory T. Everts, Esq.**
    *Admitted Pro Hac Vice*
    Gregory.everts@quarles.com
    QUARLES & BRADY LLP
    101 E. KENNEDY BLVD, SUITE 3400
    TAMPA, FL 33602
    TELEPHONE: (813) 387-0300
    *Attorneys for Defendant, Teledoc Health, Inc.*

By: *s/ John McManus*
    **John L. McManus, Esq.**
    Florida Bar No. 0119423
    Email: mcmanusj@gtlaw.com
    **Stephanie Peral, Esq.**
    Florida Bar No. 119324
    Email: perals@gtlaw.com
    GREENBERG TRAURIG, P.A.
    333 S.E. 2nd Avenue
    Suite 4400
    Miami, Florida 33131
    Telephone: (305) 579-0500
    *Attorneys for Defendant, American Financial Security Life Insurance Company*

25

By: *s/ John Kelly*_____
**John P. Kelly, Esq.**
Florida Bar No. 284289
SOTO LAW GROUP, P.A.
2400 E. Commercial Blvd., Suite 400
Fort Lauderdale, Florida 33308
Telephone: (954) 567-1776
Email: john@sotolawgroup.com
*Attorneys for Defendant, Federal*
*Insurance Company*

By: *s/ John H. Pelzer*_____
**Garry W. O'Donnell, Esq.**
Florida Bar No. 0478148
**John H. Pelzer, Esq.**
Florida Bar No. 376647
GREENSPOON MARDER LLP
One Boca Place
2255 Glades Road, Suite 400-E
Boca Raton, Florida 33431
Telephone: (561) 994-2212
Email: garry.odonnell@gmlaw.com
Email: dariel.abrahamy@gmlaw.com
*Attorneys for Defendant,*
*Health Insurance Innovations, Inc. and RX*
*Helpline LLC*

By: *s/ Michael De Simone*_____
**Michael P. De Simone, Esq.**
Florida Bar No. 119739
Email: Michael.DeSimone@lockelord.com
LOCKE LORD LLP
777 South Flagler Tower
West Palm Beach, Florida 33401
Telephone: (561) 833-7700
*Attorneys for Defendant, Med-Sense*
*Guaranteed Association*

By: *s/ Josef Mysorewala*_____
**Josef M. Mysorewala, Esq.**
Florida Bar No. 105425
LAW OFFICE OF JOSEF M. MYSOREWALA,
PLLC
770 S Dixie Highway, Suite 113
Miami, Florida 33146
Telephone: (305) 356-1031
Email: josefm@lawjmm.com
*Attorneys for Defendant,*
*National Congress of Employers, Inc. and*
*National Benefit Builders, Inc.*

**Charles J. Messina, Esq.**
*Admitted Pro Hac Vice*
Email: cmessina@genovaburns.com
GENOVA BURNS LLC
494 Broad Street
Newark, New Jersey 07102
Telephone: (973) 533-0777

45492116V1

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of Court using the Court's CM/ECF system on this 9th day of October 2020, which will generate notification to all counsel of record or pro se parties identified below, thereby notifying all parties of record. By:_

**By:**  /s/ John H. Pelzer
    **Garry W. O'Donnell, Esq.**
    Florida Bar No. 0478148
    **John H. Pelzer, Esq.**
    Florida Bar No. 376647
    GREENSPOON MARDER LLP
    One Boca Place
    2255 Glades Road, Suite 400-E
    Boca Raton, Florida 33431
    Telephone: (561) 994-2212
    Email: garry.odonnell@gmlaw.com
    Email: dariel.abrahamy@gmlaw.com
    *Attorneys for Defendants,*
    *Health Insurance Innovations, Inc. and RX Helpline LLC*

45492116V1