UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ROBERT HOSSFELD, individually                    CASE NO. 0:19-cv-60597-DPG
and on behalf of others similarly situated,

       Plaintiff

v.

AMERICAN FINANCIAL SECURITY
LIFE INSURANCE COMPANY, ET AL,

       Defendants.

_____/

**DEFENDANTS' SUPPLEMENTAL JOINT MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT
FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendants American Financial Security Life Insurance Company ("American Financial"),

Federal Insurance Company ("Federal Insurance"), Health Insurance Innovations, Inc. ("HII"),

Med-Sense Guaranteed Association ("Med-Sense"), National Congress of Employers, Inc.

("NCE"), National Benefit Builders, Inc. ("NBBI"), Rx Helpline LLC ("Rx Helpline"), and

Teladoc Health, Inc. ("Teladoc") file their Supplemental Joint Motion To Dismiss Plaintiff's

Second Amended Class Action Complaint (Dkt. 140) pursuant to Federal Rules of Civil Procedure

12(b)(1), and state:

## I.    INTRODUCTION AND PROCEDURAL HISTORY

This is a case arising under alleged federal question subject matter jurisdiction predicated

upon claimed violations of the Telephone Consumer Protection Act of 1991 ("TCPA") as pled in

Plaintiff's pending Second Amended Class Action Complaint (Dkt.140). On June 8, 2020

Defendants filed a  Motion To Dismiss the Second Amended Class Action Complaint (Dkt.153)

that is fully briefed but undecided. The principal grounds raised in Defendants' June 8, 2020

Motion to Dismiss relate to the failure to state a claim pursuant to Rule 12(b)(6) and the absence

1

of personal jurisdiction pursuant to Rule 12(b)(2).

This Supplemental Motion To Dismiss raises a new issue not available to Defendants as of the date of filing of their prior motion based exclusively on the absence of this court's subject matter jurisdiction over this case in light of the United States Supreme Court's decision in *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (July 6, 2020) (hereinafter "*AAPC*"), wherein the Court upheld the constitutionality of the TCPA statute but only after severing an unconstitutional provision. Since *AAPC* was decided two federal district courts have ruled that the Supreme Court's preservation of the TCPA statute by severing its unconstitutional provisions can only operate prospectively, *i.e.,* that the statute cannot be enforced against a defendant alleged to have violated the TCPA between the date that the unconstitutional provision was enacted on November 2, 2015 and July 6, 2020, the date of the *AAPC* decision because a defendant's violation would have occurred when the statute was unconstitutional and thus void. *See Creasy v. Charter Communications, Inc*., 2020 WL 5761117 (E.D. La. Sept. 28, 2020), attached hereto as Exhibit "A", and *Lidenbaum v. Realgy*, LLC, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020), attached hereto as Exhibit "B."

In the case before this court all of the alleged calls made or attributed to the Defendants occurred in 2018 and 2019, within the time period that occurred prior to the Supreme Court's July 6, 2020 *AAPC* decision ("Plaintiff alleges that he received calls to his cellphone and his minor son's cell phone on August 8, 2018, November 26, 2018, February 13, 2019, March 5, 2019, May 22, 2019, August 14, 2019, and August 22, 2019") (Plaintiff's Second Amended Complaint, Dkt. 140, ¶¶ 38–120). An application of the persuasive constitutional analysis in the recent district court decisions to the case at bar would mean that this court lacks subject matter jurisdiction to adjudicate the alleged TCPA violations in Plaintiff's Second Amended Class Action Complaint.

2

Accordingly, this action must be dismissed.

## II.     THE *AAPC* DECISION

In 1991 Congress enacted the TCPA aimed at protecting Americans from unsolicited and intrusive phone calls. The TCPA prohibits phone calls generated by automated messages or automated dialing systems to cell phones. As originally enacted, this ban did not apply when the call was generated for emergency purposes or with the recipient's prior explicit permission. On November 2, 2015 Congress amended the TCPA by adding a third exemption to the cellphone-call ban: the ban would not apply to calls to cell phones that were generated for the purpose of collecting debt owed to or guaranteed by the United States government (the "government-debt exception").

In May 2016, the American Association of Political Consultants, Inc. and others filed a declaratory judgment suit against United States Attorney General Loretta Lynch and the Federal Communication Commission before the District Court for the Eastern District of North Carolina. The plaintiffs alleged that the government-debt exemption constituted a content-based restriction on speech, thus violating their right to free speech guaranteed by the First Amendment.

The district court granted summary judgment in favor of the defendants. On appeal the plaintiffs further argued that the unconstitutional government-debt exemption was not severable from the automated-call ban, and as such the automated-call ban as a whole was unconstitutional and should be struck down entirely.  On April 24, 2019 the Court of Appeals for the Fourth Circuit vacated the district court's summary judgment, held that the statute as amended with the government-debt exemption unconstitutionally violated the First Amendment under a strict scrutiny analysis, and ordered that the government-debt exemption be severed from the remainder of the TCPA. United States Attorney General William Barr and the FCC petitioned to the Supreme

Court, which granted certiorari on January 10, 2020.

In its July 6, 2020 decision the United States Supreme Court held that the exception for calls to collect government debt from a federal ban on robocalls to cellphones violated the First Amendment. The Court nonetheless ruled that it could sever the government-debt exception that violated the First Amendment of the Constitution from the remainder of the statute so as to preserve the constitutionality of the statute.

The Court's Opinion was a deeply fractured plurality, but a majority of Justices agreed that the automated-call ban was an unconstitutional content-based restriction when combined with the government-debt exception. ("The initial First Amendment question is whether the robocall restriction, with the government-debt exception, is content-based. The answer is yes."). *AAPC* at 2346 Specifically, the automated-call ban combined with the government-debt exception "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.* at 2343. Because the restriction was content based, it was subject to strict scrutiny, which it failed to pass. *Id* at 2347. Six justices agreed with this conclusion. *Id*. Rather than scrapping the entire statute, however, the Supreme Court opted to save the TCPA by severing the government-debt exception, though only three Justices (Kavanaugh, Roberts, and Alito) joined in the plurality's rationale for doing so. *Id*. at 2352–54.

The lingering and unresolved issue is whether the Supreme Court's "fixing" on July 6, 2020 of a heretofore unconstitutional statute by severing its unconstitutional content-based restriction on speech can be applied retroactively. The *AAPC* decision did not resolve this issue because the effect of severance on alleged liability of defendants in pending TCPA cases was not before the Court. As the district court analyzed this issue in *Creasy v. Charter Communications, Inc.*, *supra* at *2 (E.D. La. September 28, 2020),

. . . In the years preceding Congress's addition of the exception, §227(b)(1)(A)(iii) did not discriminate on the content of robocalls, and was, as the Supreme Court has observed, a constitutional time-place-manner restriction on speech. Likewise, now that *AAPC* has done away with the offending exception, § 227(b)(1)(A)(iii) figures to remain good law to come. However, in the years in which §227(b)(1)(A)(iii) permitted robocalls of one category of content (government-debt collection) while prohibiting robocalls of all other categories of content, the entirety of the provision was, indeed, unconstitutional.

The district court in *Creasy* went on to reason:

Of particular significance here is the timeless principle that "[a]n unconstitutional law is void, and is as no law." *Ex Parte Siebold*, 100 U.S. 371, 376 (1879); *id.* ("An offence created by [an unconstitutional law] is not a crime."); *see also Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 760 (1995) (Scalia, J., concurring) ("[W]hat a court does with regard to an unconstitutional law is simply to ignore it. It decides the case' disregarding the [unconstitutional] law,' because a law repugnant to the Constitution 'is void, and is as no law.'" (second alteration in original) (citation omitted) (*first quoting Marbury. Madison*, 5 U.S. (1 Cranch) 137, 178 (1803); then *quoting Siebold*, 100 U.S. at 376)). That principle colors many doctrines, but as relevant here, it suggests that – in the vast run of scenarios – a speaker should not be punished for engaging in speech that was restricted in an unconstitutional fashion. *Cf. Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (holding, also with regard to an invalid time-place-manner restriction, that determining the speaker's fate required assessing "the facial constitutionality of the [restriction] in effect" at the time of the speech at issue). It also supports the general rule that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)." *United States v. Baucum*, 80 F.3d 539, 541–42 (D.C. Cir. 1996) (*per curiam*).

*Id.* at *3.

The *Creasy* court's analysis makes evident sense. In the absence of a contrary express ruling in *AAPC*, the only logical conclusion to be reached is that the Supreme Court found the TCPA statute as amended in 2015 to be unconstitutional as a whole until the Court determined that it could render the statute constitutional by severing the unconstitutional First Amendment content-based restriction. Hence the TCPA statute remained unconstitutional as to any defendant alleged to have violated the statute from November 2, 2015 through July 6, 2020 because a TCPA defendant was subject to an unconstitutional content-based restriction on free speech that voided

5

the entire statute. Chief Judge Gaughan of the Northern District of Ohio recently reached the same

conclusion in another TCPA case, *Lidenbaum v. Realgy, LLC*, *supra* at*7:

> . . . the Court agrees with defendant that the provision at issue is unlike provisions severed in other cases. Here, the original statute contained a valid time, place, and manner restriction, i.e., it limited all robocall speech. *Creasy v. Charter Communications, Inc*., 2020 WL 5761117 at *2 (noting that the Supreme Court observed that pre-2015, the TCPA provision constituted a valid, time-place-manner restriction on speech). The insertion of the government-debt exception restriction transformed this valid time, place, and manner restriction into an unconstitutional content-based restriction. This is unlike cases in which Congress adds an exception, the entirety of which results solely in unequal treatment, to an otherwise valid statute. Although the plurality opinion characterizes the case as involving "equal treatment," the fact remains that at the time defendants engaged in the speech at issue, defendant was subject to an unconstitutional content-based restriction. The Court cannot wave a magic wand and make that constitutional violation disappear. Because the statute at issue was unconstitutional at the time of the alleged violations, this Court lacks jurisdiction over this matter.

Judge Gaughan concisely explained why the Supreme Court severing the unconstitutional

provision of the TCPA in *AAPC* did not provide a remedy during the period of time that the law

was unconstitutional:

> The plaintiffs in *AAPC* sought the right to speak going forward on the grounds that the statute, as written, is an unconstitutional content-based restriction. The Supreme Court denied that relief, but offered a remedy in the form of eliminating the content-based restriction. But, in our case, severance of the content-based restriction does not offer a "remedy" to correct *past* harm. Here, defendants do not seek the right to speak, having already done so. They seek the right to be free from punishment for speaking during a time when an unconstitutional content-based restriction existed. A forward-looking fix offers no remedy for this past wrong.

*Id*. at*5-6 (emphasis in original). Judge Gaughan further reasoned:

> But, if the statute is not considered void *ab initio,* it contains an unconstitutional content-based restriction that improperly favors speech over other speech. And, to treat it as void *ab initio* only as to certain parties would likely raise its own set of equal treatment concerns-the very concerns raised by the AAPC dissent. The fact remains that at the time the robocalls at issue in this lawsuit were made, the statute could not be enforced as written. And a later amendment to a statute cannot be retroactively applied [Citation omitted]. It would be an odd result to say the least if the judiciary could accomplish by severance that which Congress could not accomplish by way of amendment.

*Id.* at *12-13. Succinctly stated, from November 2, 2015, when the government-debt exception was added as an amendment to the TCPA statute, through the Supreme Court's severance of the amendment, the defendants before this court were subject to an unconstitutional content-based restriction that voided the statute. No "magic wand" can make that unconstitutional infirmity retroactively disappear.

Defendants acknowledge that in *AACP* Justice Kavanaugh wrote in his opinion joined by only two other justices in a footnote a suggestion that there could be retrospective liability for those not covered by the government-debt exception. *AAPC,* 140 S. Ct. at 2355, n.12. However, the footnote is clearly *obiter dictum* and was correctly characterized by Justices Gorsuch and Thomas in their concurring and dissenting as only a non-binding "suggestion." *See id.* at 2363 (" . . . And a holding that shields only government-debt collection callers from past liability under an admittedly unconstitutional law would wind up endorsing the very same kind of content discrimination we say we are seeking to eliminate").

The district court judges in *Creasy* and *Lidenbaum* also found the *Kavanaugh* footnote to be non-binding and non-persuasive on the ultimate issue of subject matter jurisdiction in their TCPA cases. Further, given that the Kavanaugh footnote is ambiguous, based on prior Supreme Court precedent, a reasonable interpretation is that it applies to past judgments of liability i.e., the plurality did not intend to undo liability against defendants that had already been adjudicated. This interpretation is consistent with prior Supreme Court precedent that recognizes "a distinction between the application of a change in the law that takes place while a case is on direct review on the one hand, and its effect on a final judgment under collateral attack, on the other hand." *See Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 710-711 (1974). Further, this reading of the Kavanaugh footnote is consistent with *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2208-09

(2020), in which the same three Justices who joined the plurality in *AAPC*—and just one week before the *AAPC* decision—cast doubt on the viability of actions taken by the Consumer Financial Protection Bureau (the "CFPB") during the time its leadership structure was unconstitutional. *See Seila Law LLC v. CFPB*, *supra* at 2208-09. In *Seila Law*, a three-justice plurality comprised of Justices Roberts, Alito, and Kavanaugh (the same plurality as the severance portion of the AAPC decision) recognized the long-standing principle that unconstitutional laws are unenforceable during the time they are unconstitutional, even if later cured prospectively through severance. *See id.* A majority of the Justices further concluded that the CFPB's leadership structure, consisting of a single director removable only for cause, was unconstitutional because it violates the separation of powers. *Id.* at 2204. To cure this constitutional infirmity, the three-justice plurality (Roberts, Alito, and Kavanaugh), in Part IV of the opinion, opted to sever the director's removal protection from the President. *Id.* at 2207-08. The logic underlying the Supreme Court's application of the severance doctrine in *Seila Law* applies with equal force to the automated-call ban. In other words, the Supreme Court's severance of the government debt exception cured the ban's infirmity on a prospective basis, but it did not (and could not) cure the infirmity with respect to calls made during the time the law was unconstitutional.

### III.   THIS COURT LACKS SUBJECT MATTER JURISDICTION

"Jurisdiction of the subject-matter of an action is a power to adjudge concerning the general question involved therein, and is not dependent upon the state of facts which may appear in a particular case, or the ultimate existence of a good cause of action in the plaintiff therein." *Parker Bros. v. Fagan,* 68 F.2d 616, 618 (5th Cir.1934).[1] Pursuant to Fed. R. Civ. P. 12

---

[1] Any decision by the former Fifth Circuit issued before October 1, 1981 is binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (*en banc*).

(h) (3), "[if] the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Federal courts have an obligation to examine *sua sponte* their own jurisdiction over a case, notwithstanding the contentions of the parties. *Univ. of S. Ala. v. Am. Tobacco Co*., 168 F.3d 405, 410 (11th Cir. 1999). That is so because subject-matter jurisdiction underlies a court's power to hear a case. *United States v. Cotton,* 535 U.S. 625, 630 (2002). For that same reason, subject-matter jurisdiction can never be forfeited or waived. *Id*.

The Second Amended Class Action Complaint asserts that this court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C §1331 based on the TCPA, a federal statute. A claim based on an invalid or inapplicable federal statute does not confer subject matter jurisdiction because a federal court only has federal-question jurisdiction when an action arises under the Constitution, laws or treaties of the United States. U.S. Const. art. 3, §2; 28 U.S.C. §1331. "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673 (1994). *Gunn v. Minton*, 568 U.S. 251, 257 (2013).

A federal court has no jurisdiction to enforce an unconstitutional statutory provision. The Supreme Court has long held that "if the laws are unconstitutional and void, the [federal court has] no jurisdiction of the causes." *Ex parte Siebold*, 100 U.S. 371, 377 (1880) ("An unconstitutional law is void, and is as no law."); *see also Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (sentence under unconstitutional law is void because state was deprived of authority to impose it); *United States. v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) ("It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)[.]").; *accord*, *Doe v. Smith*, 2001 U.S. Dist. LEXIS 24974 ( E.D.N.Y. 2001) (" . . .this conclusion flows from the historical view

9

that unconstitutional laws are void *ab initio*, 'not a law,' and unenforceable"; *see, e.g.*, *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 759, 131 L. Ed. 2d 820, 115 S. Ct. 1745 (1995) (*citing Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L. Ed. 60 (1803)) (Scalia and Thomas, JJ., *concurring*); *Chicago, Indianapolis & Louisville Ry. Co. v. Hackett*, 228 U.S. 559, 566, 57 L. Ed. 966, 33 S. Ct. 581 (1913); *Ex Parte Siebold*, *supra*; *Norton v. Shelby County, State of Tenn.*, 118 U.S. 425, 442, 6 S. Ct. 1121 (1886); *United States v. Morgan*, 230 F.3d 1067, 1073-74 (8th Cir.) (Bye, J., concurring); *Mester Mf'g Co. v. INS*, 879 F.2d 561, 570 (9th Cir. 1989); *Journigan v. Duff*y, 552 F.2d 283, 289 (9th Cir. 1977); *U.S. Shoe Corp. v. United States*, 19 C.I.T. 1284, 907 F. Supp. 408, 412 (Ct. Int'l Trade 1995), *aff'd*, 114 F.3d 1564 (Fed. Cir. 1997), *aff'd,* 523 U.S. 360, , 118 S. Ct. 1290 (1998)); *see also Grayned v. City of Rockford*, 408 U.S. 104, 107 n.2 (1972) (noting in a constitutional challenge to a content-based speech restriction that courts "must consider the facial constitutionality of the ordinance *in effect* when [the defendant] was arrested and convicted") (emphasis supplied).

## IV.    <u>CONCLUSION</u>

Plaintiff has invoked this court's federal question jurisdiction based solely on a statute that was unconstitutional as re-drafted in November 2015 until the United States Supreme Court rendered the statute constitutional on July 6, 2020. Accordingly, this court has no subject matter jurisdiction over this action based on TCPA violations that allegedly occurred in 2018 and 2019 during the period that the statute was unconstitutional.

WHEREFORE, Defendants, Health Insurance Innovations, Inc., American Financial Security Life Insurance Company, Federal National Insurance, National Congress of Employers, Inc., National Benefit Builders, Inc., Med-Sense Guaranteed Association, Rx Helpline LLC, and Teladoc Health, Inc., respectfully request that this Court enter an order dismissing the Second

Amended Complaint and this action for lack of subject matter jurisdiction.

Dated: November 13, 2020.

By: */s/ Zachary Foster*
    **Zachary Foster, Esq.**
    Florida Bar No. 111980
    Email: Zachary.foster@quarles.com
    **Gregory T. Everts, Esq.**
    *Admitted Pro Hac Vice*
    Gregory.everts@quarles.com
    QUARLES & BRADY LLP
    101 E. KENNEDY BLVD, SUITE 3400
    TAMPA, FL 33602
    TELEPHONE: (813) 387-0300
    *Attorneys for Defendant, Teladoc Health, Inc.*

By: */s/ John P. Kelly*
    **John P. Kelly, Esq.**
    Florida Bar No. 284289
    SOTO LAW GROUP, P.A.
    2400 E. Commercial Blvd., Suite 400
    Fort Lauderdale, Florida 33308
    Telephone: (954) 567-1776
    Email: john@sotolawgroup.com
    *Attorneys for Defendant, Federal Insurance Company*

By: */s/ John L. McManus*
    **John L. McManus, Esq.**
    Florida Bar No. 0119423
    Email: mcmanusj@gtlaw.com
    **Stephanie Peral, Esq.**
    Florida Bar No. 119324
    Email: perals@gtlaw.com
    GREENBERG TRAURIG, P.A.
    333 S.E. 2nd Avenue
    Suite 4400
    Miami, Florida 33131
    Telephone: (305) 579-0500
    *Attorneys for Defendant, American Financial Security Life Insurance Company*

By: */s/ Garry W. O'Donnell*
    **Garry W. O'Donnell, Esq.**
    Florida Bar No. 0478148
    **John H. Pelzer, Esq.**
    Florida Bar No. 376647
    GREENSPOON MARDER LLP
    One Boca Place
    2255 Glades Road, Suite 400-E
    Boca Raton, Florida 33431
    Telephone: (561) 994-2212
    Email: garry.odonnell@gmlaw.com
    Email: john.pelzer@gmlaw.com
    *Attorneys for Defendant,*
    *Health Insurance Innovations, Inc. and RX Helpline LLC*

By: */s/ Thomas J. Cunningham*
    **Thomas J. Cunningham, Esq.**
    Florida Bar No. 121997
    Email: TCunningham@lockelord.com
    **Michael P. De Simone, Esq.**
    Florida Bar No. 119739
    Email: Michael.DeSimone@lockelord.com
    **Rebecca K. Marine, Esq.**
    Florida Bar No. 1002503
    Email: Rebecca.Marine@lockelord.com
    LOCKE LORD LLP
    777 South Flagler Tower
    West Palm Beach, Florida 33401
    Telephone: (561) 833-7700
    *Attorneys for Defendant, Med-Sense*
    *Guaranteed Association*

By: */s/ Josef M. Mysorewala*
    **Josef M. Mysorewala, Esq.**
    Florida Bar No. 105425
    LAW OFFICE OF JOSEF M. MYSOREWALA,
    PLLC
    770 S Dixie Highway, Suite 113
    Miami, Florida 33146
    Telephone: (305) 356-1031
    Email: josefm@lawjmm.com
    *Attorneys for Defendant,*
    *National Congress of Employers, Inc. and*
    *National Benefit Builders, Inc.*

    **Charles J. Messina, Esq.**
    *Admitted Pro Hac Vice*
    Email: cmessina@genovaburns.com
    GENOVA BURNS LLC
    494 Broad Street
    Newark, New Jersey 07102
    Telephone: (973) 533-0777

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of Court using the Court's CM/ECF system on this 13th day of November, 2020, which will generate notification to all counsel of record or pro se parties identified below, thereby notifying all parties of record.

By: *John P. Kelly*
    **John P. Kelly, Esq.**
    Florida Bar No. 284289
    SOTO LAW GROUP, P.A.
    2400 E. Commercial Blvd., Suite 400
    Fort Lauderdale, Florida 33308
    Telephone: (954) 567-1776
    Email: john@sotolawgroup.com
    *Attorneys for Defendant, Federal Insurance*
    *Company*