**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 0:19-cv-60597-DPG**

ROBERT HOSSFELD, individually
and on behalf of others similarly situated,

        *Plaintiff*,

    v.

AMERICAN FINANCIAL
SECURITY LIFE INSURANCE
COMPANY, FEDERAL INSURANCE
COMPANY, HEALTH INSURANCE
INNOVATIONS, INC., n/k/a BENEFYTT
TECHNOLOGIES, INC., MED-SENSE
GUARANTEED ASSOCIATION,
NATIONAL CONGRESS OF
EMPLOYERS, INC., NATIONAL
BENEFIT BUILDERS, INC.,
RX HELPLINE LLC, and
TELADOC HEALTH, INC.,

        *Defendants.*

_____/

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**SUPPLEMENTAL JOINT MOTION TO DISMISS [Dkt. 178]**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

## TABLE OF CONTENTS

Page

I.     FACTUAL BACKGROUND ........................................................................2

    A.     Plaintiff's claims. ...................................................................2

    B.     *Barr v. AAPC*...........................................................................2

II.    LEGAL STANDARD ...............................................................................4

III.   AUTHORITY AND ARGUMENT ..............................................................4

    A.     The Supreme Court invalidated only the government-debt exception, not the robocall prohibition in its entirety. ......................................................5

    B.     The TCPA's ban on pre-severance robocalls remains intact................................6

    C.     The majority of courts reject Defendants' arguments and hold that severance of the government-debt exception preserves liability for TCPA robocalls placed between 2015 and 2020....................................................................10

    D.     Defendants urge the Court to adopt the reasoning of two district courts that misconstrued *AAPC*. .................................................................12

    E.     *AAPC* did not address the constitutionality of the Internal Do Not Call provisions at issue in this case but applying the reasoning of *AAPC* would not absolve them of liability. ................................................................19

    F.     The Government Debt Exception was never implemented through regulations, which remain wholly constitutional.................................................19

    G.     Defendants' motion should be denied because it is procedurally defective. ........20

IV.    CONCLUSION .....................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ACLU v. McCreary Cnty.*,
    607 F.3d 439 (6th Cir. 2010) ...................................................................................17

*Allan v. PHEAA*,
    968 F.3d 567 (6th Cir. 2020) ...................................................................................18

*Ass'n of Am. Railroads v. Dep't of Transp.*,
    896 F.3d 539 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 2665 (2019)....................16

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
    140 S. Ct. 2335 (2020) ....................................................................................passim

*Bradley v. Sch. Bd. of City of Richmond*,
    416 U.S. 696 (1974)................................................................................................18

*Buchanan v. Sullivan*,
    2020 WL 6381563 (D. Neb. Oct. 30, 2020) ...........................................................12

*Burton v. Fundmerica, Inc.*,
    2020 WL 4504303 (D. Neb. Aug. 5, 2020) .............................................................12

*Creasy v. Charter Commc'ns, Inc.*,
    2020 WL 5761117 (E.D. La. Sept. 28, 2020).......................................... 13, 14, 16

*Doohan v. CTB Inv'rs, LLC*,
    427 F. Supp. 3d 1034 (W.D. Mo. 2019)..................................................................11

*Dorchy v. Kansas*,
    264 U.S. 286 (1924)..................................................................................................6

*Duguid v. Facebook, Inc.*,
    926 F.3d 1146 (9th Cir. 2019), *cert. granted in part,* 2020 WL 3865252 (July 9, 2020).........10

*Eberle v. Michigan*,
    232 U.S. 700 (1914)...............................................................................................8, 9

*EMW Women's Surgical Center, P.S.C. v. Friedlander*,
    978 F.3d 418 (6th Cir. 2020) .....................................................................................6

*Facebook, Inc. v. Duguid*,
    2019 WL 5390116 (Oct. 17, 2019) .........................................................................17

*Facebook, Inc. v. Duguid,*
  2020 WL 3865252 (U.S. July 9, 2020) ................................................................. 17

*Fla. Dep't of Labor & Emp't Sec. v. Dep't of Labor,*
  893 F.2d 1319 (11th Cir. 1990) .......................................................................... 17

*Free Ent. Fund v. Public Co. Accounting Oversight Bd.,*
  561 U.S. 477 (2010) ............................................................................................ 6

*Frost v. Corp. Comm'n of Oklahoma,*
  278 U.S. 515 (1929) ............................................................................... 6, 7, 9, 10

*Geraci v. Red Robin Int'l, Inc.,*
  2020 WL 2309559 (D. Colo. Feb. 28, 2020) ....................................................... 11

*Grayned v. City of Rockford,*
  408 U.S. 104 (1972) ............................................................................................ 18

*Hand v. Beach Entm't KC, LCC,*
  425 F. Supp. 3d 1096 (W.D. Mo. 2019) .............................................................. 11

*Harper v. Va. Dep't of Taxation,*
  509 U.S. 86 (1993) ........................................................................................ 8, 18

*In re of John C. Spiller,*
  2020 WL 3091143 (FCC June 10, 2020) ............................................................. 19

*Jones v. U-Haul Co. of Mass. & Ohio Inc.,*
  16 F. Supp. 3d 922 (S.D. Ohio 2014) .................................................................. 21

*Katz v. Liberty Power Corp.,*
  2019 WL 4645524 (D. Mass. Sept. 24, 2019) ..................................................... 11

*Komaiko v. Baker Techs., Inc.,*
  2020 WL 5104041 (N.D. Cal. Aug. 11, 2020) ..................................................... 12

*Lacy v. Comcast Cable Commc'ns, LLC,*
  2020 WL 4698646 (W.D. Wash. Aug. 13, 2020) ................................................. 12

*Lindenbaum v. Realgy, LLC,*
  2020 WL 6361915 (N.D. Ohio Oct. 29, 2020) ......................................... 9, 13, 16

*Marks v. United States,*
  430 U.S. 188 (1977) ............................................................................................. 5

*McElmurray v. Consol. Gov't,*
  501 F.3d 1244 (11th Cir.2007) ............................................................................. 4

*Montgomery v. Louisiana,*
    136 S. Ct. 718 (2016) ..................................................................................18

*Nat'l Fed. of Indep. Bus. v. Sebelius,*
    567 U.S. 519 (2012) ...................................................................................15

*Parker v. Portfolio Recovery Assocs., LLC,*
    2019 WL 4149436 (C.D. Cal. July 11, 2019) ..........................................11

*Perrong v. Liberty Power Corp.,*
    411 F. Supp. 3d 258 (D. Del. 2019) .........................................................11

*Reagan v. Time Inc.,*
    468 U.S. 641 (1984) ...................................................................................14

*Reynoldsville Casket Co. v. Hyde,*
    514 U.S. 749 (1995) ...............................................................................9, 18

*Rosenberg v. LoanDepot.com, LLC,*
    435 F. Supp. 3d 308 (D. Mass. 2020) ......................................................11

*Schmidt v. AmerAssist A/R Sols. Inc.,*
    2020 WL 6135181 (D. Ariz. Oct. 19, 2020) ...........................................12

*Schwab v. Crosby,*
    451 F.3d 1308 (11th Cir. 2006) ................................................................17

*Seila Law LLC v. Consumer Fin. Prot. Bureau,*
    140 S. Ct. 2183 (2020) ..............................................................................15

*Sessions v. Morales-Santana,*
    137 S. Ct. 1678 (2017) ..............................................................................19

*Silwa v. Bright House Networks, LLC,*
    2018 WL 1531913 (M.D. Fla. Mar. 29, 2018) ........................................11

*Smith v. Truman Rd. Dev., LLC,*
    414 F. Supp. 3d 1205 (W.D. Mo. 2019).................................................11

*Stalley v. Orlando Reg'l Healthcare Sys., Inc.,*
    524 F.3d 1229 (11th Cir. 2008) ..................................................................4

*Taylor v. KC VIN, LLC,*
    2019 WL 6499140 (W.D. Mo. Dec. 3, 2019) .........................................11

*Truax v. Corrigan,*
    257 U.S. 312 (1921) .....................................................................................6

*U.S. v. Baucum,*
   80 F.3d 539 (D.C. Cir. 1996)........................................................................18

*United States v. Melis,*
   972 F.3d 518 (4th Cir. 2020) ......................................................................14

*Wijesinha v. Bluegreen Vacations Unlimited, Inc.,*
   2019 WL 3409487 (S.D. Fla. Apr. 3, 2019) ................................................11

## **Statutes**

47 U.S.C. § 227(b)(1)(A)(iii).............................................................................passim

47 U.S.C. § 227(b)(2).........................................................................................20

47 U.S.C. § 227(c)(5)......................................................................................5, 20

47 U.S.C. § 608....................................................................................................6

## **Rules**

Fed. R. Civ. P. 5.1(a)..........................................................................................21

Fed. R. Civ. P. 5.1(b) .........................................................................................21

## **Regulations**

47 C.F.R. § 64.1200 ...........................................................................................20

47 C.F.R. § 64.1200(a)(1)(iii)........................................................................20, 21

47 C.F.R. § 64.1200(d)(1) ...................................................................................21

47 C.F.R. § 64.1200(d)(4) ............................................................................20, 21

The Telephone Consumer Protection Act of 1991 ("TCPA") has been an effective deterrent to telemarketing abuses since being signed into law by President George H.W. Bush nearly thirty years ago. The Bipartisan Budget Act of 2015 ("Budget Act") added a narrow exception to the TCPA's robocall prohibitions relating to government debt collection, which is not at issue in this case.

In 2020, the Supreme Court held the government debt collection exception unconstitutional, because it favored government speech over others. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335 (2020). According to the opinion, "seven Members of the Court conclude[d] that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government debt-exception must be invalidated and severed from the remainder of the statute." *Id.* at 2343.

Defendants have moved to dismiss this case, arguing that the severed amendment renders the entire statute unconstitutional, including the portions of the statute that the Supreme Court left untouched.

However, that argument asks this Court to direct a result that is at-odds with the judgment of the Supreme Court, which was signed onto by seven justices:

> **… our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**

*Id*. at 2355 n.12 (emphasis added). "Constitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *AAPC*, 140 S. Ct. at 2351.

The Court should honor what seven justices of the Supreme Court said should happen, and deny this motion to dismiss.

## I.   FACTUAL BACKGROUND

### A.   Plaintiff's claims.

Defendants engage in a multi-tiered strategy to generate business through illegal telemarketing. Dkt. 140, SAC ¶¶ 23-37. Plaintiff received multiple telemarketing calls for Defendants, including after directly asking not to be called, and he brings this action to secure redress on behalf of himself and others for Defendants' illegal calling practices. *Id.* ¶¶ 38-122, 129. Plaintiff asserts robocall claims against all Defendants, and internal do-not-call violation claims against HII. *Id.* ¶¶ 168, 177-196. None of the calls at issue in this case had anything to do with the collection of government debt; this case involves telemarketing, only.

### B.   *Barr v. AAPC.*

In *Barr v. AAPC*, political consultants who wanted to make political outreach robocalls brought a declaratory judgment action against the U.S. Attorney General and FCC, claiming that the TCPA's prohibition on robocalls violated the First Amendment. In 1991, the TCPA amended the Communications Act by adding a robocall restriction, codified at § 227(b)(1)(A)(iii), banning calls made using an autodialer or an artificial or prerecorded voice to cell phones. *AAPC*, 140 S. Ct. at 2352. Between 1991 and 2015, the TCPA's prohibition on the use of autodialers and prerecorded messages in calls to cell phones operated without any constitutional issue.[1] In 2015, "Congress carved out a new government-debt exception to the general robocall restriction." *Id.* at 2345. The plaintiffs in *AAPC* argued that the 2015 government-debt exception transformed the robocall prohibition into a content-based speech regulation in violation of the First Amendment, and urged the Court to "invalidate the entire 1991 robocall restriction." *Id.*

The district court held that the government-debt exception survived strict scrutiny. *Id.*

---

[1]   *Id.* at 2353 ("[T]he robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015.").

The Fourth Circuit reversed but, rather than invalidate the entire statute, "invalidated the government-debt exception and severed it from the robocall restriction." *Id.* The plaintiffs and the government petitioned for a writ of certiorari. The plaintiffs argued that the Fourth Circuit "did not go far enough in providing relief and should have invalidated the entire 1991 robocall restriction rather than simply invalidating the 2015 government-debt exception." *Id.* at 2346.

The Supreme Court granted certiorari and issued its decision on July 6, 2020. While there is no majority opinion of the Court, six Justices concluded that Congress, in passing the government-debt exception, "impermissibly favored debt-collection speech over political and other speech, in violation of the First Amendment." *Id.* at 2343. And, more importantly, seven Justices, applying severability principles, joined in the judgment – Part III of the opinion – which concluded that "the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government debt-exception must be invalidated and severed from the remainder of the statute." *Id.*[2] "As a result, plaintiffs still may not make political robocalls to cell phones, but their speech is now treated equally with debt-collection speech." *Id.* at 2344.

"Seven Members of the Court" joined in Part III of the opinion, which was penned by Justice Kavanaugh. *Id.* at 2344-45. This section, which is the so-called "judgment" of the Court, provides the only significant analysis on the issue of severability. *Id.* at 2352-55. In deciding that the government-debt exception was severable from the remainder of the statute, these seven Justices relied on the Communication Act's severability clause, codified at 47 U.S.C. § 608, as

---

[2]     Justice Kavanaugh announced the judgment of the Court in a plurality opinion which Chief Justice Roberts and Justice Alito joined in whole, and which Justice Thomas joined in part. *AAPC*, 140 S. Ct. at 2343-56. Justice Sotomayor concurred in the judgment but would have applied intermediate scrutiny. *Id.* at 2356-57. Justice Breyer, joined by Justices Ginsburg and Kagan, concurred in the judgment with respect to severability, but dissented as to the plurality's holding that the government-debt exception violates the First Amendment. *Id.* at 2357-63. And Justice Gorsuch issued a final opinion, in which he concurred in the judgment in part and dissented on other grounds, and in which Justice Thomas joined in part. *Id.* at 2363-67.

well as traditional severability principles . *Id.* at 2352. The opinion then notes that "the remainder of the robocall restriction did function independently and fully operate as a law for 20-plus years before the government-debt exception was added in 2015," and that, in the past, when Congress has added an unconstitutional amendment to a prior law, the Court "has treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *Id.* at 2353.

Most importantly, in a footnote that is part of the seven-Justice "Part III," the opinion makes it clear that "no one should be penalized or held liable for making robocalls to collect government debt" between 2015 and 2020, but "[o]n the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction." *Id.* at 2355 n.12.

## II.    LEGAL STANDARD

A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. *McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir.2007). When defending against a facial jurisdictional attack (as here), "the court must consider the allegations in the plaintiff's complaint as true." *Id*. "A dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice." *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).

## III.    AUTHORITY AND ARGUMENT

As discussed below, Defendants have not established any basis for dismissal for lack of subject matter jurisdiction. Their contention that Sections 227(b)(1)(B)(iii) and 227(c)(5), as well as 47 C.F.R. §§ 64.1200(c) and (d) were invalid in 2018-19 when the robocalls at issue, rests on an incorrect reading of *AAPC* and should be rejected.

4

### A. The Supreme Court invalidated only the government-debt exception, not the robocall prohibition in its entirety.

The subject of the Supreme Court's First Amendment analysis in *AAPC* was the government-debt exception—*not* Section 227(b)(1)(A)(iii)'s entire prohibition on robocalls to cell phones, and *not* Section 227(c)(5)'s prohibition on calling consumers who had requested not to receive calls (at issue in this case). The Court reasoned that the "justification for the *government-debt exception* is collecting government debt" and that, while the content-based exception represents a "worthy goal," it does not pass strict scrutiny. *AAPC*, 140 S. Ct. at 2347 (emphasis added). The Court rejected the argument that Section 227(b)(1)(A)(iii) was unconstitutional and invalid in its entirety. Indeed, the Court explicitly "disagreed with plaintiffs' … argument for holding the entire 1991 robocall restriction unconstitutional" and held only "that *the 2015 government-debt exception* created an unconstitutional *exception* to the 1991 robocall restriction." *Id.* at 2349 (emphasis added).

The Justices were a bit scattershot as to the constitutionality issue. Justices Gorsuch and Thomas, concurring in the judgment in part and dissenting in part, took aim at the entire robocall ban. They reasoned that the justification for the robocall ban (not the government-debt exception) failed strict scrutiny, and concluded that "the challenged robocall ban unconstitutionally infringed on [plaintiffs'] speech." *Id.* at 2364-65. However, under *Marks v. United States*, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]'" 430 U.S. 188, 193 (1977). "[A]n opinion will be the narrowest under *Marks* if the instances in which it would reach the same result in future cases form 'a logical subset' of the instances in which the other opinion would reach the same result." *EMW Women's Surgical Center, P.S.C. v.*

5

*Friedlander*, 978 F.3d 418, 431 (6th Cir. 2020). Thus, Justice Kavanaugh's plurality opinion holding only the government-debt exception to the provision prohibiting robocalls to cell phones unconstitutional is the holding of the Court on the threshold constitutionality issue. But more importantly here, the severability portion of the opinion was joined by a seven-Justice majority.

      **B.**      **The TCPA's ban on pre-severance robocalls remains intact.**

      A seven-Justice majority of the Court concluded that it could sever the unconstitutional government-debt exception from the robocall prohibition and "that the entire 1991 robocall restriction should not be invalidated." *AAPC*, 140 S. Ct. at 2343. The Court noted the "strong presumption of severability" as the "normal rule." *Id.* at 2350 (quoting *Free Ent. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010)). In addition, the Communications Act has "an express severability clause," *id.* at 2352 (citing 47 U.S.C. § 608), and "absent extraordinary circumstances, the Court should adhere to the text of the severability or nonseverability clause." *Id.* at 2349. The Court also cited longstanding precedent on severability in which "[t]he Court has severed the 'exception introduced by amendment,' so that 'the original law stands without the amendatory exception.'" *Id.* at 2353 (quoting *Truax v. Corrigan*, 257 U.S. 312, 342 (1921)). In other words, "the Court has treated the original, pre-amendment statute as the 'valid expression of the legislative intent.'" *Id.* (quoting *Frost v. Corp. Comm'n of Oklahoma*, 278 U.S. 515, 526-27 (1929)).

      The purpose of severing a clause, provision, or section of a statute is to draw a line between what is unconstitutional and what is not, so that courts "salvage rather than destroy the rest of the law passed by Congress and signed by the President." *Id.* at 2350; *see also Dorchy v. Kansas*, 264 U.S. 286, 289-90 (1924) ("A statute bad in part is not necessarily void in its entirety."). As Justice Kavanaugh explained,

      If courts had broad license to invalidate more than just the offending provision, a

> reviewing court would have to consider what other provisions to invalidate: the whole section, the chapter, the statute, the public law, or something else altogether. Courts would be largely at sea in making that determination, and usually could not do it in a principled way. Here, for example, would a court invalidate all or part of the Bipartisan Budget Act of 2015 rather than all or part of the 1991 TCPA? After all, that 2015 Bipartisan Budget Act, not the 1991 TCPA, added the constitutionally problematic government-debt exception. That is the kind of free-wheeling policy question that the Court's presumption of severability avoids.

*AAPC*, 140 S. Ct. at 2351 n.7. Thus, if severed and invalidated, "an unconstitutional statutory amendment 'is a nullity' and 'void' ***when enacted***, and for that reason has *no effect on the original statute.*" *Id*. at 2353 (quoting *Frost*, 278 U.S. at 526 (emphasis added)). Thus, once severed, it is as if the amendment was never passed by Congress; the legal effect of a severed amendment is necessarily retroactive.

The seven-Justice majority held that the legal effect of severing the government-debt exception is retroactive. The severability discussion concludes, "In short, the correct result in this case is to sever the 2015 government-debt exception and leave in place the longstanding robocall restriction." *AAPC*, 140 S. Ct. at 2355. Then, in a footnote, the Court explained that its decision impacted only robocalls that were made to collect government debt after the exception was added in 2015 and that parties remained liable for robocalls made for other purposes:

> [A]lthough our decision means the end of the government-debt exception, no one should be penalized or held liable for making robocalls to collect government debt after the effective date of the 2015 government-debt exception and before the entry of final judgment by the District Court on remand in this case, or such date that the lower courts determine is appropriate. … **On the other side of the ledger, our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction.**

*Id*. at 2355 n.12 (emphasis added). Justice Gorsuch's dissent is consistent in characterizing the holding of *AAPC* as "a holding" that "shields *only* government-debt collection callers from past liability under an admittedly unconstitutional law." *Id*. at 2366 (emphasis in original).

The Supreme Court's explanation of the consequences of its severance of the

7

government-debt exception is in line with the well-established principle that severability determinations are interpretations of federal law that must apply retroactively to all pending cases: "When [the Supreme Court] applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Court's] announcement of the rule." *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993). The Supreme Court has "prohibit[ed] the erection of selective temporal barriers to the application of federal law" because "the substantive law" should not "'shift and spring' according to 'the particular equities of [individual parties'] claims' of actual reliance on an old rule and of harm from a retroactive application of the new rule." *Id.* (alterations in original).

The *Harper* retroactivity rule is grounded in the idea that courts have no "constitutional authority … to disregard current law or to treat similarly situated litigants differently." *Id.* (citation omitted). Moreover, the Court's severability holding in *AAPC* was not just a matter of statutory construction, it was also a remedy for a constitutional violation. In *Harper*, the Supreme Court stated that "both the common law and our own decisions have recognized a general rule of retrospective effect for the constitutional decisions of this Court." 509 U.S. at 94.

The retroactive effect of severability is well established. In 1914, in *Eberle v. Michigan*, the Supreme Court held that a constitutional statute's validity "could not be impaired by the subsequent adoption of what were in form amendments, but, in legal effect, were mere nullities." 232 U.S. 700, 704-05 (1914). In *Eberle*, officers of a brewing company charged with making beer in violation of an 1889 prohibition on manufacturing alcohol argued that the prohibition was void because subsequent amendments in 1899 and 1903 created an exception for making wine and cider in certain counties, which denied the beer brewers equal protection under the law. *Id.*

The Court agreed that the amendments violated the Equal Protection clause, but held that they were severable from the underlying 1889 prohibition on manufacturing alcohol generally, and therefore, the amendments were "mere nullities" that did not invalidate the 1889 prohibition. *Id.* Accordingly, the Court affirmed the defendants' convictions. *Id.* Just as the defendants in *Eberle* could not escape liability for selling beer despite unconstitutional exceptions for those selling wine and cider at the time, Defendants here cannot escape liability for robocalling consumers despite an unconstitutional statutory exception for government-debt collectors at the time.[3]

A decade after *Eberle*, the Supreme Court reaffirmed that its severability holdings apply retroactively. In *Frost*, the Court held that a 1925 amendment exempting certain corporations from making a showing of "public necessity" in order to obtain a cotton gin license constituted an unconstitutional denial of equal protection. 278 U.S. at 524-25. The Court held the 1925 amendment was severable from the 1915 law requiring a showing of "public necessity." *Id.* at 526. Although the case involved—as here—unequal treatment in violation of the Constitution, the Court held that because the 1925 amendment was unconstitutional, it was "a nullity" and "powerless to work any change in the existing statute," which "must stand as the only valid expression of legislative intent." *Id.* at 526. The Court reasoned that "[a]n act which violates the Constitution has no power and can, of course, neither build up nor tear down. It can neither

---

[3]      The *Lindenbaum* decision Defendants cite disregarded *Eberle* on the basis that it somehow mattered that it arose from a state supreme court decision, and that the *AAPC* plurality "contained no discussion regarding *Eberle* and its effect on the retroactivity of severed statutes." 2020 WL 6361915, at *7. However, *Eberle*—which pre-dates *Erie*—did <u>not</u> require the Supreme Court to defer to state law in deciding severability, and it directly addressed retroactivity because the defendants raised it on appeal of their convictions under the liquor law at issue. *Eberle*, 232 U.S. at 704. Likewise, *Lindenbaum* misconstrues *AAPC*'s plurality opinion to suggest that it doesn't mean what it says—stating that *AAPC*'s prospective-only treatment of government debt collection callers makes "no sense" if the amendment is "void *ab initio.*" However, this ignores severability principles that permit very limited prospective-only treatment where, for example, reliance interests and other policy justifications are presented, *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995), as the plurality found in *AAPC* as to government-debt callers.

create new rights nor destroy existing ones. It is an empty legislative declaration without force or vitality." *Id.* at 527. Just as the 1925 unconstitutional amendment in *Frost* could not—even temporarily—invalidate a constitutional law passed in 1915, the 2015 unconstitutional amendment carving out government-debt calls cannot—even temporarily—invalidate the 1991 TCPA prohibition on robocalls.

### C.   The majority of courts reject Defendants' arguments and hold that severance of the government-debt exception preserves liability for TCPA robocalls placed between 2015 and 2020.

The Ninth Circuit and numerous district courts have held that the government-debt exception should be severed and not affect liability for robocall violations made between 2015 and 2020. The weight of authority strongly supports the retroactive application of the Supreme Court's severability holding, ensuring that parties may still be held liable for robocall violations made in the past five years.

In *Duguid v. Facebook, Inc.*, the plaintiff sought damages on behalf of a proposed class for violations of the TCPA's prohibition on robocalling that occurred, in part, in 2016. 926 F.3d 1146, 1153 (9th Cir. 2019), *cert. granted in part,* 2020 WL 3865252 (July 9, 2020). As an affirmative defense, Facebook argued that the statute violated the First Amendment. *Id.* at 1149. The Ninth Circuit—like the Supreme Court in *AAPC*—"reject[ed] Facebook's challenge that the TCPA as a whole is facially unconstitutional," "sever[ed] the debt-collection exception as violative of the First Amendment," and "reverse[d] the dismissal of Duguid's amended complaint." *Id.* at 1157. The Ninth Circuit remanded for further proceedings, recognizing that severing the unconstitutional government-debt exception from the general prohibition meant that plaintiff's TCPA claims could proceed.

Before the Supreme Court's *AAPC* decision, courts across the country routinely denied motions to dismiss TCPA robocall claims on the grounds that the government-debt exception

created an unconstitutional content-based speech restriction. These courts reasoned that even if the government-debt exception was unconstitutional, the exception was severable from the rest of § 227(b)(1)(A)(iii), and therefore the plaintiffs' claims for robocall violations unrelated to the collection of government debt could still proceed.[4]

Since the Supreme Court's July 6, 2020 *AAPC* decision, courts have continued to find that severance of the unconstitutional government-debt exception means that parties may still be liable under the TCPA for robocalls made after 2015. For example, in *Burton v. Fundmerica, Inc.*, the court granted a motion for default judgment for a violation of § 227(b)(1)(A)(iii), noting "[t]he Supreme Court held last month in [*AAPC*] that one of the exceptions to this general prohibition, for calls made solely to collect a government debt, violated the First Amendment, but that it was severable from the TCPA as a whole—so, the provision on which the plaintiff's claim relies survived." 2020 WL 4504303, at *1 n.2 (D. Neb. Aug. 5, 2020).[5] The Court should

---

[4]      *See, e.g., Geraci v. Red Robin Int'l, Inc.*, 2020 WL 2309559, at *9 (D. Colo. Feb. 28, 2020), *adopted,* 2020 WL 1443597 (D. Colo. Mar. 25, 2020); *Rosenberg v. LoanDepot.com, LLC*, 435 F. Supp. 3d 308, 321 (D. Mass. 2020); *Doohan v. CTB Inv'rs, LLC*, 427 F. Supp. 3d 1034, 1060 (W.D. Mo. 2019); *Taylor v. KC VIN, LLC*, 2019 WL 6499140, at *16 (W.D. Mo. Dec. 3, 2019); *Hand v. Beach Entm't KC, LCC*, 425 F. Supp. 3d 1096, 1122 (W.D. Mo. 2019); *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1231 (W.D. Mo. 2019); *Perrong v. Liberty Power Corp.*, 411 F. Supp. 3d 258, 269 (D. Del. 2019); *Katz v. Liberty Power Corp.*, 2019 WL 4645524, at *8 (D. Mass. Sept. 24, 2019); *Parker v. Portfolio Recovery Assocs., LLC*, 2019 WL 4149436, at *3 (C.D. Cal. July 11, 2019); *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, 2019 WL 3409487, at *6 (S.D. Fla. Apr. 3, 2019); *Silwa v. Bright House Networks, LLC*, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018).

[5]      *See also Buchanan v. Sullivan*, 2020 WL 6381563, at *3 (D. Neb. Oct. 30, 2020) (noting that *AAPC* "sever[ed] the debt-collection exemption to the TCPA as unconstitutional, leaving the generally applicable restrictions at issue here intact"); *Schmidt v. AmerAssist A/R Sols. Inc.*, 2020 WL 6135181, at *4 n.2 (D. Ariz. Oct. 19, 2020) ("The exception for calls made to collect government-owned or -guaranteed debt was recently invalidated and severed by the Supreme Court [in *AAPC*].… Schmidt has not alleged that her purported debt was owned or guaranteed by the government, so [*AAPC*] does not affect this case."); *Komaiko v. Baker Techs., Inc.*, 2020 WL 5104041, at *2 (N.D. Cal. Aug. 11, 2020) ("Because the government-debt exception is not at issue in this case, the decision in [*AAPC*] does not impact Plaintiffs' claims."); *Lacy v. Comcast Cable Commc'ns, LLC*, 2020 WL 4698646, at *1 (W.D. Wash. Aug. 13, 2020) (lifting stay after

similarly rule here, and deny Defendants' motion.

> **D.      Defendants urge the Court to adopt the reasoning of two district courts that misconstrued *AAPC*.**

Despite the Supreme Court's clear mandate in its severability analysis about which three Justices joined and four Justices concurred in judgment—i.e., that "our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction," *AAPC,* 140 S. Ct. at 2355 n.12—Defendants contend that they cannot be held liable for calls made from 2015 to 2020, before the government-debt exception was severed. Defendants urge the Court to adopt the reasoning of two out-of-Circuit district courts that dismissed TCPA claims based on robocalls placed in the last five years, finding they lacked jurisdiction to enforce unconstitutional statutes. *See generally Lindenbaum v. Realgy, LLC*, 2020 WL 6361915 (N.D. Ohio Oct. 29, 2020); *Creasy v. Charter Commc'ns, Inc.*, 2020 WL 5761117 (E.D. La. Sept. 28, 2020). These courts misconstrued *AAPC*'s analysis and established severability principles.

The *Creasy* and *Lindenbaum* courts assumed *AAPC* held that Section 227(b)(1)(A)(iii) was, in its entirety, unconstitutional and invalid. *See Lindenbaum*, 2020 WL 6361915, at *1 ("In *AAPC*, the Supreme Court held that 47 U.S.C. § 227(b)(1)(A)(iii) violated the Constitution[.]"); *Creasy*, 2020 WL 5761117, at *1 ("*AAPC* amounts to an adjudication that the entirety of § 227(b)(1)(A)(iii) was unconstitutional"), *5. This assumption is wrong and directly contradicted by the Supreme Court's express rejection of the contention that the entire robocall ban was unlawful. *AAPC*, 140 S. Ct. at 2348-49 ("we disagree with plaintiffs' broader initial argument for holding the entire 1991 robocall restriction unconstitutional"). *Creasy* and *Lindenbaum* then assumed that *AAPC* cured the unconstitutional provision through severance. *See Lindenbaum*, 2020 WL 6361915, at *4 (the Supreme Court "cured the unequal treatment concern by

---

*AAPC* because "while the Supreme Court invalidated the debt-collection exception, it severed the provision rather than striking down the TCPA's entire robocall restriction").

*preventing* parties from engaging in speech"); *Creasy*, 2020 WL 5761117, at *6. This was also wrong. The point of the severability doctrine is to identify the portion of a statute that is unconstitutional and to "refrain from invalidating more of the statute than is necessary." *AAPC*, 140 S. Ct. at 2350 (quoting *Reagan v. Time Inc.*, 468 U.S. 641, 652-53 (1984)).[6]

For example, in *United States v. Melis*, the defendants challenged their convictions under the Anti-Riot Act on the grounds that statute is facially overbroad under the Free Speech Clause of the First Amendment. 972 F.3d 518, 525 (4th Cir. 2020). The Fourth Circuit held that it was unconstitutionally overbroad, but that the "overbroad portions of the statute are severable from the constitutionally valid remainder." *Id.* at 541. The court held that the overly broad language, "the last phrase of § 2102(b)," is "easily dropped off from the rest of the clause in which it appears, much like the government-debt exception severed in [*AAPC*]." *Id.* at 542. The court noted that *AAPC* and other cases "illustrate just how 'surgical' we ought to be in severing unconstitutional language from an otherwise inoffensive statute." *Id.* The defendants argued that their convictions should be overturned because their indictments were "premised on a conspiracy to violate the statute as a whole" but the Fourth Circuit rejected that argument, reasoning that "because the defendants' substantive offense conduct falls under the statute's **surviving** purposes, their convictions must stand." *Id.* at 546-47 (emphasis added). The same is true in this case: If a TCPA defendant's conduct falls within the part of the robocall ban that is constitutional, the defendant should still be liable regardless of when the violations occurred.[7]

---

[6]   *See also Koog v. United States*, 79 F.3d 452, 463 (5th Cir. 1996) (holding that the "remainder of the interim provision" of the Brady Handgun Violence Protection Act "is severable from the invalidated duties and therefore survives this constitutional attack")

[7]   *Lindenbaum* inexplicably relies upon *Arthrex, Inc. v. Smith & Nephew, Inc.*, 953 F.3d 760 (Fed. Cir. 2020) instead of looking to Supreme Court jurisprudence. *Arthrex* was a split decision, where an equal number of judges on the panel *rejected* the position upon which *Lindenbaum* relies. *Id.* at 776-80. *Arthrex* also dealt with the validity of rulings made by administrative patent

The Supreme Court's decision in *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519 (2012), is also instructive. In *Sebelius*, the Court held that a provision of the Affordable Care Act ("ACA") that permitted the Secretary of Health and Human Services to "withhold all further [Medicaid] payments … to the state if she determines that the State is out of compliance with any Medicaid requirement" was unconstitutional. *Id.* at 585. The Court cured this unconstitutional provision by severing it from the statute, rather than striking down the entire ACA.[8] *Id.* at 588 ("The remedy for that constitutional violation is to preclude the Federal Government from imposing such a sanction. That remedy does not require striking down other portions of the … Act."). In so ruling, the Court did *not* hold that the ACA was unconstitutional prior to severing this provision. In fact, it explicitly stated that "[t]oday's holding does not affect the continued application of § 1396c to the existing Medicaid program." *Id.* at 586.

A case that Defendants rely on is also instructive. In *Seila Law LLC v. Consumer Fin. Prot. Bureau*, the Supreme Court held that the CFPB's leadership by a single individual removable only for inefficiency, neglect, or malfeasance violated the separation of powers, rendering the director's decisions invalid. 140 S. Ct. 2183, 2197 (2020). The Court held the proper remedy was to sever the "for cause" provision. *Id.* at 2192 ("We go on to hold that the CFPB Director's removal protection is severable from the other statutory provisions bearing on the CFPB's authority."). But the Court noted that related provisions that formed the CFPB's structure and decision-making process were *not* retroactively unconstitutional. *Id.* at 2209 ("The provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully

---

judges who had acted subject to a portion of a statute that was subsequently severed as unconstitutional. Nothing in *Arthrex* suggests that non-severed portions of the statute became invalid, which is what Defendants argue here.

[8] Like the TCPA, the Affordable Care Act has a severability clause. *Id.* at 586 ("The chapter of the United States Code that contains § 1396c includes a severability clause confirming that we need go no further.").

operative without the offending tenure restriction. Those provisions are capable of functioning independently, and there is nothing in the text or history of the Dodd-Frank Act that demonstrates Congress would have preferred *no* CFPB to a CFPB supervised by the President.").

By contrast, the *Creasy* and *Lindenbaum* approach—to eliminate all liability for robocalls to cell phones over the last five years "notwithstanding Congress's decisive choice to prohibit most robocalls to cell phones"—"disrespect[s] the democratic process, through which the people's representatives have made crystal clear that robocalls must be restricted." *AAPC*, 140 S. Ct. at 2356. "That is not a judicially modest approach." *Id.* "[S]everability is a doctrine borne out of constitutional-avoidance principles, respect for the separation of powers, and judicial circumspection when confronting legislation duly enacted by the co-equal branches of government. Parties cannot … compel the courts to strike down more of a law than the Constitution or statutory construction principles demand." *Ass'n of Am. Railroads v. Dep't of Transp.*, 896 F.3d 539, 550 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 2665 (2019).

*Lindenbaum* and *Creasy* acknowledged the Supreme Court's direction in footnote 12 that *AAPC* "does not negate the liability of parties who made robocalls covered by the robocall restriction," 140 S. Ct. at 2355 n.12, but treated it as dictum on the mistaken impression that only three Justices joined it. *See Lindenbaum*, 2020 WL 6361915, at *5 ("footnote 12 is contained in a plurality opinion endorsed by only three Justices" and is "non-binding *obitur dictum*"); *accord Creasy*, 2020 WL 5761117, at *4 n.4. In fact, as discussed above, <u>seven</u> Justices joined in this holding: Justices Roberts and Alito, who joined in Justice Kavanaugh's plurality opinion; Justice Sotomayor, who disagreed with the application of strict scrutiny but agreed as to severability, *AAPC*, 140 S. Ct. at 2357; and Justices Breyer, Ginsburg, and Kagan, who would have held the government-debt exception constitutional but also "concur[red] in the judgment with respect to

severability," *id.*, at 2363.[9] Footnote 12 defines the scope of the severability judgment, clarifying what the Supreme Court's decision as to severability "means." *Id.* at 2355 n.12.[10]

Even if footnote 12 was dictum, Supreme Court dicta are extremely persuasive. Indeed, "this court [should] consider[] itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *ACLU v. McCreary Cnty.,* 607 F.3d 439, 447-48 (6th Cir. 2010); *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006) ("It would never occur to us to tell the Supreme Court that we would decide our cases based on our analysis of its decisions, not its own analysis of them, just because that analysis had been announced in a case where it was not essential to the result.").

Moreover, the Supreme Court's grant of certiorari in *Duguid v. Facebook,* discussed above, confirms its intent that parties may be liable for violating the robocall prohibition over the last five years. Facebook sought review of the Ninth Circuit's severance of the government-debt exception, making the same arguments accepted in *Creasy* and *Lindenbaum*. *See* Pet. for Writ of Cert., *Facebook, Inc. v. Duguid*, 2019 WL 5390116, at *1-2, 16-22 (Oct. 17, 2019). The Supreme Court denied certiorari as to that issue while granting certiorari as to a second, unrelated issue—the definition of an autodialer. *See Facebook, Inc. v. Duguid*, 2020 WL 3865252, at *1 (U.S. July 9, 2020). Thus, *Creasy* and *Lindenbaum* conflict with the only appellate court to directly decide what effect severance of the government-debt exception has on

---

[9]     Who-signed-onto-what in the opinion is admittedly confusing. However, the fifth paragraph, at 2343-44, clears any confusion, and shows *Lindenbaum* and *Creasy* were incorrect as to how many justices adopted the severability discussion and holding: "Applying traditional severability principles, <u>seven Members of the Court</u> conclude that the entire 1991 robocall restriction should not be invalidated, but rather that the 2015 government-debt exception must be invalidated and severed from the remainder of the statute. [citing the entirety of Part III]"

[10]     The fact that a statement is in a footnote does not mean that it is dictum. *See, e.g.*, *Fla. Dep't of Labor & Emp't Sec. v. Dep't of Labor*, 893 F.2d 1319, 1323 n.7 (11th Cir. 1990) ("it is not possible to characterize this footnote in [the Supreme Court's opinion] as *obiter dictum*").

TCPA claims based on robocalls between 2015 and 2020,[11] and the Supreme Court—despite granting certiorari on a separate issue—denied certiorari as to the Ninth Circuit's determination.

None of the other cases Defendants cite warrant a departure from the Supreme Court's clear instruction that its decision only impacts liability for robocalls made to collect government debt. The cases are relevant only if the Court accepts *Lindenbaum* and *Creasy*'s mistaken assumption that the Supreme Court found the entire robocall ban in Section 227(b)(1)(A)(iii) to be unconstitutional rather than just the government-debt exception. Most merely apply the "general rule of retrospective effect for the constitutional decisions of this Court," *Harper*, 509 U.S. at 94, without any consideration of severability issues.[12]

Defendants also cite *Grayned v. City of Rockford*, where the Supreme Court held that an antipicketing ordinance was unconstitutional at the time of the appellant's arrest and conviction and did not assess the ordinance as later amended by the legislature. 408 U.S. 104, 107 & n.2 (1972). Because the statute had already been amended, the Court had no reason in its brief analysis to consider whether it would be appropriate to sever the offending portion of the statute and the implications if it had done so. In *Sessions v. Morales-Santana*, the Supreme Court cited *Grayned* in noting that a defendant can challenge his conviction "without regard to the manner in

---

[11]    *But see Allan v. PHEAA*, 968 F.3d 567, 575 (6th Cir. 2020) (affirming summary judgment for TCPA plaintiff after noting *AAPC* severance of government-debt exception).

[12]    *See, e.g., Montgomery v. Louisiana*, 136 S. Ct. 718, 731, 736 (2016) (Supreme Court's decision prohibiting sentencing juveniles to life sentences without parole was a substantive rule of constitutional law that must be given retroactive effect); *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 751-52 (1995) (Supreme Court decision holding Ohio tolling law unconstitutional must be given retroactive effect); *Bradley v. Sch. Bd. of City of Richmond*, 416 U.S. 696, 711-15 (1974) (appellate courts must apply the law in effect at the time they render their decisions, not at the time of judgment, "unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary"); *U.S. v. Baucum*, 80 F.3d 539, 540-41 (D.C. Cir. 1996) (recognizing that "once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid 'law of the United States' to enforce)" but "*Baucum*'s belated assertion of a constitutional defect does not work to divest that court of its original jurisdiction to try him for a violation of the law at issue").

which the legislature might subsequently cure the infirmity." 137 S. Ct. 1678, 1699 n.24 (2017). The citizenship statute at issue, which required a U.S.-citizen parent to maintain a physical presence in the country for a certain period of time that was shorter for unwed mothers than fathers, had not been amended. The Supreme Court found that the law violated equal protection and concluded that "the legislature's intent, as revealed by the statute at hand" would be to abrogate the exception for unwed mothers in favor of "preservation of the general rule" of the longer physical presence requirement. *Id.* at 1699-1700. Thus, in *Sessions*, the Court considered legislative intent in finding that removing the exception was the appropriate remedy, just as it did in *AAPC*. In *Sessions*, however, the Court could not "convert [the] exception for unwed mothers into the main rule" that covered married couples and unwed fathers and therefore left it "to Congress to select, going forward, a physical-presence requirement … uniformly applicable to all children born abroad with one U.S.-citizen and one alien parent, wed or unwed." *Id.* at 1686.

Defendants' reliance on *Creasy* and *Lindenbaum* asks this Court to strip consumers of the right to redress the TCPA has afforded for over a quarter-century—negating accountability for literally *billions* of calls from scammers, abusive telemarketers, phishing outfits, spam texters, and other bad actors. *In re of John C. Spiller*, 2020 WL 3091143, at *1 (FCC June 10, 2020). And their argument is not based on a constitutional infirmity in the TCPA, itself (a statute that has repeatedly withstood constitutional scrutiny on its own merits),[13] but instead upon a recent, one-line exception, thrown in as part of a budget act, that has ***nothing to do*** with telemarketing or the calls at issue. Where does one draw the line? Would defendants have the Court invalidate the Budget Act, too, as Justice Kavanaugh and six other Justices mused? *AAPC* at fn. 7. Of

---

[13]     *E.g., Duguid*, 926 F.3d at 1157; *Gallion v. Charter Commc'ns Inc.*, 287 F. Supp. 3d 920, 928 (C.D. Cal. 2018), *aff'd*, 772 F. App'x 604 (9th Cir. 2019); *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1151 (D. Minn. 2017).

course not. Defendants' proposed result is incorrect, and would produce absurd results.

      E.      ***AAPC* did not address the constitutionality of the Internal Do Not Call provisions at issue in this case but applying the reasoning of *AAPC* would not absolve them of liability.**

The Supreme Court did not address the constitutionality of Section 227(c)(5)—the provision of the TCPA that Plaintiff alleges HII violated by calling Plaintiff after he asked for calls to stop and failing to properly identify the caller and seller. 47 C.F.R. § 64.1200(d)(4). In fact, the Supreme Court confirmed that "[t]he issue before us concerns only robocalls to cell phones." *AAPC*, 140 S. Ct. at 2347. Citing no legal authority, Defendants ask the Court to find that this entire case should be thrown out, because in their view the entire TCPA has been tainted. But to reach the result Defendants urge—a finding that the *entirety* of the TCPA was void between 2015 and 2020—the Court would have to both accept their mistaken reading of the Supreme Court's holding, ignore footnote 12 that was endorsed by a majority of the Justices, ignore that *AAPC* dealt with robocall restrictions, only, and throw traditional severability principles out the window. It clearly should not do so, and it should deny the motion to dismiss.

      F.      **The Government Debt Exception was never implemented through regulations, which remain wholly constitutional.**

The TCPA is implemented through regulations promulgated by the FCC, which appear at 47 C.F.R. § 64.1200. *See* 47 U.S.C. § 227(b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection."). Although the Budget Act required that, "[n]ot later than 9 months after the date of enactment of this Act, the [FCC], in consultation with the Department of the Treasury, shall prescribe regulations to implement the amendments made by this section," *this never happened*. *See* 47 C.F.R. § 64.1200(a)(1)(iii).

The effect of the FCC's failure to prescribe implementing regulations is material; *AAPC* had zero effect on them. Because the TCPA's implementing regulations were never changed, the

regulations under which Plaintiff brings this lawsuit, including the robocall provisions at 47 C.F.R. § 64.1200(a)(1)(iii), and the Do Not Call provisions at 47 C.F.R. § 64.1200(d)(1) & (d)(4). This absence of any government-debt collection language in the regulations that govern this case thus moots Defendants' arguments.

G. **Defendants' motion should be denied because it is procedurally defective.**

Fed. R. Civ. P. 5.1(a)-(b) provides that any party that files a motion drawing into question the constitutionality of a federal statute must promptly file a notice of constitutional question stating the question and identifying the paper that raises it, and serve such on the Attorney General of the United States. Although Defendants' motion clearly seeks invalidation of an entire federal statute on constitutional grounds, they failed to properly notify the Government. Thus, to the extent the Court is inclined to grant Defendants' motion, it should nonetheless defer or deny it so that notice has been perfected and the United States given an opportunity to weigh in. *Jones v. U-Haul Co. of Mass. & Ohio Inc.*, 16 F. Supp. 3d 922, 941 (S.D. Ohio 2014).

IV. <u>**CONCLUSION**</u>

As Justice Kavanaugh recognized, "[c]onstitutional litigation is not a game of gotcha against Congress, where litigants can ride a discrete constitutional flaw in a statute to take down the whole, otherwise constitutional statute." *AAPC*, 140 S. Ct. at 2351. The Court should follow the seven-Justice majority's directive in footnote 12, and hold that *AAPC* decision "does not negate the liability of parties who made robocalls covered by the robocall restriction," like the Defendants in this case. Defendants' motion should be denied.

Respectfully submitted,

ROBERT HOSSFELD, individually and on
behalf of others similarly situated

December 4, 2020                    By: *s/ Scott D. Owens*
                                        Scott D. Owens (FBN 597651)
                                        SCOTT D. OWENS, P.A.
                                        2750 N. 29th Ave., Suite 209A
                                        Hollywood, FL 33020
                                        Telephone: (954) 589-0588
                                        scott@scottdowens.com

                                        Alexander H. Burke (*pro hac vice*)
                                        BURKE LAW OFFICES, LLC
                                        909 Davis St., Suite 500
                                        Evanston, IL 60201
                                        Telephone: (312) 729-5288
                                        aburke@burkelawllc.com

                                        *Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that, on December 4, 2020, I caused the foregoing to be electronically filed with the Clerk of the United States District Court for the Southern District of Florida using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                        *s/ Scott D. Owens*
                                        Scott D. Owens Esq.