UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 0:19-cv-60597-GAYLES/STRAUSS

ROBERT HOSSFELD, individually
and on behalf of others similarly situated,

        Plaintiff,

v.

AMERICAN FINANCIAL SECURITY
LIFE INSURANCE COMPANY, et al.,

        Defendants.

_____/

## AMENDED ORDER

**THIS CAUSE** comes before the Court on Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Class Action Complaint, ("Motion to Dismiss"), [ECF No. 153], and Supplemental Joint Motion to Dismiss Plaintiff's Second Amended Class Action Complaint for Lack of Subject Matter Jurisdiction ("Supplemental Motion to Dismiss"), [ECF No. 178], (collectively, the "Motions"). This Court has considered the Motions and the record and is otherwise advised. For the reasons that follow, Defendants' Supplemental Motion to Dismiss is denied and Defendants' Motion to Dismiss is granted in part and denied in part.

## I.    BACKGROUND[1]

### A.    Factual Allegations

This is a class action for violations of the Telephone Consumer Protection Act ("TCPA" or the "Act"), 47 U.S.C. § 227. The action derives from a telemarking scheme whereby insurance companies hired Defendant Health Insurance Innovations, Inc. n/k/a Benefytt Technologies, Inc.

---

[1] As the Court is proceeding on Motions to Dismiss, it takes Plaintiff's allegations in the Second Amended Complaint as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam).

("HII") to generate business. In turn, HII hired third-party telemarketers and licensed insurance agents to perform telemarketing on behalf of the insurance companies. Pursuant to the telemarketing scheme, Plaintiff received a series of unsolicited insurance sales calls from August 8, 2018 to August 29, 2019:

- On August 8, 2018, Plaintiff received a telemarketing call advertising health insurance. The call began with a prerecorded message which instructed Plaintiff to press a digit on his phone to proceed. While Plaintiff was connected with a representative, the agent refused to identify his employer and hung up on Plaintiff when Plaintiff continued to ask for identifying information. This call was made at the request of HII for the purpose of encouraging the sale of the products and services of one or more defendants: American Financial Security Life Insurance Company ("American Financial"), Federal Insurance Company ("Federal Insurance"), Med-Sense Guaranteed Association ("Med-Sense"), National Congress of Employers, Inc. ("NCE"), National Benefit Builders, Inc. ("NBBI"), Rx Helpline LLC ("Rx Helpline"), and Teladoc Health, Inc. ("Teladoc") (collectively, "Seller Defendants").

- On November 26, 2018, Plaintiff received a phone call to his cell phone advertising health insurance, which began with a prerecorded message instructing Plaintiff to press a digit to proceed. During a conversation with a live representative, Plaintiff was quoted $714.84/month for health insurance through the MultiPlan PPO network, underwritten by American Financial. The American Financial policy was to be administered by HII. HII paid for all or part of this call.

- On February 13, 2019, Plaintiff received a phone call to his cell phone advertising health insurance, which began with a prerecorded message instructing Plaintiff to press a digit to

proceed. During another conversation with a live representative, Plaintiff was quoted $398.03/month for health insurance through the AdvantHealth STM plan, underwritten by American Financial. The American Financial policy was to be administered by HII. HII paid for all or part of this call. As a supplement to the quote, HII sent Plaintiff an email with a pre-filled application for the "AdvantHealth STM plan through American Financial, NCE membership which was provided through or in conjunction with NBBI, accidental death and dismemberment coverage through Federal Insurance (for which Med-Sense is listed as the policyholder), membership in Med-Sense's discount program, Teladoc's '27/7 doctor visits by telephone' service, and RX Helpline." [ECF No. 140 ¶ 64].

- On March 5, 2019, Plaintiff received a missed call on his cell phone. Upon returning the call, Plaintiff was connected to a live representative who gave him a quote for health insurance coverage underwritten by American Financial.

- On May 22, 2019, Plaintiff received another call to his minor child's cell phone, for which Plaintiff is the subscriber, and spoke with a live representative. On this call, Plaintiff told the representative to never call his phone again.

- On August 14, 2019, Plaintiff received another missed call paid for, in part or in full, by HII. When Plaintiff called back, he was connected to a live representative after an initial prerecorded prompt promoting "affordable health insurance." On this call, Plaintiff told the representative he did not want to be contacted by phone, which the representative confirmed he "indicated on there."

- On August 29, 2019, Plaintiff received another missed call paid for, in part or in full, by HII. Plaintiff called back three times and was connected with a live representative on the third attempt. Plaintiff told the representative that he did not want to be contacted by phone.

The representative confirmed that she would mark his phone number as "DNC," meaning do not call.

## B.     Procedural History

On March 6, 2019, Plaintiff filed this class action lawsuit for violations of the TCPA.[2] [ECF No. 1]. The defendants moved to dismiss the action for failure to state a claim on May 1, 2019.  [ECF No. 57]. On June 5, 2019, Plaintiff filed an Amended Complaint,[3] [ECF No. 77], which the defendants moved to dismiss, [ECF No. 117]. On March 11, 2020, the Court held a hearing on the defendants' Motion to Dismiss and dismissed the Amended Complaint without prejudice. [ECF No. 135].

On April 13, 2020, Plaintiff filed his Second Amended Class Action Complaint ("SAC") against HII and the Seller Defendants (collectively, "Defendants") alleging that Defendants caused phone calls to be made to the phone numbers registered to Plaintiff, and others, using an automatic telephone dialing system and prerecorded voice, in violation of the TCPA. [ECF No. 140]. Plaintiff brings two counts: Count I against all Defendants for initiating or causing to be initiated nonconsensual telephone calls using an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, in violation of 47 U.S.C. § 227(b)(1)(A)(iii); and Count II against HII only for failure to maintain and adhere to internal do-not-call policies, in violation of 47 U.S.C. § 227(c)(5). *Id.* On June 8, 2020, Defendants filed their Motion to Dismiss for failure to state a claim. After the United States Supreme Court rendered its decision in *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (July 6, 2020), where the Court severed an unconstitutional

---

[2] Plaintiff first brought this action against the following defendants: American Financial Security Life Insurance Company; Federal Insurance Company; Health Insurance Innovations, Inc.; Supreme Health Group Inc.; Blake Fishman; Med-Sense Guaranteed Association; National Congress of Employers, Inc.; National Benefit Builders, Inc.; Health Advisors of America, Inc.; Michael Smith; and Zachary Cox.
[3] In the Amended Complaint, Plaintiffs removed Defendants Health Advisors of America, Inc.; Michael Smith; and Zachary Cox from the action, and added Defendants HealthPocket, Inc., d/b/a AgileHealthInsurance; Teladoc Health, Inc.; RX Helpline LLC; AXIS Insurance Company; and Association for Entrepreneurship USA.

provision of the TCPA, Defendants filed their Supplemental Motion to Dismiss, arguing that the Supreme Court's ruling destroys federal question jurisdiction.

## II.     LEGAL STANDARD

### A.     Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure can be asserted on facial or factual grounds. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis for subject matter jurisdiction." *McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). Furthermore, "the court must consider the allegations in the plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).[4] By contrast, a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations," *Lawrence*, 919 F.2d at 1529 (quotations omitted), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction, *see OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

### B.     Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw

---

[4] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## III.   DISCUSSION

This action was brought pursuant to the TCPA. The TCPA was enacted in 1991 in response to an overwhelming number of consumer complaints of unwanted telemarketing calls, auto-dialed calls, and prerecorded calls. *Barr*, 140 S. Ct. at 2344. The Act prohibits a person from using an autodialer and/or a prerecorded voice to call any telephone number for telemarketing purposes, without proper consent. 47 U.S.C. § 227(b). These calls are often referred to as "robocalls." In November 2015, Congress amended the TCPA to carve out an exception permitting robocalls if made for the purpose of collecting a government debt. 47 U.S.C. § 227(b)(1)(A)(iii). In July 2020, the United States Supreme Court ruled that the government-debt exception impermissibly favored debt-collection speech over political and other speech in violation of the First Amendment. *Barr*, 140 S. Ct. at 2343. The Court found the exception was unconstitutional and severed it from the remainder of the statute. *Id.* at 2355.

A.      **Supplemental Motion to Dismiss [ECF No. 178]**

Because Defendants brings a facial challenge, the Court examines whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. In the SAC, Plaintiff asserts that federal question jurisdiction exists here as his claims are based on violations of the TCPA. Defendants argue that the Court lacks federal question jurisdiction, therefore subject matter jurisdiction, because the entire TCPA, as amended in 2015, was rendered invalid by *Barr*. According to Defendants, Plaintiff cannot assert claims based on conduct that occurred while the TCPA is invalid. *See Ex Parte Siebold*, 100 U.S. 371, 377 (1879) (holding a federal court lacks jurisdiction "if the laws are unconstitutional and void"). However, Defendant's contention defies ordinary rules of statutory severability and is contrary to a reasonable interpretation of the *Barr* opinion.

"Generally speaking, when confronting a constitutional flaw in a statute, [courts] try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010) (quotations omitted). Before severing a statutory provision, the court must determine whether the remaining provisions are capable of functioning independently. *Id.* at 510. As the Supreme Court explained in *Barr*, the "robocall restriction [] function[ed] independently and fully operate[d] as a law for 20-plus years before the government-debt exception was added in 2015." *Barr*, 140 S. Ct. at 2353. Therefore, severing the government-debt exception does not destroy the pre-existing robocall restriction.

"An unconstitutional statutory amendment is a nullity and void when enacted, and for that reason has no effect on the original statute." *Trujillo v. Free Energy Savings Co., LLC*, No. 5:19-cv-02072-MCS-SP, 2020 WL 8184336, *4 (C.D. Cal. December 21, 2020) (quotations omitted). Thus, robocalls made between November 2015 and July 2020, not made for the purpose of

collecting a government debt, are enforceable under the TCPA. *See Barr*, 140 S. Ct. at 2355 fn. 12 ("[A]lthough our decision means the end of the government-debt exception . . . our decision today does not negate the liability of parties who made robocalls covered by the robocall restriction."); *see also Rieker v. Nat'l Car Cure, LLC*, No. 3:20CV5901-TKW-HTC, 2021 WL 210841, at *1 (N.D. Fla. Jan. 5, 2021) ("[T]he robocall statute remains enforceable, at least against non-government-debt collectors, as to calls made between 2015 and [July] 2020."); *Canady v. Bridgecrest Acceptance Corp.*, No. CV-19-04738-PHX-DWL, 2020 WL 5249263, at *2 (D. Ariz. Sept. 3, 2020) ("Although *Barr* struck down a part of the TCPA not at issue in this case, the bulk of the TCPA lives on."). Therefore, federal question jurisdiction is not destroyed. The Court has subject matter jurisdiction to proceed on Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

**B.      Motion to Dismiss [ECF No. 153]**

**1.      Count I**

Plaintiff alleges that the Defendants violated the Act by initiating or causing to be initiated unwanted calls, using an artificial or prerecorded voice, to telephone numbers registered to Plaintiff and others similarly situated. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff alleges that the Seller Defendants are liable under the Act for the calls during which their products or services were marketed, quoted, or sold. But for most of the Seller Defendants, Plaintiff specifically alleges liability for only the February 13, 2019 call. *See* [ECF No. 140 ¶ 179]. This one call is insufficient to establish Article III standing.

A plaintiff is conferred Article III standing to sue when three requirements are met: (1) the plaintiff must allege that he suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) that injury must be "fairly traceable to the challenged action of the

defendant"; (3) and it must be "likely ... that the injury will be redressed by a favorable decision." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Eleventh Circuit law makes clear "*receipt of more than one* unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing." *Cordoba*, 942 F.3d at 1270 (emphasis added); *see also Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020) (citing *Cordoba*, 942 F.3d at 1270 and *Salcedo v. Hanna*, 936 F.3d 1162, 1168 (11th Cir. 2019)).  Because Plaintiff has not adequately alleged receipt of more than one unlawful call on behalf of Defendants Federal Insurance, Med-Sense, NCE, NBBI, Rx Helpline, and Teladoc, Plaintiff has no standing to bring a TCPA claim against them.[5] Accordingly, Count I must be dismissed against these defendants.

The SAC alleges that only Defendants HII and American Financial made more than one call to Plaintiff. Plaintiff claims HII is liable under the following theories: direct liability, actual authority, apparent authority, and ratification. Plaintiff claims American Financial is liable under the theory of actual authority and apparent agency.

Plaintiff has not sufficiently stated a claim for direct liability against HII because "[d]irect liability under the TCPA ... applies only to entities that 'initiate' the telemarketing calls." *Grant v. Regal Auto. Grp., Inc.*, No. 8:19-CV-363-T-23JSS, 2020 WL 8254283, at *7 (M.D. Fla. July 30, 2020), *report and recommendation adopted*, No. 8:19-CV-363-T-23JSS, 2020 WL 8224838 (M.D. Fla. Sept. 29, 2020). A person or entity "initiates" a telephone call when "it takes the steps necessary to physically place a telephone call." *Id.* (citing *In the Matter of the Joint Petition Filed*

---

[5] As the Court finds Plaintiff lacks standing to sue these defendants, the Court need not consider Defendants' argument that Plaintiff fails to adequately allege personal jurisdiction over Federal Insurance, Med-Sense, NCE, NBBI or Teladoc.

*by Dish Network, LLC, the U.S., & the States of Cal., Ill., N.C., & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules ("Dish Network")*, 28 F.C.C. Rcd. 6574, 6583 ¶26 (2013)). This "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *Becker v. Pro Custom Solar LLC*, No. 219CV535FTM29NPM, 2020 WL 474647, at *3 (M.D. Fla. Jan. 29, 2020) (citing *Dish Network*, 28 F.C.C. Rcd. at 6583). In the SAC, Plaintiff acknowledges that HII did not actually place any of the phone calls. Instead, HII controls a network of third-party telemarketers and insurance agent lead generators with whom it contracts to generate business for Seller Defendants and similar companies. As a result, HII cannot be directly liable for calls made by third parties.

However, HII may be held vicariously liable under federal common law agency principles, including actual agency, apparent authority, and ratification, for a TCPA violation by a third-party telemarketer. *Cabrera v. Gov't Emps. Ins. Co.*, 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014) (citing *Dish Network*, 28 F.C.C. Rcd. at 6582-84). The ultimate determination of whether HII and American Financial had an agency relationship is for a trier of fact to decide. *Johnson v. Unique Vacations, Inc.*, 498 F. App'x 892, 894 fn. 3 (11th Cir. 2012) (citing *Villazon v. Prudential Health Care Plan, Inc.,* 843 So. 2d 842, 853 (Fla. 2003)). For purposes of a motion to dismiss, the Court must determine whether there is "a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Snyder v. iCard Gift Card, LLC*, No. 0:15-CV-61718-WPD, 2017 WL 10379592, at *3 (S.D. Fla. May 11, 2017). Therefore, Plaintiff must allege enough facts to show that HII and American Financial exercised substantial control over the third-party telemarketer agents' actions, ratified the agents' conduct,

or represented that the agents acted with authority from HII and American Financial. *See Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014).

Plaintiff sets forth the following allegations that give rise to an inference of an agency relationship between HII and the third-party telemarketer agents: HII authorized the third party telemarketers to call Plaintiff and others on the dates alleged; HII paid for all or part of the telemarketing calls; HII authorized its agents to use its name or trade names during telemarketing calls; HII controlled the telemarketing at issue by providing the telemarketing scripts, real-time insurance quotes, and other health-related products and services during the calls at issue; HII ratified these calls by emailing contracts and quotes for insurance to Plaintiff and others and by handling billing and other administrative services as to the products and services through these calls; and HII benefitted from the telemarketing by promoting products and services for its clients. [ECF No. 140 ¶¶ 125–30]. Plaintiff sets forth the following allegations that give rise to an inference of an agency relationship between American Financial and the third-party telemarketer agents: American Financial, through its agreements with HII, authorized the calls at issue; American Financial controlled the telemarketing at issue by providing the proprietary product and pricing information that the telemarketers used; American Financial reviewed and approved the scripts for the telemarketing calls made on its behalf; American Financial financially benefitted from the telemarketing; and American Financial ratified the telemarketing calls by continuing to provide proprietary product and pricing information resulting in sales from these calls, continuing to authorize the use of its trade name during these calls, and continuing to maintain its relationship with HII after being notified that these calls were illegal. [ECF No. 140 ¶¶ 131–135]. These allegations against HII and American Financial are sufficient to plead a cause of action based on

vicarious liability. Accordingly, the Motion to Dismiss Count I is denied as to Defendants HII and American Financial.

### 2. Count II

Plaintiff brings Count II against HII only for failure to maintain and honor a written internal DNC policy, in violation of 47 U.S.C. § 227(c)(5). Any person or entity initiating a telemarketing call must keep a written policy for maintaining a DNC list. 47 C.F.R. § 64.1200(d). If a consumer requests not to be called during a telemarketing call, this request must be honored by the telemarketer, the seller, and all other telemarketers that generate business for the seller. *Id.* The Eleventh Circuit has held that Article III standing to sue for failure to maintain and honor an internal DNC list arises from calls made in violation of the Act.

> We hold today only (1) that calls placed in violation of the Telephone Consumer Protection Act are injuries in fact under the framework explicated by the Supreme Court in *Lujan* and *Spokeo* and our own case law, but (2) that recipients of such calls who never asked the telemarketer to stop calling them do not have standing to sue over violations of the internal do-not-call list regulations because their injuries are not fairly traceable to the telemarketer's failure to maintain an internal do-not-call list.

*Cordoba*, 942 F.3d at 1276. According to the SAC, Plaintiff made his first request to not be called on May 22, 2019—after he initiated this lawsuit. *See* [ECF No. 140 ¶ 90]; [ECF No. 173 at 35]. The SAC does not allege that any calls made after May 22, 2019 violated the TCPA.[6] As alleged,

---

[6] In its Response in Opposition to the Motion to Dismiss, Plaintiff asks the Court to consider an exhibit not specifically referenced or attached to the SAC as evidence of earlier DNC requests. The Court cannot do so. As the Court proceeds on a motion to dismiss, its review is generally limited to the four corners of the SAC. *See Moreno v. Carnival Corp.*, 488 F. Supp. 3d 1233, 1236 (S.D. Fla. 2020). However, "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal." *Brooks*, 116 F.3d at 1369; *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference."). The reference to external documents must be specific. *See Gregory v. Miami-Dade Cty.*, 86 F. Supp. 3d 1333, 1338 (S.D. Fla. 2014) ("[T]he Second Amended Complaint does not make any specific reference to the attached police report. Therefore, the Court cannot consider the police report as part of the pleadings.").

calls made after May 22, 2019 were either unanswered or used live representatives. Accordingly, Plaintiff lacks standing to assert a claim based on HII's failure to maintain and honor an internal do-not-call list. *See Cordoba*, 942 F.3d at 1271 ("if an individual not on the National Do Not Call Registry was called by Telecel and <u>never</u> asked Telecel not to call them again, it doesn't make any difference that Telecel hadn't maintained an internal do-not-call list."). Therefore, Count II is dismissed.

IV.     **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that:

1.  Defendants' Supplemental Joint Motion to Dismiss Plaintiff's Second Amended Class Action Complaint for Lack of Subject Matter Jurisdiction, [ECF No. 178], is **DENIED.**

2.  Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Class Action Complaint, [ECF No. 153], is **GRANTED** in part and **DENIED** in part.

3.  Count I is **DISMISSED without prejudice** only against Defendants Federal Insurance, Med-Sense, NCE, NBBI, Rx Helpline, and Teladoc.

4.  Count II is **DISMISSED without prejudice**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of June, 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE